# EXHIBIT 2

# EXHIBIT 2

```
                        DETAIL LISTING              TODAY'S DATE:Oct. 1, 1998
                     FROM FIRST TO LAST STEP        TIME      :12:58 pm
   N E L I S                                        LEG. DAY IS: 116
                       1995                         PAGE      : 1 OF   1
```

                    SB    455     By Judiciary    REAL PROPERTY

            Makes various changes to provisions governing real
            property. (BDR 9-1006)

            Fiscal Note: Effect on Local Government: Yes. Effect on the
            State or on Industrial Insurance: No.


05/05   69   Read first time.  Referred to Committee on
             Judiciary.  To printer.

05/08   70   From printer.  To committee.
05/08   70   Dates discussed in Committee:  5/23, 6/10   (A&DP)
06/21  104   From committee:  Amend, and do pass as amended.
06/21  104   (Amendment number 948.)
06/22  105   Read second time.  Amended.  To printer.
06/23  106   From printer.  To engrossment.
06/23  106   Engrossed.  First reprint.  Placed on General File.
06/23  106   Read third time.  Passed, as amended.  Title approved, as
             amended.  (21 Yeas, 0 Nays, 0 Absent, 0 Excused,
             0 Not Voting.)  To Assembly.

06/23  106   In Assembly.
06/23  106   Read first time.  Referred to Committee on
             Judiciary.  To committee.

06/23  106   Dates discussed in committee:  6/26   (DP)
06/26  109   From committee:  Do pass.
06/26  109   Placed on Second Reading File.
06/26  109   Read second time.
06/27  110   Read third time.  Passed.  Title approved.  (41 Yeas,
             0 Nays, 1 Absent, 0 Excused, 0 Not Voting.)  To Senate.
06/28  111   In Senate.
06/28  111   To enrollment.
06/29  112   Enrolled and delivered to Governor.
07/01  114   Approved by the Governor.
07/03  116   Chapter 475.
             Effective October 1, 1995.
        (* = instrument from prior session)

# N E V A D A   L E G I S L A T U R E

## SIXTY-EIGHTH SESSION

### 1995

# S U M M A R Y   O F   L E G I S L A T I O N

PREPARED BY

RESEARCH DIVISION

LEGISLATIVE COUNSEL BUREAU

NEVADA
LEGISLATIVE COUNSEL BUREAU
RESEARCH LIBRARY

SEP 1 4 1995



## S.B. 455 (Chapter 475)

Senate Bill 455 requires a beneficiary of a deed of trust, upon the request of an authorized person, to provide a statement regarding the debt secured by the deed that includes the amount of the unpaid balance of the debt, the amount of the periodic payments, the date the payment of the debt is due, the amount of insurance covering the property, the period for which real estate taxes have been paid, and any additional charges incurred or paid by the beneficiary. Such a statement may be requested by the grantor of the property that is the subject of the deed, a person who has a subordinate lien on the property, or a title insurer. Senate Bill 455 sets forth the procedures under which such a statement may be obtained.

The bill also requires a beneficiary to deliver to a trustee a request for a partial reconveyance of the estate in real property within 21 days after the beneficiary receives notice that the debt has been partially discharged if the deed authorizes such a reconveyance. The trustee must record the partial reconveyance within 45 days of receiving the request. If the reconveyance is not recorded within 75 days, a title insurer may record the reconveyance after providing notice to certain interested parties including the beneficiary and the trustee. This measure includes penalties for the failure to properly record the partial reconveyance.

In addition, S.B. 455 provides that a lien for charges owed to a hospital is extinguished if the hospital does not file a suit to foreclose the lien within 2 years after notice of the lien is recorded. Finally, the measure authorizes a party to an escrow agreement to collect damages from the other party to the agreement for refusal to execute a document necessary to release the money deposited in escrow. In addition to attorney's fees, the injured party may collect actual damages of not less than $100 or more than 1 percent of the purchase price of the real property, whichever is greater, and certain money deposited in the escrow.

S 209.243

43 is not a
031.
before the
e court in
usted. The
dministra-

s filed and
loss of his
ther claim
nitiate and

ctions filed

S.B. 455

SENATE BILL NO. 455—COMMITTEE ON JUDICIARY

MAY 5, 1995

Referred to Committee on Judiciary

SUMMARY—Makes various changes to provisions governing real property. (BDR 9-1006)

FISCAL NOTE:    Effect on Local Government: Yes.
Effect on the State or on Industrial Insurance: No.



EXPLANATION—Matter in italics is new; matter in brackets [ ] is material to be omitted.

AN ACT relating to real property; requiring a mortgagee of a mortgage or a beneficiary of a deed of trust to mail certain statements regarding the mortgage or the deed of trust to the mortgagor of the mortgage or the grantor of the deed of trust if those statements are requested by the mortgagor or grantor; authorizing the mortgagee or beneficiary to impose a fee for the issuance of those statements; requiring the beneficiary of certain deeds of trust to deliver to the trustee a request for a partial reconveyance of the estate in real property if the debts secured by those deeds of trust have been partially discharged; requiring a judgment creditor to record an affidavit of renewal to renew an unpaid judgment which has been recorded; authorizing a party to an escrow agreement to collect damages from the other party to the agreement if he refuses to execute a document necessary to release the money deposited in escrow under certain circumstances; providing a penalty; and providing other matters properly relating thereto.

THE PEOPLE OF THE STATE OF NEVADA, REPRESENTED IN SENATE
AND ASSEMBLY, DO ENACT AS FOLLOWS:

1    **Section 1.** Chapter 106 of NRS is hereby amended by adding thereto the
2 provisions set forth as sections 2 to 15, inclusive, of this act.
3    **Sec. 2.** *The provisions of sections 3 to 14, inclusive, of this act do not*
4 *apply to mortgages insured by the Federal Housing Administrator or guaran-*
5 *teed by the Secretary of Veterans Affairs.*
6    **Sec. 3.** *Except as otherwise provided in section 6 of this act, the mortga-*
7 *gee of a mortgage secured on or after October 1, 1995, shall, within 21 days*
8 *after receiving a request from a person authorized to make such a request*
9 *pursuant to section 5 of this act, cause to be mailed, postage prepaid, to that*
10 *person a statement regarding the debt secured by the mortgage. The state-*
11 *ment must include:*
12    *1. The amount of the unpaid balance of the debt secured by the mortgage,*
13 *the rate of interest on the unpaid balance and the total amount of principal*
14 *and interest which is due and has not been paid.*
15    *2. The amount of the periodic payments, if any, required under the note.*
16    *3. The date the payment of the debt is due.*
17    *4. The period for which real estate taxes and special assessments have*
18 *been paid, if that information is known to the mortgagee.*

5. The amount of property insurance covering the real property and the term and premium of that insurance, if that information is known to the mortgagee.

6. The amount in an account, if any, maintained for the accumulation of money for the payment of taxes and insurance premiums.

7. The amount of any additional charges, costs or expenses paid or incurred by the mortgagee which is a lien on the real property described in the mortgage.

8. Whether the debt secured by the mortgage may be transferred to a person other than the mortgagor.

Sec. 4. Except as otherwise provided in sections 6 and 7 of this act, the mortgagee of a mortgage secured on or after October 1, 1995, shall, within 21 days after receiving a request from a person authorized to make such a request pursuant to section 5 of this act, cause to be mailed, postage prepaid, to that person a statement of the amount necessary to discharge the debt secured by the mortgage. The statement must set forth:

1. The amount of money necessary to discharge the debt secured by the mortgage on the date the statement is prepared by the mortgagee; and

2. The information necessary to determine the amount of money required to discharge the debt on a per diem basis for a period, not to exceed 30 days, after the statement is prepared by the mortgagee.

Sec. 5. 1. A statement described in section 3 or 4 of this act may be requested by:

(a) The mortgagor of, or his successor in interest in, the property which is the subject of the mortgage;

(b) A person who has a subordinate lien or encumbrance of record on the property which is secured by the mortgage;

(c) A title insurer; or

(d) An authorized agent of any of the persons described in paragraph (a), (b) or (c).

A written statement signed by any person described in paragraph (a), (b) or (c) which appoints a person to serve as his agent if delivered personally to the mortgagee or delivered by mail, return receipt requested, is proof of the identity of an agent.

2. For the purposes of paragraph (a) of subsection 1, a policy of title insurance, preliminary report issued by a title company, certified copy of letters testamentary or letters of guardianship, or an original or photographic copy of a deed, if delivered personally to the mortgagee or delivered by mail, return receipt requested, is proof of the identity of a successor in interest of the mortgagor, if the person demanding the statement is named as successor in interest in the document.

Sec. 6. A mortgagee may, before mailing a statement described in section 3 or 4 of this act, require the person who requested the statement to prove that he is authorized to request that statement pursuant to section 5 of this act. If the mortgagee requires such proof, he must mail the statement within 21 days after he receives that proof from the requester.

Sec. 7. If the debt secured by a mortgage for which a statement described in section 4 of this act has been requested is subject to a recorded notice of

default or a filed complaint commencing a judicial foreclosure, the mortgage may refuse to deliver the statement unless the written request for the statement is received before the publication of a notice of sale or the notice of the date of sale established by a court.

Sec. 8. 1. A person who receives a statement pursuant to section 3 or 4 of this act may rely upon the accuracy of the information contained in the statement. If the mortgagee notifies the person who requested the statement of any amendment to the statement, the amended statement may be relied upon by that person in the same manner as the original statement.

2. If notification of an amendment to a statement is not given in writing, a written amendment to the statement must be delivered to the person who requested the original statement not later than the next business day after the notification.

3. If a statement prepared by the mortgagee pursuant to section 4 of this act does not contain the entire amount necessary to discharge the debt secured by the mortgage and:

(a) A transaction has occurred which has resulted in the transfer of title or the recordation of a lien; or

(b) A trustee's sale or a sale supervised by a court has occurred,

the mortgagee may recover that money as an unsecured debt of the mortgagor pursuant to the terms of the note.

Sec. 9. If a person who is authorized pursuant to section 5 of this act to request a statement described in section 3 or 4 of this act includes in his request for such a statement a request for a copy of the note or mortgage, the mortgagee shall mail a copy of the note or mortgage with the statement at no additional charge.

Sec. 10. If the mortgagee has more than one place of business, a request for a statement described in section 3 or 4 of this act must be made to the address to which the periodic payments under the note are made. If no periodic payments are made under the note, the request must be mailed to the address of the mortgagee listed on the note or mortgage.

Sec. 11. Except as otherwise provided in a statement described in section 3 or 4 of this act, the information contained in a statement applies only to the debt secured by the mortgage which is payable at the address to which the periodic payments are made. If periodic payments are not made under the note, the statement applies only to the entire debt secured by the mortgage.

Sec. 12. If a person requests a statement described in section 3 or 4 of this act and it is not clear from the request which statement is requested, the request shall be deemed a request for a statement of the amount necessary to discharge the debt secured by a mortgagee.

Sec. 13. 1. A mortgagee who willfully fails to deliver a statement requested pursuant to section 3 or 4 of this act within 21 days after it is requested is liable to the person who requested the statement in an amount of $300 and any actual damages suffered by the person who requested the statement.

2. A judgment awarded to a person who requested a statement pursuant to section 3 or 4 of this act for failure to deliver a statement bars recovery of damages for any other failure to deliver that statement pursuant to a demand

- 4 -

made within 6 months before or after the demand for which the judgment was awarded.

3. As used in this section, "willfully" means an intentional failure to comply with the requirements of section 3 or 4 of this act without just cause.

Sec. 14. A mortgagee may charge a fee of not more than $60 for each statement furnished pursuant to section 3 or 4 of this act.

Sec. 15. Notwithstanding any other provision of law, a mortgage given to secure a loan made to purchase the real property on which the mortgage is given has priority over all other liens created against the purchaser before he acquires title to the real property.

Sec. 16. Chapter 107 of NRS is hereby amended by adding thereto the provisions set forth as sections 17 to 32, inclusive, of this act.

Sec. 17. As used in this chapter, "title insurer" has the meaning ascribed to it in NRS 692A.070.

Sec. 18. The provisions of sections 19 to 30, inclusive, of this act do not apply to deeds of trust insured by the Federal Housing Administrator or guaranteed by the Secretary of Veterans Affairs.

Sec. 19. Except as otherwise provided in section 22 of this act, the beneficiary of a deed of trust secured on or after October 1, 1995, shall, within 21 days after receiving a request from a person authorized to make such a request pursuant to section 21 of this act, cause to be mailed, postage prepaid, to that person a statement regarding the debt secured by the deed of trust. The statement must include:

1. The amount of the unpaid balance of the debt secured by the deed of trust, the rate of interest on the unpaid balance and the total amount of principal and interest which is due and has not been paid.

2. The amount of the periodic payments, if any, required under the note.

3. The date the payment of the debt is due.

4. The period for which real estate taxes and special assessments have been paid, if that information is known to the beneficiary.

5. The amount of property insurance covering the real property and the term and premium of that insurance, if that information is known to the beneficiary.

6. The amount in an account, if any, maintained for the accumulation of money for the payment of taxes and insurance premiums.

7. The amount of any additional charges, costs or expenses paid or incurred by the beneficiary which is a lien on the real property described in the deed of trust.

8. Whether the debt secured by the deed of trust may be transferred to a person other than the grantor.

Sec. 20. 1. Except as otherwise provided in sections 22 and 23 of this act, the beneficiary of a deed of trust secured on or after October 1, 1995, shall, within 21 days after receiving a request from a person authorized to make such a request pursuant to section 21 of this act, cause to be mailed, postage prepaid, to that person a statement of the amount necessary to discharge the debt secured by the deed of trust. The statement must set forth:

1. The amount of money necessary to discharge the debt secured by the deed of trust on the date the statement is prepared by the beneficiary; and

- 5 -

2. The information necessary to determine the amount of money required to discharge the debt on a per diem basis for a period, not to exceed 30 days, after the statement is prepared by the beneficiary.

Sec. 21. 1. A statement described in section 19 or 20 of this act may be requested by:

(a) The grantor or his successor in interest in, the property which is the subject of the deed of trust;

(b) A person who has a subordinate lien or encumbrance of record on the property which is secured by the deed of trust;

(c) A title insurer; or

(d) An authorized agent of any person described in paragraph (a), (b) or (c).

A written statement signed by any person described in paragraph (a), (b) or (c) which appoints a person to serve as his agent (if delivered personally to the beneficiary or delivered by mail, return receipt requested, is proof of the identity of an agent.

2. For the purposes of paragraph (a) of subsection 1, a policy of title insurance, preliminary report issued by a title company, certified copy of letters testamentary or letters of guardianship, or an original or photographic copy of a deed, (if delivered personally to the beneficiary or delivered by mail, return receipt requested, is proof of the identity of a successor in interest of the grantor, (if the person demanding the statement is named as successor in interest in the document.

Sec. 22. A beneficiary may, before mailing a statement described in section 19 or 20 of this act, require the person who requested the statement to prove that he is authorized to request that statement pursuant to section 21 of this act. If the beneficiary requires such proof, he must mail the statement within 21 days after he receives that proof from the requester.

Sec. 23. If the debt secured by a deed of trust for which a statement described in section 20 of this act has been requested is subject to a recorded notice of default or a filed complaint commencing a judicial foreclosure, the beneficiary may refuse to deliver the statement unless the written request for the statement is received before the publication of a notice of sale or the notice of the date of sale established by a court.

Sec. 24. 1. A person who receives a statement pursuant to section 19 or 20 may rely upon the accuracy of the information contained in the statement. If the beneficiary notifies the person who requested the statement of any amendment to the statement, the amended statement may be relied upon by that person in the same manner as the original statement.

2. If notification of an amendment to a statement is not given in writing, a written amendment to the statement must be delivered to the person who requested the original statement not later than the next business day after notification.

3. If a statement prepared by the beneficiary pursuant to section 19 of this act does not contain the entire amount necessary to discharge the debt secured by the deed of trust and:

(a) A transaction has occurred which has resulted in the transfer of title or recordation of a lien; or

– 6 –

(b) A trustee's sale or a sale supervised by a court has taken place, the beneficiary may recover that money as an unsecured debt of the grantor pursuant to the terms of the note.

Sec. 25. If a person who is authorized pursuant to section 21 of this act to request a statement described in section 19 or 20 of this act includes in his request for such a statement a request for a copy of the note or deed of trust, the beneficiary shall mail a copy of the note or deed of trust with the statement at no additional charge.

Sec. 26. If the beneficiary has more than one place of business, a request for a statement described in section 19 or 20 of this act must be made to the address to which the periodic payments under the note are made. If no periodic payments are made under the note, the request must be mailed to the address of the beneficiary listed on the note or deed of trust.

Sec. 27. Except as otherwise provided in a statement described in section 19 or 20 of this act, the information contained in the statement applies only to the debt secured by the deed of trust which is payable at the address to which the periodic payments are made. If periodic payments are not made under the note, the statement applies only to the entire debt secured by the deed of trust.

Sec. 28. If a person requests a statement described in section 19 or 20 of this act and it is not clear from the request which statement is requested, the request shall be deemed a request for a statement of the amount necessary to discharge the debt secured by a deed of trust.

Sec. 29. 1. A beneficiary who willfully fails to deliver a statement requested pursuant to section 19 or 20 of this act within 21 days after it is requested is liable to the person who requested the statement in an amount of $300 and any actual damages suffered by the person who requested the statement.

2. A judgment awarded to a person who requested a statement pursuant to section 19 or 20 of this act for failure to deliver a statement bars recovery of damages for any other failure to deliver that statement pursuant to a demand made within 6 months before or after the demand for which the judgment was awarded.

3. As used in this section, "willfully" means an intentional failure to comply with the requirements of section 19 or 20 of this act without just cause.

Sec. 30. The beneficiary may charge a fee of not more than $60 for each statement furnished pursuant to section 19 or 20 of this act.

Sec. 31. 1. If a deed of trust made on or after October 1, 1995, authorizes the grantor to discharge in part the debt secured by the deed of trust, the beneficiary shall, within 21 calendar days after receiving notice that the debt secured by the deed of trust has been partially discharged deliver to the trustee a properly executed request for a partial reconveyance of the estate in real property conveyed to the trustee by the grantor.

2. Within 45 calendar days after a debt secured by a deed of trust made on or after October 1, 1995, is partially discharged and a properly executed request for a partial reconveyance received by the trustee, the trustee shall cause to be recorded a partial reconveyance of the deed of trust.

– 7 –

3. If the beneficiary fails to deliver to the trustee a properly executed request for a partial reconveyance pursuant to subsection 1, or if the trustee fails to cause to be recorded a partial reconveyance of the deed of trust pursuant to subsection 2, the beneficiary or the trustee, as the case may be, is liable in a civil action to the grantor, his heirs or assigns in the amount of $100, plus a reasonable attorney's fee and the costs of bringing the action, and he is liable in a civil action to any party to the deed of trust for any actual damages caused by his failure to comply with the provisions of this section and for a reasonable attorney's fee and the costs of bringing the action.

4. Except as otherwise provided in this subsection, if a partial reconveyance is not recorded pursuant to subsection 2 within 75 calendar days after the partial satisfaction of the debt, if the satisfaction was made on or after October 1, 1995, a title insurer may prepare and cause to be recorded a partial release of the deed of trust. At least 30 calendar days before the recording of a partial release pursuant to this subsection, the title insurer shall mail, by first-class mail, postage prepaid, notice of the intention to record the partial release of the deed of trust to the trustee, trustor and beneficiary of record, or their successors in interest, at the last known address of each such person. A partial release prepared and recorded pursuant to this subsection shall be deemed a partial reconveyance of a deed of trust. The title insurer shall not cause a partial release to be recorded pursuant to this subsection if the title insurer receives written instructions to the contrary from the trustee, trustor, owner of the land, holder of the escrow or owner of the debt secured by the deed of trust or his agent.

5. The release prepared pursuant to subsection 4 must set forth:
(a) The name of the beneficiary;
(b) The name of the trustor;
(c) The recording reference to the deed of trust;
(d) A statement that the debt secured by the deed of trust has been partially discharged;
(e) The date and amount of partial payment or other partial satisfaction or discharge; and
(f) The name and address of the title insurer issuing the partial release.

6. A partial release prepared and recorded pursuant to subsection 4 does not relieve a beneficiary or trustee of the requirements imposed by subsections 1 and 2.

7. A trustee may charge a reasonable fee to the trustor or the owner of the land for services relating to the preparation, execution or recordation of a partial reconveyance or partial release pursuant to this section. A trustee shall not require the fees to be paid before the opening of an escrow or earlier than 60 calendar days before the partial payment or partial satisfaction or discharge of the debt secured by the deed of trust. If a fee is charged pursuant to this subsection does not exceed $100, the fee is conclusively presumed to be reasonable.

8. In addition to any other remedy provided by law, a title insurer who improperly causes to be recorded a partial release of a deed of trust pursuant to this section is liable for actual damages and a reasonable attorney's fee to

6

— 8 —

— 9 —

any person who is injured because of the improper recordation of the partial release.

9. Any person who willfully violates this section is guilty of a misdemeanor.

Sec. 32. *Notwithstanding any other provision of law, a deed of trust given to secure a loan made to purchase the real property on which the deed of trust is given has priority over all other liens created against the purchaser before he acquires title to the real property.*

Sec. 33. NRS 107.077 is hereby amended to read as follows:

107.077  1. Within 45 calendar days after receiving written notice that a debt secured by a deed of trust made on or after October 1, 1991, has been paid or otherwise satisfied or discharged, the beneficiary shall deliver to the trustee or the trustor the original note and deed of trust, if he is in possession of these documents, and a properly executed request to reconvey the estate in real property conveyed to the trustee by the grantor. If the beneficiary delivers the original note and deed of trust to the trustee or the trustee has these documents in his possession, the trustee shall deliver these documents to the grantor.

2. Within 45 calendar days after a debt secured by a deed of trust made on or after October 1, 1991, is paid or otherwise satisfied or discharged, and a properly executed request to reconvey is received by the trustee, the trustee shall cause to be recorded a reconveyance of the deed of trust.

3. If the beneficiary fails to deliver to the trustee a properly executed request to reconvey pursuant to subsection 1, or if the trustee fails to cause to be recorded a reconveyance of the deed of trust pursuant to subsection 2, the beneficiary or the trustee, as the case may be, is liable in a civil action to the grantor, his heirs or assigns in the sum of $100, plus a reasonable attorney's fee and the costs of bringing the action, and he is liable in a civil action to any party to the deed of trust for any actual damages caused by his failure to comply with the provisions of this section and for a reasonable attorney's fee and the costs of bringing the action.

4. Except as otherwise provided in this subsection, if a reconveyance is not recorded pursuant to subsection 2 within:

(a) Seventy-five calendar days after the payment, satisfaction or discharge of the debt, if the payment, satisfaction or discharge was made on or after October 1, 1993; or

(b) Ninety calendar days after the payment, satisfaction or discharge of the debt, if the payment, satisfaction or discharge was made before October 1, 1993,

a title insurer may prepare and cause to be recorded a release of the deed of trust. At least 30 calendar days before the recording of a release pursuant to this subsection, the title insurer shall mail, by first-class mail, postage prepaid, notice of the intention to record the release of the deed of trust to the trustee, trustor and beneficiary of record, or their successors in interest, at the [last-known] *last known* address of each such person. A release prepared and recorded pursuant to this subsection shall be deemed a reconveyance of a deed of trust. The title insurer shall not cause a release to be recorded pursuant to this subsection if the title insurer receives written instructions to

the contrary from the trustee, the trustor, the owner of the land, the holder of the escrow or the owner of the debt secured by the deed of trust or his agent.

5. The release prepared pursuant to subsection 4 must set forth:

(a) The name of the beneficiary;

(b) The name of the trustor;

(c) The recording reference to the deed of trust;

(d) A statement that the debt secured by the deed of trust has been paid in full or otherwise satisfied or discharged;

(e) The date and amount of payment or other satisfaction or discharge; and

(f) The name and address of the title insurer issuing the release.

6. A release prepared and recorded pursuant to subsection 4 does not relieve a beneficiary or trustee of the requirements imposed by subsections 1 and 2.

7. A trustee may charge a reasonable fee to the trustor or the owner of the land for services relating to the preparation, execution or recordation of a reconveyance or release pursuant to this section. A trustee shall not require the fees to be paid before the opening of an escrow, or earlier than 60 calendar days before the payment, satisfaction or discharge of the debt secured by the deed of trust. If a fee charged pursuant to this subsection does not exceed $100, the fee is conclusively presumed to be reasonable.

8. In addition to any other remedy provided by law, a title insurer who improperly causes to be recorded a release of a deed of trust pursuant to this section is liable for actual damages and a reasonable attorney's fee to any person who is injured because of the improper recordation of the release.

9. Any person who willfully violates this section is guilty of a misdemeanor.

[10. As used in this section, "title insurer" has the meaning ascribed to it in NRS 692A.070.]

Sec. 34. NRS 108.665 is hereby amended to read as follows:

108.665  1. A lien for charges owed to a hospital may be foreclosed by a suit in the district court in the same manner as an action for foreclosure of any other lien.

2. The lien may not be foreclosed during the:

(a) Lifetime of the owner of the property, his spouse, his dependent adult child if that child is mentally or physically disabled or a joint tenant if he was a joint tenant at the time of the patient's discharge; or

(b) Minority of any child of the owner,

if the owner or joint tenant resides on the property, or his spouse, dependent or minor child resides on the property and has acquired title thereto.

3. *If the hospital does not file a suit to foreclose the lien within 5 years after the date the notice of lien is recorded by the hospital, the lien is extinguished.*

Sec. 35. NRS 17.214 is hereby amended to read as follows:

17.214  1. A judgment creditor or his successor in interest may renew a judgment which has not been paid by [filing] :

(a) *Filing* an affidavit with the clerk of the court where the judgment is entered and docketed, within 90 days before the date the judgment expires by limitation. The affidavit must specify:

7

– 10 –

[(a)] *(1)* The names of the parties and the name of the judgment creditor's successor in interest, if any, and the source and succession of his title;

[(b)] *(2)* If the judgment is recorded, the name of the county and the number and the page of the book in which it is recorded;

[(c)] *(3)* The date and the amount of the judgment and the number and page of the docket in which it is entered;

[(d)] *(4)* Whether there is an outstanding writ of execution for enforcement of the judgment;

[(e)] *(5)* The date and amount of any payment on the judgment;

[(f)] *(6)* Whether there are any setoffs or counterclaims in favor of the judgment debtor and the amount or, if a setoff or counterclaim is unsettled or undetermined it will be allowed as payment or credit on the judgment;

[(g)] *(7)* The exact amount due on the judgment;

[(h)] *(8)* If the judgment was docketed by the clerk of the court upon a certified copy from any other court, and an abstract recorded with the county clerk, the name of each county in which the transcript has been docketed and the abstract recorded; and

[(i)] *(9)* Any other fact or circumstance necessary to a complete disclosure of the exact condition of the judgment.

All information in the affidavit must be based on the personal knowledge of the affiant, and not upon information and belief.

*(b) If the judgment is recorded, recording the affidavit of renewal in the office of the county recorder in which the original judgment is filed within 3 days after the affidavit of renewal is filed pursuant to paragraph (a).*

2. The filing of the affidavit renews the judgment to the extent of the amount shown due in the affidavit.

3. The judgment creditor or his successor in interest shall notify the judgment debtor of the renewal of the judgment by sending a copy of the affidavit of renewal by certified mail, return receipt requested, to him at his last known address within 3 days after filing the affidavit.

4. Successive affidavits for renewal may be filed within 90 days before the preceding renewal of the judgment expires by limitation.

Sec. 36. Chapter 247 of NRS is hereby amended by adding thereto a new section to read as follows:

*A creditor who records a lien or notice of lien upon real property shall record at that time an affidavit stating:*

*1. The name and address of the debtor;*

*2. The debtor's driver's license number and state of issuance or the debtor's social security number; and*

*3. The debtor's date of birth.*

*if known to the creditor. If any of the information is not known, the affidavit must include a statement of that fact.*

Sec. 37. NRS 247.120 is hereby amended to read as follows:

247.120 1. Each county recorder shall, upon the payment of the described statutory fees, record separately, in a manner which will allow a legible copy to be made, the following specified instruments in large, well-bound separate books, either sewed or of insertable leaves which when placed in the book cannot be removed:

– 11 –

(a) Deeds, grants, patents issued by the State of Nevada or by the United States, transfers and mortgages of real estate, releases of mortgages of real estate, powers of attorney to convey real estate, and leases of real estate which have been acknowledged or proved.

(b) Certificates of marriage and marriage contracts.

(c) Wills admitted to probate.

(d) Official bonds.

(e) Notice of mechanics' liens.

(f) Transcripts of judgments [,] which by law are made liens upon real estate in this state [,] *and affidavits of renewal of those judgments.*

(g) Notices of attachment upon real estate.

(h) Notices of the pendency of an action affecting real estate, the title thereto, or the possession thereof.

(i) Instruments describing or relating to the separate property of married persons.

(j) Notice of preemption claims.

(k) Notices and certificates of location of mining claims.

(l) Affidavits of proof of annual labor on mining claims.

(m) Affidavits of intent to hold mining claims recorded pursuant to subsection 3 of NRS 517.230.

(n) Certificates of sale.

(o) Judgments or decrees.

(p) Declarations of homesteads.

(q) Such other writings as are required or permitted by law to be recorded.

2. Each of the instruments named in paragraph (a) of subsection 1 may be recorded in separate books in the discretion of the county recorder.

3. Before accepting for recording any instrument enumerated in subsection 1, the county recorder may require a copy suitable for recording by a method used by the recorder to preserve his records. Where any rights [might] *may* be adversely affected because of a delay in recording caused by this requirement, the county recorder shall accept the instrument conditionally subject to submission of a suitable copy at a later date. The provisions of this subsection do not apply where it is impossible or impracticable to submit a more suitable copy.

Sec. 38. NRS 627.200 is hereby amended to read as follows:

627.200 Any lender desiring to use the services of a construction control shall first obtain the written assent of the borrower specifying by name the construction control to be used. The lender and borrower shall [then] be deemed to have appointed [such] *that* construction control as their agent for the particular construction loan for which its services are requested [,] *and* the acts of the construction control [shall be] *are* binding upon the lender and borrower severally. If a related construction control or the employee or agent of a related construction control, or a lender acting as a construction control or any employee or agent of [such] *a* lender acting as a construction control, violates any of the provisions of this chapter, otherwise than as the result of a good faith error in mathematical computation, then:

1. With respect to a particular loan subject to construction control, the construction control and the lender shall each, jointly and severally, be liable

8

— 12 —

1 for payment of any [and all] mechanic's liens filed against the premises
2 subject to construction [and arising out of any] to the extent that such a lien is
3 the result of a violation of any provision of this chapter.
4   2. Any mechanic's lien claimant damaged by the violation of any provi-
5 sion of this chapter may jointly or severally proceed with an action on the
6 bond referred to in NRS 627.180, and the rights and remedies under [such]
7 the bond or lien claims and any direct right of action against the lender or
8 construction control [shall be] are cumulative, and the lien claimant prevail-
9 ing in any such action [shall be] is entitled to reasonable [attorneys'] attor-
10 ney's fees.
11   Sec. 39. Chapter 645A of NRS is hereby amended by adding thereto the
12 provisions set forth as sections 40 and 41 of this act.
13   Sec. 40. 1. Except as otherwise provided in subsection 2 or in the escrow
14 agreement between the parties and the holder of the escrow, upon the close of
15 an escrow for the sale of real property or on the date the escrow is scheduled
16 to close if it has not closed, each party shall execute the documents necessary
17 to release the money deposited in the escrow.
18   2. A party may refuse to execute a document necessary to release the
19 money deposited in the escrow only if a good faith dispute exists concerning
20 that money.
21   3. If a party refuses to execute a document necessary to release the money
22 deposited in the escrow within 30 days after the holder of the escrow makes a
23 written request for the execution, the party injured by the other party's failure
24 to execute the document may collect from that party:
25   (a) Actual damages of not less than $100 nor more than 1 percent of the
26 purchase price of the real property for which the money was deposited in the
27 escrow, whichever is greater;
28   (b) The money deposited in the escrow which was not held to resolve a
29 good faith dispute concerning the sale of the property; and
30   (c) A reasonable attorney's fee.
31   Sec. 41. 1. If an action is filed to recover money deposited in an escrow
32 established for the sale of real property, the holder of the escrow may deposit
33 the money, less any fees or charges owed to the holder of the escrow, with the
34 court in which the action is filed.
35   2. A holder of an escrow who complies with the provisions of subsection 1
36 is discharged from further responsibility for the money which he deposits with
37 the court.
38   3. This section does not limit the right of the holder of the escrow to bring
39 an action for interpleader pursuant to N.R.C.P. 22 to determine the rightful
40 claimant of the money deposited in the escrow.
41   Sec. 42. NRS 707.210 is hereby amended to read as follows:
42   707.210. 1. Except as otherwise provided in this chapter, any instrument
43 in writing, certified under his hand and stamp or seal by a notary public,
44 commissioner of deeds [,] or clerk of a court of record to be genuine within
45 his knowledge may, with the certificate, be sent by telegraph [,] or facsimile
46 machine and the telegraphic or facsimile copy has, prima facie, the same
47 effect as the original, and the burden of proof rests with the person denying
48 the genuineness or due execution of the original.

— 13 —

1   2. As used in this section, "facsimile machine" means a device which
2 receives and copies a reproduction or facsimile of a document or photograph
3 which is transmitted electronically or telephonically by telecommunications
4 lines,

**BDR** 9-1006
**A.B.** _____
**S.B.** SB 455

### LOCAL GOVERNMENT
### FISCAL NOTE

Date Prepared  May 8, 1995

The bill increases or newly provides for a term of imprisonment in a city or county jail or detention facility or makes release on probation therefrom less likely; therefore, local governments will incur all appurtenant costs of enforcement, prosecution and incarceration.

Signature _____

Title_____ Deputy Fiscal Analyst_____

C:\WPWIN60\WPDOCS\FN.3

10

## MINUTES OF THE
## SENATE COMMITTEE ON JUDICIARY

### Sixty-eighth Session
### May 23, 1995

The Senate Committee on Judiciary was called to order by Chairman Mark A. James, at 9:00 a.m., on Tuesday, May 23, 1995, in Room 224 of the Legislative Building, Carson City, Nevada. Exhibit A is the Agenda. Exhibit B is the Attendance Roster.

COMMITTEE MEMBERS PRESENT:

Senator Mark A. James, Chairman
Senator Jon C. Porter, Vice Chairman
Senator Maurice Washington
Senator Mike McGinness
Senator Ernest E. Adler
Senator Dina Titus
Senator O. C. Lee

STAFF MEMBERS PRESENT:

Allison Combs, Senior Research Analyst
Lori M. Story, Committee Secretary

OTHERS PRESENT:

Pat Coward, Lobbyist, Nevada Land Title Association
Charles T. Cook, General Counsel, Nevada Title Company, Legislative Chairman, Land Title Association
Mickey Johnson, Lobbyist, Southern Nevada Home Builders Association
Harold Jacobsen, Accounting Manager, Western Nevada Supply Company, Chairman, Credit Managers Association of Southern California, Las Vegas Chapter, Member, Associated General Contractors
Nancy Johnson, Owner, Accurate Lien and Contractors Assistance
Chuck Burr, Credit Manager, Western Nevada Supply Company
James Wadhams, Lobbyist, American Insurance Association
Stan Olsen, Lobbyist, Las Vegas Metropolitan Police Department (METRO)
Joe Evers, Executive Director, Support Operations, Las Vegas Metropolitan Police Department (METRO) Detention Services
Laurel Stadler, Lobbyist, Mothers Against Drunk Driving, Lyon County Chapter

Senate Committee on Judiciary
May 23, 1995
Page 10

site improvements which requires a lien against the entire project, because the improvements are to the entire project.

James Wadhams, Lobbyist, American Insurance Association, stated he had not intended to testify, but some of the prior testimony on bonding companies leads him to comment. NRS chapter 680A is the section of statutes which regulate insurance and outlines the regulations for licensure of bonding and insurance companies, he reported. There are instances throughout the state where unlicensed companies are putting up bonds, Mr. Wadhams stated, and strengthening the licensing requirements will help to alleviate these concerns.

There was no further testimony on S.B. 434 and the chairman closed the hearing.

SENATE BILL 455:          Makes various changes to provisions governing real property.

S.B. 455 was the next bill to be heard and the chairman called the proponents to the table. Mr. Coward again spoke to the committee, noting the bill is a housekeeping attempt. Mr. Cook outlined the bill's contents. He stated chapter 106 of NRS governs mortgages and 107 governs deeds of trust. Sections 1-30 of the bill are designed to require the holders of the mortgages or deeds of trust to issue statements relating to the status of the loans, based on requests from specific groups or individuals.

Mr. Cook observed currently it is difficult to obtain reconveyances or any information from the lenders. While they are happy to receive their payments, lenders are not so cooperative when it comes to giving information about loans or clearing the public record of their deeds of trust, Mr. Cook explained.

The witness explained sections 1-14, except section 2, deal with mortgages; sections 16-30 deals with deeds of trust. After conversations with the bill drafters, Mr. Cook reported, there is a correction needed. Section 2 only applies to sections 14 and 30. Moving on, Mr. Cook referred to section 15, in which is codified the common law principle that the purchase money deed of trust is entitled to priority over judgement liens that may be of record against an individual who is purchasing the property. Courts-in-equity have held this principle to be true, but in Nevada it requires further court action to confirm it, he noted.

Ms. Johnson offered the committee an example of how this provision works. In some cases a person will have a judgement against them, as individuals, but will

Senate Committee on Judiciary
May 23, 1995
Page 11

own no property. When that individual takes title to the property, through a grant bargain and sale deed, the judgment attaches to the property. This provision means the "purchase money deed of trust" will be first in line, even ahead of the judgment against the individual.

Section 31 of S.B. 455 is similar to NRS 107.077 and allows for partial reconveyances, Mr. Cook explained. He asked that one amendment be made, that is the legal description of the property being reconveyed should be included in the document. In section 34, he continued, the provision is designed to put a limitation on the length of time a hospital lien can remain a lien on real property. The limit would be 5 years, he pointed out, and that seems reasonable time to bring an action or to release the loan.

Sections 35-37 deal with recording affidavits to renew judgment liens, Mr. Cook told the committee. In title searches it is never clear if a lien has been renewed after the 6 year expiration date. If the affidavit is recorded against the title, the renewal is easily ascertained, he said. Section 36 brings a provision to include more identifying information about judgment debtors, when recording judgment liens, Mr. Cook continued. There is a proposed amendment, because it is more appropriate to place the provision under NRS 17.150. As it is currently written, he explained, the provision could potentially affect deeds of trust, which is not the intent.

Ms. Johnson noted the reason for the additional identifying information is because identical names come up frequently. With the addition of a social security number, the misidentifications will be greatly reduced, she opined.

Mr. Cook moved to sections 40 and 41 of the bill. These address earnest money disputes, and delineates what the process is for the release of escrow funds. The provision requires the holder to respond within 30 days of the request for instruction. The injured party will also be awarded attorneys fees and actual damages, he added.

Finally, Mr. Cook requested section 42 be stricken from the bill, altogether. He concluded his remarks and the chairman asked Mr. Cook to provide him with written copies of all his proposed changes to the bill. The witness agreed, noting in conclusion it is not the intent of the bill to run afoul of Real Estate Settlement Procedures Act (RESPA). The hearing on S.B. 455 was closed.

MINUTES OF THE
SENATE COMMITTEE ON JUDICIARY

Sixty-eighth Session
June 10, 1995

The Senate Committee on Judiciary was called to order by Chairman Mark A. James, at 8:40 a.m., on Saturday, June 10, 1995, in Room 224 of the Legislative Building, Carson City, Nevada.  Exhibit A is the Agenda.  Exhibit B is the Attendance Roster.

COMMITTEE MEMBERS PRESENT:

Senator Mark A. James, Chairman
Senator Jon C. Porter, Vice Chairman
Senator Maurice Washington
Senator Mike McGinness
Senator Ernest E. Adler
Senator Dina Titus
Senator O. C. Lee

GUEST LEGISLATORS PRESENT:

Assemblyman Thomas W. Fettic, Assembly District No. 40

STAFF MEMBERS PRESENT:

Allison Combs, Senior Research Analyst
Marilyn Hofmann, Committee Secretary

OTHERS PRESENT:

Charles W. Joerg, Lobbyist, Nevada Manufactured Housing Association
J. Patrick Coward, Lobbyist, Nevada Association of Realtors
Darrell L. Clark, Attorney, Nevada Association of Realtors
Barbara McKenzie, Lobbyist, City of Reno
Lucille K. Lusk, Lobbyist, Nevada Concerned Citizens

15

Senate Committee on Judiciary
June 10, 1995
Page 21

process and he feels it is already clear, but he agreed to ask for a change to the amendment to include the standard of review in which the person may only appeal on the basis of abuse of discretion.

> SENATOR McGINNESS MOVED TO AMEND AND DO PASS S.B. 299 AS PROPOSED.
>
> SENATOR WASHINGTON SECONDED THE MOTION.
>
> THE MOTION CARRIED.  (SENATOR LEE VOTED NO.)

* * * * *

Senator James recalled Senator Porter had a question when S.B. 434 and a proposed amendment were discussed at length.

SENATE BILL 434:          Makes various changes to provisions governing statutory liens.

Senator Porter indicated he had resolved his question.

> SENATOR ADLER MOVED TO AMEND AND DO PASS S.B. 434.
>
> SENATOR McGINNESS SECONDED THE MOTION.
>
> THE MOTION CARRIED UNANIMOUSLY.

* * * * *

Senator James explained a proposed amendment to S.B. 455.

SENATE BILL 455:          Makes various changes to provisions governing real property.

He recalled most of the sections of the bill, up through section 15, have been removed.  He asked the committee to turn to page 6, section 31, paragraph 1 on lines 38 and 39. He said, "What we're trying to deal with on this is, that if it authorizes the grantor to discharge in part the debt to secure, that he wouldn't be

Senate Committee on Judiciary
June 10, 1995
Page 22

able to call up and say, okay, I paid this much principal today ... take part of your lien off."

Calling attention to line 38, Senator James explained what the change will provide. He stated, "If a deed of trust ... made on or after October 1, 1995, authorizes the grantor to discharge in part the debt secured by the deed of trust." At that point he said to add, "and the deed of trust authorizes partial reconveyance in consideration of such partial discharge." Because a normal deed of trust does not provide for partial reconveyance, Senator James explained the change will provide for partial reconveyance if so stated.

> SENATOR ADLER MOVED TO AMEND AND DO PASS S.B. 455 AS PROPOSED.
>
> SENATOR McGINNESS SECONDED THE MOTION.
>
> THE MOTION CARRIED UNANIMOUSLY.

* * * * *

Senator James requested consideration of S.B. 244. He recalled the bill had many problems, and now the secretary of state has indicated the measure is no longer necessary.

SENATE BILL 244:         Makes various changes regarding preparation of state budget and review of federal mandates and encroachments.

> SENATOR PORTER MOVED TO INDEFINITELY POSTPONE S.B. 244.
>
> SENATOR WASHINGTON SECONDED THE MOTION.
>
> THE MOTION CARRIED UNANIMOUSLY.

* * * * *

Senator James declared a trailer bill is required to correct problems existing from this session. He requested the committee to make a bill draft request (BDR) for that purpose.

17
2989

6/21/95

4. A board of trustees maintaining courses in automobile driver education shall insure against any liability arising out of the use of motor vehicles in connection with [such] *those* courses. The cost of [such insurance shall] *the insurance must* be paid from available school district funds.

5. Automobile driver education [shall] *must* be provided by boards of trustees of school districts in accordance with regulations of the state board of education and may not be duplicated by any other agency, department, commission or officer of the State of Nevada.

*6. Each course in automobile driver education provided by a board of trustees of a school district must include, without limitation, instruction in motor vehicle insurance.*

Sec. 6. Chapter 483 of NRS is hereby amended by adding thereto a new section to read as follows:

*Each course of training provided by a school for training drivers licensed pursuant to NRS 483.700 to 483.780, inclusive, must include, without limitation, instruction in motor vehicle insurance.*

Sec. 7. As soon as practicable after October 1, 1995, but not later than April 1, 1996, the commissioner of insurance shall adopt the regulations required pursuant to section 1 of this act.".

Amend the title of the bill to read as follows:

"An Act relating to insurance; revising the provisions relating to the approval of rates by the commissioner of insurance; authorizing certain insurers annually to review with policyholders the coverage and benefits provided in their policies of insurance; requiring the disclosure of certain information by claimants under certain policies of motor vehicle insurance; providing that courses in automobile driver education must include instruction in motor vehicle insurance; and providing other matters properly relating thereto.".

Amend the summary of the bill to read as follows:

"Summary—Makes various changes concerning insurance. (BDR 57-1440)".

Senator Townsend moved the adoption of the amendment.

Remarks by Senators Townsend, O'Donnell, Porter, Adler and James.

Conflict of interest declared by Senator Porter.

Amendment adopted.

Bill ordered reprinted, engrossed and to third reading.

Senate Bill No. 455.

Bill read second time.

The following amendment was proposed by the Committee on Judiciary: Amendment No. 948.

Amend the bill as a whole by deleting sections 1 through 15 and renumbering sec. 16 as section 1.

Amend sec. 16, page 4, line 12, by deleting: "17 to 32," and inserting: "2 to 17,".

Amend the bill as a whole by deleting sec. 17 and adding a new section designated sec. 2, following sec. 16, to read as follows:

"Sec. 2. *As used in this chapter:*

**18**

    *1. "Facsimile machine" means a device which receives and copies a reproduction or facsimile of a document or photograph which is transmitted electronically or telephonically by telecommunications lines.*

    *2. "Title insurer" has the meaning ascribed to it in NRS 692A.070.".*

Amend the bill as a whole by renumbering sections 18 through 34 as sections 3 through 19.

Amend sec. 18, page 4, line 15, by deleting: "*sections 19 to 30, inclusive,*" and inserting "*section 15*".

Amend sec. 19, page 4, line 18, by deleting "*22*" and inserting "*7*".

Amend sec. 19, page 4, line 21, by deleting "*21*" and inserting "*6*".

Amend sec. 19, page 4, line 22, by deleting "*prepaid,*" and inserting: "*prepaid or sent by facsimile machine*".

Amend sec. 20, page 4, line 41, by deleting: "*22 and 23*" and inserting: "*7 and 8*".

Amend sec. 20, page 4, line 44, by deleting "*21*" and inserting "*6*".

Amend sec. 20, page 4, line 45, by deleting: "*prepaid,*" and inserting: "*prepaid or sent by facsimile machine*".

Amend sec. 21, page 5, line 4, by deleting: "*19 or 20*" and inserting: "*4 or 5*".

Amend sec. 22, page 5, line 25, by deleting: "*19 or 20*" and inserting: "*4 or 5*".

Amend sec. 22, page 5, line 26, by deleting "*21*" and inserting "*6*".

Amend sec. 23, page 5, line 30, by deleting "*20*" and inserting "*5*".

Amend sec. 24, page 5, line 35, by deleting "*19*" and inserting "*4*".

Amend sec. 24, page 5, line 36, by deleting "*20*" and inserting "*5*".

Amend sec. 24, page 5, line 44, by deleting "*19*" and inserting "*4*".

Amend sec. 25, page 6, line 4, by deleting "*21*" and inserting "*6*".

Amend sec. 25, page 6, line 5, by deleting: "*19 or 20*" and inserting: "*4 or 5*".

Amend sec. 26, page 6, line 10, by deleting: "*19 or 20*" and inserting: "*4 or 5*".

Amend sec. 27, page 6, line 15, by deleting: "*19 or 20*" and inserting: "*4 or 5*".

Amend sec. 28, page 6, line 19, by deleting: "*19 or 20*" and inserting: "*4 or 5*".

Amend sec. 29, page 6, line 24, by deleting: "*19 or 20*" and inserting: "*4 or 5*".

Amend sec. 29, page 6, line 29, by deleting: "*19 or 20*" and inserting: "*4 or 5*".

Amend sec. 29, page 6, line 34, by deleting: "*19 or 20*" and inserting: "*4 or 5*".

Amend sec. 30, page 6, line 37, by deleting: "*19 or 20*" and inserting: "*4 or 5*".

Amend sec. 31, page 6, line 39, by deleting "*trust,*" and inserting: "*trust and the deed of trust authorizes a partial reconveyance of the estate in real property in consideration of a partial discharge,*".

Amend sec. 31, page 7, line 32, by deleting "*and*".

**19**

Amend sec. 31, page 7, line 33, by deleting "*release.*" and inserting: "*release; and*

(g) *The legal description of the estate in real property which is reconveyed.*".

Amend sec. 34, page 9, line 40, by deleting "5" and inserting "2".

Amend the bill as a whole by renumbering sec. 35 as sec. 21 and adding a new section designated sec. 20, following sec. 34, to read as follows:

"Sec. 20.   NRS 17.150 is hereby amended to read as follows:

17.150   1.   Immediately after filing a judgment roll the clerk shall make the proper entries of the judgment, under appropriate heads, in the docket kept by him, noting thereon the hour and minutes of the day of such entries.

2.   A transcript of the original docket or an abstract or copy of any judgment or decree of a district court of the State of Nevada or the District Court or other court of the United States in and for the District of Nevada, the enforcement of which has not been stayed on appeal, certified by the clerk of the court where the judgment or decree was rendered, may be recorded in the office of the county recorder in any county, and when so recorded it becomes a lien upon all the real property of the judgment debtor not exempt from execution in that county, owned by him at the time, or which he may afterward acquire, until the lien expires. The lien continues for 6 years [from] *after* the date the judgment or decree was docketed, and is continued each time the judgment or decree is renewed, unless:

(a) The enforcement of the judgment or decree is stayed on appeal by the execution of a sufficient undertaking as provided in the Nevada Rules of Appellate Procedure or by the Statutes of the United States, in which case the lien of the judgment or decree and any lien by virtue of an attachment that has been issued and levied in the actions ceases;

(b) The judgment is for arrearages in the payment of child support, in which case the lien continues until the judgment is satisfied;

(c) The judgment is satisfied; or

(d) The lien is otherwise discharged.

The time during which the execution of the judgment is suspended by appeal, action of the court or defendant must not be counted in computing the time of expiration.

3.   The abstract described in subsection 2 must contain the:

(a) Title of the court and the title and number of the action;

(b) Date of entry of the judgment or decree;

(c) Names of the judgment debtor and judgment creditor;

(d) Amount of the judgment or decree; and

(e) Location where the judgment or decree is entered in the minutes or judgment docket.

*4.   A judgment creditor who records a judgment or decree shall record at that time an affidavit stating:*

*(a) The name and address of the judgment debtor;*

*(b) The judgment debtor's driver's license number and state of issuance or the judgment debtor's social security number; and*

*(c) The judgment debtor's date of birth.*

*if known to the judgment creditor. If any of the information is not known, the affidavit must include a statement of that fact.''.*

Amend the bill as a whole by deleting sec. 36 and renumbering sections 37 through 41 as sections 22 through 26.

Amend sec. 39, page 12, line 12, by deleting: ''40 and 41'' and inserting: ''25 and 26''.

Amend the bill as a whole by deleting sec. 42.

Amend the title of the bill to read as follows:

''An Act relating to real property; requiring a beneficiary of a deed of trust to mail or send by facsimile machine certain statements regarding the deed of trust to the grantor of the deed of trust if those statements are requested by the grantor; authorizing the beneficiary to impose a fee for the issuance of those statements; requiring the beneficiary of certain deeds of trust to deliver to the trustee a request for a partial reconveyance of the estate in real property if the debts secured by those deeds of trust have been partially discharged; requiring a judgment creditor to record an affidavit of renewal to renew an unpaid judgment which has been recorded; authorizing a party to an escrow agreement to collect damages from the other party to the agreement if he refuses to execute a document necessary to release the money deposited in escrow under certain circumstances; providing a penalty; and providing other matters properly relating thereto.''.

Senator James moved the adoption of the amendment.

Remarks by Senator James.

Amendment adopted.

Bill ordered reprinted, engrossed and to third reading.

Senate Bill No. 479.

Bill read second time.

The following amendment was proposed by the Committee on Commerce and Labor:

Amendment No. 1023.

Amend sec. 2, page 1, line 3, after ''*create*'' by inserting ''*and appoint*''.

Amend sec. 2, page 1, line 4, by deleting ''*assist and*''.

Amend sec. 2, page 1, by deleting lines 6 through 10 and inserting: ''*inclusive. Any such committee must be created by a regulation adopted in accordance with the provisions of chapter 233B of NRS. The regulation must specify:*

*1.  The membership of the committee;*

*2.  The duties of the committee and the purpose for which it is created;*

*3.  The period of existence of the committee; and*

*4.  The rules for the governance of the committee.*

*The membership of the committee must include a member who is a representative of any business or industry which may be affected by any advice provided by the committee. The members of an advisory committee created pursuant to this section serve without compensation unless an appropriation or other money for that purpose is provided by the legislature.''.*

Amend sec. 3, page 1, by deleting line 11 and inserting:

## (REPRINTED WITH ADOPTED AMENDMENTS)
## FIRST REPRINT                                S.B. 455

SENATE BILL NO. 455—COMMITTEE ON JUDICIARY

MAY 5, 1995

Referred to Committee on Judiciary

SUMMARY—Makes various changes to provisions governing real property. (BDR 9-1006)

FISCAL NOTE:   Effect on Local Government: Yes.
               Effect on the State or on Industrial Insurance: No.



EXPLANATION—Matter in italics is new; matter in brackets [ ] is material to be omitted.

AN ACT relating to real property; requiring a beneficiary of a deed of trust to mail or send by
facsimile machine certain statements regarding the deed of trust to the grantor of the
deed of trust if those statements are requested by the grantor; authorizing the benefici-
ary to impose a fee for the issuance of those statements; requiring the beneficiary of
certain deeds of trust to deliver to the trustee a request for a partial reconveyance of
the estate in real property if the debts secured by those deeds of trust have been
partially discharged; requiring a judgment creditor to record an affidavit of renewal to
renew an unpaid judgment which has been recorded; authorizing a party to an escrow
agreement to collect damages from the other party to the agreement if he refuses to
execute a document necessary to release the money deposited in escrow under certain
circumstances; providing a penalty; and providing other matters properly relating
thereto.

THE PEOPLE OF THE STATE OF NEVADA, REPRESENTED IN SENATE
AND ASSEMBLY, DO ENACT AS FOLLOWS:

    **Section 1.** Chapter 107 of NRS is hereby amended by adding thereto the
provisions set forth as sections 2 to 17, inclusive, of this act.
    **Sec. 2.** *As used in this chapter:*
    *1. "Facsimile machine" means a device which receives and copies a
reproduction or facsimile of a document or photograph which is transmitted
electronically or telephonically by telecommunications lines.*
    *2. "Title insurer" has the meaning ascribed to it in NRS 692A.070.*
    **Sec. 3.** *The provisions of section 15 of this act do not apply to deeds of
trust insured by the Federal Housing Administrator or guaranteed by the
Secretary of Veterans Affairs.*
    **Sec. 4.** *Except as otherwise provided in section 7 of this act, the benefici-
ary of a deed of trust secured on or after October 1, 1995, shall, within 21
days after receiving a request from a person authorized to make such a
request pursuant to section 6 of this act, cause to be mailed, postage prepaid
or sent by facsimile machine to that person a statement regarding the debt
secured by the deed of trust. The statement must include:*
    *1. The amount of the unpaid balance of the debt secured by the deed of
trust, the rate of interest on the unpaid balance and the total amount of
principal and interest which is due and has not been paid.*

22

– 2 –

2. The amount of the periodic payments, if any, required under the note.

3. The date the payment of the debt is due.

4. The period for which real estate taxes and special assessments have been paid, if that information is known to the beneficiary.

5. The amount of property insurance covering the real property and the term and premium of that insurance, if that information is known to the beneficiary.

6. The amount in an account, if any, maintained for the accumulation of money for the payment of taxes and insurance premiums.

7. The amount of any additional charges, costs or expenses paid or incurred by the beneficiary which is a lien on the real property described in the deed of trust.

8. Whether the debt secured by the deed of trust may be transferred to a person other than the grantor.

Sec. 5. Except as otherwise provided in sections 7 and 8 of this act, the beneficiary of a deed of trust secured on or after October 1, 1995, shall, within 21 days after receiving a request from a person authorized to make such a request pursuant to section 6 of this act, cause to be mailed, postage prepaid or sent by facsimile machine to that person a statement of the amount necessary to discharge the debt secured by the deed of trust. The statement must set forth:

1. The amount of money necessary to discharge the debt secured by the deed of trust on the date the statement is prepared by the beneficiary; and

2. The information necessary to determine the amount of money required to discharge the debt on a per diem basis for a period, not to exceed 30 days, after the statement is prepared by the beneficiary.

Sec. 6. 1. A statement described in section 4 or 5 of this act may be requested by:

(a) The grantor, or his successor in interest in, the property which is the subject of the deed of trust;

(b) A person who has a subordinate lien or encumbrance of record on the property which is secured by the deed of trust;

(c) A title insurer; or

(d) An authorized agent of any person described in paragraph (a), (b) or (c).

A written statement signed by any person described in paragraph (a), (b) or (c) which appoints a person to serve as his agent if delivered personally to the beneficiary or delivered by mail, return receipt requested, is proof of the identity of an agent.

2. For the purposes of paragraph (a) of subsection 1, a policy of title insurance, preliminary report issued by a title company, certified copy of letters testamentary or letters of guardianship, or an original or photographic copy of a deed, if delivered personally to the beneficiary or delivered by mail, return receipt requested, is proof of the identity of a successor in interest of the grantor, if the person demanding the statement is named as successor in interest in the document.

Sec. 7. A beneficiary may, before mailing a statement described in section 4 or 5 of this act, require the person who requested the statement to prove

– 3 –

that is authorized to request that statement pursuant to section 6 of this act. If the beneficiary requires such proof, he must mail the statement within 21 days after he receives that proof from the requester.

Sec. 8. If the debt secured by a deed of trust for which a statement described in section 5 of this act has been requested is subject to a recorded notice of default or a filed complaint commencing a judicial foreclosure, the beneficiary may refuse to deliver the statement unless the written request for the statement is received before the publication of a notice of sale or the notice of the date of sale established by a court.

Sec. 9. 1. A person who receives a statement pursuant to section 4 or 5 may rely upon the accuracy of the information contained in the statement. If the beneficiary notifies the person who requested the statement of any amendment to the statement, the amended statement may be relied upon by that person in the same manner as the original statement.

2. If notification of an amendment to a statement is not given in writing, a written amendment to the statement must be delivered to the person who requested the original statement not later than the next business day after notification.

3. If a statement prepared by the beneficiary pursuant to section 4 of this act does not contain the entire amount necessary to discharge the debt secured by the deed of trust and:

(a) A transaction has occurred which has resulted in the transfer of title or recordation of a lien; or

(b) A trustee's sale or a sale supervised by a court has taken place, the beneficiary may recover that money as an unsecured debt of the grantor pursuant to the terms of the note.

Sec. 10. If a person who is authorized pursuant to section 6 of this act to request a statement described in section 4 or 5 of this act includes in his request for such a statement a request for a copy of the note or deed of trust, the beneficiary shall mail a copy of the note or deed of trust with the statement at no additional charge.

Sec. 11. If the beneficiary has more than one place of business, a request for a statement described in section 4 or 5 of this act must be made to the address to which the periodic payments under the note are made. If no periodic payments are made under the note, the request must be mailed to the address of the beneficiary listed on the note or deed of trust.

Sec. 12. Except as otherwise provided in a statement described in section 4 or 5 of this act, the information contained in the statement applies only to the debt secured by the deed of trust which is payable at the address to which the periodic payments are made. If periodic payments are not made under the note, the statement applies only to the entire debt secured by the deed of trust.

Sec. 13. If a person requests a statement described in section 4 or 5 of this act and it is not clear from the request which statement is requested, the request shall be deemed a request for a statement of the amount necessary to discharge the debt secured by a deed of trust.

Sec. 14. 1. A beneficiary who willfully fails to deliver a statement requested pursuant to section 4 or 5 of this act within 21 days after it is requested is liable to the person who requested the statement in an amount of

23

– 4 –

$300 and any actual damages suffered by the person who requested the statement.

2. A judgment awarded to a person who requested a statement pursuant to section 4 or 5 of this act for failure to deliver a statement bars recovery of damages for any other failure to deliver that statement pursuant to a demand made within 6 months before or after the demand for which the judgment was awarded.

Sec. 15. The beneficiary may charge a fee of not more than $60 for each statement furnished pursuant to section 4 or 5 of this act.

Sec. 16. 1. If a deed of trust made on or after October 1, 1995, authorizes the grantor to discharge in part the debt secured by the deed of trust and the deed of trust authorizes a partial reconveyance of the estate in real property in consideration of a partial discharge, the beneficiary shall, within 21 calendar days after receiving notice that the debt secured by the deed of trust has been partially discharged deliver to the trustee a properly executed request for a partial reconveyance of the estate in real property conveyed to the trustee by the grantor.

2. Within 45 calendar days after a debt secured by a deed of trust made on or after October 1, 1995, is partially discharged and a properly executed request for a partial reconveyance is received by the trustee, the trustee shall cause to be recorded a partial reconveyance of the deed of trust.

3. If the beneficiary fails to deliver to the trustee a properly executed request for a partial reconveyance pursuant to subsection 1, or if the trustee fails to cause to be recorded a partial reconveyance of the deed of trust pursuant to subsection 2, the beneficiary or the trustee, as the case may be, is liable in a civil action to the grantor, his heirs or assigns in the amount of $100, plus a reasonable attorney's fee and the costs of bringing the action, and he is liable in a civil action to any party to the deed of trust for any actual damages caused by his failure to comply with the provisions of this section and for a reasonable attorney's fee and the costs of bringing the action.

4. Except as otherwise provided in this subsection, if a partial reconveyance is not recorded pursuant to subsection 2 within 75 calendar days after the partial satisfaction of the debt, if the satisfaction was made on or after October 1, 1995, a title insurer may prepare and cause to be recorded a partial release of the deed of trust. At least 30 calendar days before the recording of a partial release pursuant to this subsection, the title insurer shall mail, by first-class mail, postage prepaid, notice of the intention to record the partial release of the deed of trust to the trustee, trustor and beneficiary of record, or their successors in interest, at the last known address of each such person. A partial release prepared and recorded pursuant to this subsection shall be deemed a partial reconveyance of a deed of trust. The title insurer shall not cause a partial release to be recorded pursuant to this subsection if the title insurer receives written instructions to the contrary from the trustee, trustor, owner of the land, holder of the escrow or owner of the debt secured by the deed of trust, or his agent.

5. The release prepared pursuant to subsection 4 must set forth:

– 5 –

(a) The name of the beneficiary;

(b) The name of the trustor;

(c) The recording reference to the deed of trust;

(d) A statement that the debt secured by the deed of trust has been partially discharged;

(e) The date and amount of partial payment or other partial satisfaction or discharge;

(f) The name and address of the title insurer issuing the partial release; and

(g) The legal description of the estate in real property which is reconveyed.

6. A partial release prepared and recorded pursuant to subsection 4 does not relieve a beneficiary or trustee of the requirements imposed by subsections 1 and 2.

7. A trustee may charge a reasonable fee to the trustor or the owner of the land for services relating to the preparation, execution or recordation of a partial reconveyance or partial release pursuant to this section. A trustee shall not require the fees to be paid before the opening of an escrow or earlier than 60 calendar days before the partial payment or partial satisfaction or discharge of the debt secured by the deed of trust. If a fee charged pursuant to this subsection does not exceed $100, the fee is conclusively presumed to be reasonable.

8. In addition to any other remedy provided by law, a title insurer who improperly causes to be recorded a partial release of a deed of trust pursuant to this section is liable for actual damages and a reasonable attorney's fee to any person who is injured because of the improper recordation of the partial release.

9. Any person who willfully violates this section is guilty of a misdemeanor.

Sec. 17. Notwithstanding any other provision of law, a deed of trust given to secure a loan made to purchase the real property on which the deed of trust is given has priority over all other liens created against the purchaser before he acquires title to the real property.

Sec. 18. NRS 107.077 is hereby amended to read as follows:

107.077  1. Within 21 calendar days after receiving written notice that a debt secured by a deed of trust made on or after October 1, 1991, has been paid or otherwise satisfied or discharged, the beneficiary shall deliver to the trustee or the trustor the original note and deed of trust, if he is in possession of those documents, and a properly executed request to reconvey the estate in real property conveyed to the trustee by the grantor. If the beneficiary delivers the original note and deed of trust to the trustee or the trustee has those documents in his possession, the trustee shall deliver those documents to the grantor.

2. Within 45 calendar days after a debt secured by a deed of trust made on or after October 1, 1991, is paid or otherwise satisfied or discharged, and a properly executed request to reconvey is received by the trustee, the trustee shall cause to be recorded a reconveyance of the deed of trust.

3. If the beneficiary fails to deliver to the trustee a properly executed request to reconvey pursuant to subsection 1, or if the trustee fails to cause to

24

– 6 –

be recorded a reconveyance of the deed of trust pursuant to subsection 2, the beneficiary or the trustee, as the case may be, is liable in a civil action to the grantor, his heirs or assigns in the sum of $100, plus a reasonable attorney's fee and the costs of bringing the action, and he is liable in a civil action to any party to the deed of trust for any actual damages caused by his failure to comply with the provisions of this section and for a reasonable attorney's fee and the costs of bringing the action.

4. Except as otherwise provided in this subsection, if a reconveyance is not recorded pursuant to subsection 2 within:

(a) Seventy-five calendar days after the payment, satisfaction or discharge of the debt, if the payment, satisfaction or discharge was made on or after October 1, 1993; or

(b) Ninety calendar days after the payment, satisfaction or discharge of the debt, if the payment, satisfaction or discharge was made before October 1, 1993,

a title insurer may prepare and cause to be recorded a release of the deed of trust. At least 30 calendar days before the recording of a release pursuant to this subsection, the title insurer shall mail, by first-class mail, postage prepaid, notice of the intention to record the release of the deed of trust to the trustee, trustor and beneficiary of record, or their successors in interest, at the [last-known] *last known* address of each such person. A release prepared and recorded pursuant to this subsection shall be deemed a reconveyance of a deed of trust. The title insurer shall not cause a release to be recorded pursuant to this subsection if the title insurer receives written instructions to the contrary from the trustee, the trustor, the owner of the land, the holder of the escrow or the owner of the debt secured by the deed of trust or his agent.

5. The release prepared pursuant to subsection 4 must set forth:

(a) The name of the beneficiary;

(b) The name of the trustor;

(c) The recording reference to the deed of trust;

(d) A statement that the debt secured by the deed of trust has been paid in full or otherwise satisfied or discharged;

(e) The date and amount of payment or other satisfaction or discharge; and

(f) The name and address of the title insurer issuing the release.

6. A release prepared and recorded pursuant to subsection 4 does not relieve a beneficiary or trustee of the requirements imposed by subsections 1 and 2.

7. A trustee may charge a reasonable fee to the trustor or the owner of the land for services relating to the preparation, execution or recordation of a reconveyance or release pursuant to this section. A trustee shall not require the fees to be paid before the opening of an escrow, or earlier than 60 calendar days before the payment, satisfaction or discharge of the debt secured by the deed of trust. If a fee charged pursuant to this subsection does not exceed $100, the fee is conclusively presumed to be reasonable.

8. In addition to any other remedy provided by law, a title insurer who improperly causes to be recorded a release of a deed of trust pursuant to this section is liable for actual damages and a reasonable attorney's fee to any person who is injured because of the improper recordation of the release.

– 7 –

9. Any person who willfully violates this section is guilty of a misdemeanor.

[10. As used in this section, "title insurer" has the meaning ascribed to it in NRS 692A.070.]

Sec. 19. NRS 108.665 is hereby amended to read as follows:

108.665 1. A lien for charges owed to a hospital may be foreclosed by a suit in the district court in the same manner as an action for foreclosure of any other lien.

2. The lien may not be foreclosed during the:

(a) Lifetime of the owner of the property, his spouse, his dependent adult child if that child is mentally or physically disabled or a joint tenant if he was a joint tenant at the time of the patient's discharge; or

(b) Minority of any child of the owner,

if the owner or joint tenant resides on the property, or his spouse, dependent or minor child resides on the property and has acquired title thereto.

3. *If the hospital does not file a suit to foreclose the lien within 2 years after the date the notice of lien is recorded by the hospital, the lien is extinguished.*

Sec. 20. NRS 17.150 is hereby amended to read as follows:

17.150 1. Immediately after filing a judgment roll the clerk shall make the proper entries of the judgment, under appropriate heads, in the docket kept by him, noting thereon the hour and minutes of the day of such entries.

2. A transcript of the original docket or an abstract or copy of any judgment or decree of a district court of the State of Nevada or the District Court or other court of the United States in and for the District of Nevada, the enforcement of which has not been stayed on appeal, certified by the clerk of the court where the judgment or decree was rendered, may be recorded in the office of the county recorder in any county, and when so recorded it becomes a lien upon all the real property of the judgment debtor not exempt from execution in that county, owned by him at the time, or which he may afterward acquire, until the lien expires. The lien continues for 6 years [from] *after* the date the judgment or decree was docketed, and is continued each time the judgment or decree is renewed, unless:

(a) The enforcement of the judgment or decree is stayed on appeal by the execution of a sufficient undertaking as provided in the Nevada Rules of Appellate Procedure or by the Statutes of the United States, in which case the lien of the judgment or decree and any lien by virtue of an attachment that has been issued and levied in the actions ceases;

(b) The judgment is for arrearages in the payment of child support, in which case the lien continues until the judgment is satisfied;

(c) The judgment is satisfied; or

(d) The lien is otherwise discharged.

The time during which the execution of the judgment is suspended by appeal, action of the court or defendant must not be counted in computing the time of expiration.

3. The abstract described in subsection 2 must contain the:

(a) Title of the court and the title and number of the action;

(b) Date of entry of the judgment or decree;

– 8 –

(c) Names of the judgment debtor and judgment creditor;

(d) Amount of the judgment or decree; and

(e) Location where the judgment or decree is entered in the minutes or judgment docket.

4. A judgment creditor who records a judgment or decree shall record at that time an affidavit stating:

(a) The name and address of the judgment debtor;

(b) The judgment debtor's driver's license number and state of issuance or the judgment debtor's social security number; and

(c) The judgment debtor's date of birth,

if known to the judgment creditor. If any of the information is not known, the affidavit must include a statement of that fact.

Sec. 21. NRS 17.214 is hereby amended to read as follows:

17.214  1. A judgment creditor or his successor in interest may renew a judgment which has not been paid by [filing] :

(a) Filing an affidavit with the clerk of the court where the judgment is entered and docketed, within 90 days before the date the judgment expires by limitation. The affidavit must specify:

[(a)] (1) The names of the parties and the name of the judgment creditor's successor in interest, if any, and the source and succession of his title;

[(b)] (2) If the judgment is recorded, the name of the county and the number and the page of the book in which it is recorded;

[(c)] (3) The date and the amount of the judgment and the number and page of the docket in which it is entered;

[(d)] (4) Whether there is an outstanding writ of execution for enforcement of the judgment;

[(e)] (5) The date and amount of any payment on the judgment;

[(f)] (6) Whether there are any setoffs or counterclaims in favor of the judgment debtor and the amount or, if a setoff or counterclaim is unsettled or undetermined it will be allowed as payment or credit on the judgment;

[(g)] (7) The exact amount due on the judgment;

[(h)] (8) If the judgment was docketed by the clerk of the court upon a certified copy from any other court, and an abstract recorded with the county clerk, the name of each county in which the transcript has been docketed and the abstract recorded; and

[(i)] (9) Any other fact or circumstance necessary to a complete disclosure of the exact condition of the judgment.

All information in the affidavit must be based on the personal knowledge of the affiant, and not upon information and belief.

(b) If the judgment is recorded, recording the affidavit of renewal in the office of the county recorder in which the original judgment is filed within 3 days after the affidavit of renewal is filed pursuant to paragraph (a).

2. The filing of the affidavit renews the judgment to the extent of the amount shown due in the affidavit.

3. The judgment creditor or his successor in interest shall notify the judgment debtor of the renewal of the judgment by sending a copy of the affidavit of renewal by certified mail, return receipt requested, to him at his last known address within 3 days after filing the affidavit.

– 9 –

4. Successive affidavits for renewal may be filed within 90 days before the preceding renewal of the judgment expires by limitation.

Sec. 22. NRS 247.120 is hereby amended to read as follows:

247.120  1. Each county recorder shall, upon the payment of the described statutory fees, record separately, in a manner which will allow a legible copy to be made, the following specified instruments in large, well-bound separate books, either sewed or of insertable leaves which when placed in the book cannot be removed:

(a) Deeds, grants, patents issued by the State of Nevada or by the United States, transfers and mortgages of real estate, releases of mortgages of real estate, powers of attorney to convey real estate, and leases of real estate which have been acknowledged or proved.

(b) Certificates of marriage and marriage contracts.

(c) Wills admitted to probate.

(d) Official bonds.

(e) Notice of mechanics' liens.

(f) Transcripts of judgments [,] which by law are made liens upon real estate in this state [,] and affidavits of renewal of those judgments.

(g) Notices of attachment upon real estate.

(h) Notices of the pendency of an action affecting real estate, the title thereto, or the possession thereof.

(i) Instruments describing or relating to the separate property of married persons.

(j) Notice of preemption claims.

(k) Notices and certificates of location of mining claims.

(l) Affidavits of proof of annual labor on mining claims.

(m) Affidavits of intent to hold mining claims recorded pursuant to subsection 3 of NRS 517.230.

(n) Certificates of sale.

(o) Judgments or decrees.

(p) Declarations of homesteads.

(q) Such other writings as are required or permitted by law to be recorded.

2. Each of the instruments named in paragraph (a) of subsection 1 may be recorded in separate books in the discretion of the county recorder.

3. Before accepting for recording any instrument enumerated in subsection 1, the county recorder may require a copy suitable for recording by a method used by the recorder to preserve his records. Where any rights [might] may be adversely affected because of a delay in recording caused by this requirement, the county recorder shall accept the instrument conditionally subject to submission of a suitable copy at a later date. The provisions of this subsection do not apply where it is impossible or impracticable to submit a more suitable copy.

Sec. 23. NRS 627.200 is hereby amended to read as follows:

627.200  Any lender desiring to use the services of a construction control shall first obtain the written consent of the borrower specifying by name the construction control to be used. The lender and borrower shall [then] be deemed to have appointed [such] that construction control as their agent for the particular construction loan for which its services are requested [;] and

— 10 —

1 the acts of the construction control [shall be] *are* binding upon the lender and
2 borrower severally. If a related construction control or the employee or agent
3 of a related construction control, or a lender acting as a construction control
4 or any employee or agent of [such] *a* lender acting as a construction control,
5 violates any of the provisions of this chapter, otherwise than as the result of a
6 good faith error in mathematical computation, then:
7   1. With respect to a particular loan subject to construction control, the
8 construction control and the lender shall each, jointly and severally, be liable
9 for payment of any [and all] mechanic's liens filed against the premises
10 subject to construction [and arising out of any] *to the extent that such a lien is*
11 *the result of a* violation of any provision of this chapter.
12   2. Any mechanic's lien claimant damaged by the violation of any provi-
13 sion of this chapter may jointly or severally proceed with an action on the
14 bond referred to in NRS 627.180, and the rights and remedies under [such]
15 the bond or lien claims and any direct right of action against the lender or
16 construction control [shall be] *are* cumulative, and the lien claimant prevail-
17 ing in any such action [shall be] *is* entitled to reasonable [attorneys'] *attor-*
18 *ney's fees.*
19   Sec. 24.  Chapter 645A of NRS is hereby amended by adding thereto the
20 provisions set forth as sections 25 and 26 of this act.
21   Sec. 25.  1. *Except as otherwise provided in subsection 2 or in the escrow*
22 *agreement between the parties and the holder of the escrow, upon the close of*
23 *an escrow for the sale of real property or on the date the escrow is scheduled*
24 *to close if it has not closed, each party shall execute the documents necessary*
25 *to release the money deposited in the escrow.*
26   2. *A party may refuse to execute a document necessary to release the*
27 *money deposited in the escrow only if a good faith dispute exists concerning*
28 *that money.*
29   3. *If a party refuses to execute a document necessary to release the money*
30 *deposited in the escrow within 30 days after the holder of the escrow makes a*
31 *written request for the execution, the party injured by the other party's failure*
32 *to execute the document may collect from that party:*
33   (a) *Actual damages of not less than $100 nor more than 1 percent of the*
34 *purchase price of the real property for which the money was deposited in the*
35 *escrow, whichever is greater;*
36   (b) *The money deposited in the escrow which was not held to resolve a*
37 *good faith dispute concerning the sale of the property; and*
38   (c) *A reasonable attorney's fee.*
39   Sec. 26.  1. *If an action is filed to recover money deposited in an escrow*
40 *established for the sale of real property, the holder of the escrow may deposit*
41 *the money, less any fees or charges owed to the holder of the escrow, with the*
42 *court in which the action is filed.*
43   2. *A holder of an escrow who complies with the provisions of subsection 1*
44 *is discharged from further responsibility for the money which he deposits with*
45 *the court.*

— 11 —

1   3. *This section does not limit the right of the holder of the escrow to bring*
2 *an action for interpleader pursuant to N.R.C.P. 22 to determine the rightful*
3 *claimant of the money deposited in the escrow.*

®

6/23/95

policy, [have the option of canceling it.] *cancel the policy.* If he elects to cancel, the insurer shall refund to him the excess of the premium paid by him above the pro rata premium for the expired portion of the new term.''.

Senator O'Donnell moved the adoption of the amendment.

Remarks by Senators O'Donnell, Coffin and O'Connell.

Amendment adopted.

Bill ordered reprinted, re-engrossed and to third reading.

Senate Bill No. 349.
Bill read third time.
Roll call on Senate Bill No. 349:
YEAS—20.
NAYS—O'Connell.

Senate Bill No. 349 having received a constitutional majority, Mr. President pro Tempore declared it passed, as amended.

Bill ordered transmitted to the Assembly.

Senate Bill No. 455.
Bill read third time.
Roll call on Senate Bill No. 455:
YEAS—21.
NAYS—None.

Senate Bill No. 455 having received a constitutional majority, Mr. President pro Tempore declared it passed, as amended.

Bill ordered transmitted to the Assembly.

Senate Bill No. 479.
Bill read third time.
Roll call on Senate Bill No. 479:
YEAS—21.
NAYS—None.

Senate Bill No. 479 having received a constitutional majority, Mr. President pro Tempore declared it passed, as amended.

Bill ordered transmitted to the Assembly.

Senate Bill No. 31.
Bill read third time.
Remarks by Senators Rawson, Mathews, Coffin, Adler, Augustine, Lowden, Titus, Neal and Washington.

Senator Titus requested that the following remarks be entered in the Journal.

SENATOR RAWSON:

Thank you, Mr. President pro Tempore. I would like to make a few comments on this significant bill. There has been some controversy with Senate Bill No. 31. This session of the Legislature has brought many people with strong feelings into committees to testify as well as to listen to testimony. Education has been the focus of a lot of that interest. It has brought people forward who have wanted to split the districts. There has been a serious attempt at voucher education. There is ongoing discussion about site-based decision

**28**

## MINUTES OF THE
## ASSEMBLY COMMITTEE ON JUDICIARY

**Sixty-eighth Session**
**June 26, 1995**

The Committee on Judiciary was called to order at 8:13 a.m., on Monday, June 26, 1995, Chairman Humke presiding in Room 332 of the Legislative Building, Carson City, Nevada.  Exhibit A is the Agenda.  Exhibit B is the Attendance Roster.

**COMMITTEE MEMBERS PRESENT:**

> Mr. Bernie Anderson, Chairman
> Mr. David E. Humke, Chairman
> Ms. Barbara E. Buckley, Vice Chairman
> Mr. Brian Sandoval, Vice Chairman
> Mr. Thomas Batten
> Mr. John C. Carpenter
> Mr. David Goldwater
> Mr. Mark Manendo
> Mrs. Jan Monaghan
> Ms. Genie Ohrenschall
> Mr. Richard Perkins
> Mr. Michael A. (Mike) Schneider
> Ms. Dianne Steel
> Ms. Jeannine Stroth

**GUEST LEGISLATORS PRESENT:**

> Assemblyman William Harrington
> Senator Kathy Augustine

**STAFF MEMBERS PRESENT:**

> Dennis Neilander, Research Analyst
> Joi Davis, Committee Secretary

Assembly Committee on Judiciary
June 26, 1995
Page 6

personal service from the mobile home park manager. Mr. Guild added his office, in compliance of the notice statutes under Chapter 40, personally serves notice and sends it through certified mail. Mr. Guild expounded further on the lien process. Ms. Ohrenschall defended her bill with additional comments and explanation soliciting suggestions of amendments to the bill. Chairman Humke appointed A.B. 733 to a subcommittee of Mr. Carpenter, chairman and Ms. Ohrenschall as a member, and announced the committee could deal with the bill better at a work session.

**SENATE BILL 434** -    **Makes various changes to provisions governing statutory liens.**

Pat Coward, Nevada Land Title Association introduced Charles Cook, legal staff for the association and legislative chairmen, stating Mr. Cook would explain the bill. Mr. Cook stated S.B. 434 addresses changes to the mechanic's lien statutes only to bring Nevada in line with sister states in terms of competitiveness and in continuity of economic investments.

Mr. Cook summarized there was a section in the bill dealing with a lien if someone believes the lien is frivolous. If it is shown not to be frivolous then the party raising the objection is assessed attorneys' fees. Also, there are sections in the bill that are critical in bringing Nevada in line with sister states. For instance, there is a provision when there is a separate contract to have separate lien rights for site improvements and off-site improvements in separate buildings, etc. In addition, Mr. Cook added there is a change to bring the rate of interest that can accrue on a mechanic's lien in line with the current rate available for judgments which is a floating rate based on NRS 99.040. Lastly, there are some clarifications to the bill pertaining to release of liens. All the changes have been discussed at length with home builders, contractor's boards, and numerous others for the past several years.

**SENATE BILL 455** -    **Makes various changes governing real property.**

Pat Coward, Nevada Land Title Association, again introduced Mr. Charles Cook, legal counsel to the association, to explain S.B. 455. Mr. Cook stated S.B. 455 was designed to address various problems in the statutes governing real property. In particular, there have been difficulties in obtaining reconveyances from lenders which is especially abused by out-of-state lenders. The current statutes do not allow for remedies except the homeowner can file a lawsuit. They hope S.B. 455 will help eliminate the clouds placed on titles and enable reconveyances.

Assembly Committee on Judiciary
June 26, 1995
Page 7

Mr. Cook stated another provision in the bill allows for partial release of the deed of trust which parallels NRS 107.077 dealing with full releases. Mr. Cook stated currently there is no deed of trust priority and the courts in equity have awarded it over the years. The only way to conclude there is a priority is by a legal action. S.B. 455, Section 17, is designed to codify those cases and clearly define the purchase money in the deed of trust has priority over other liens. Also, Section 19 deals with hospital liens. Section 21 deals with renewal requirements for judgments. Lastly, Mr. Cook stated Sections 25 and 26 deal with escrow cancellation disputes and establishes fines for bad faith acts thereto. Section 20 deals with judgments against common names, such as "John Smith", requiring an affidavit for more specific information such as date of birth, social security number.

Chairman Humke expounded on a case he had in private practice. Discussion ensued.

Ms. Steel asked, with regard to hospital liens set forth on page 9 of the bill, why are they forced into filing a lawsuit at the expiration of a lien? Mr. Cook responded hospitals are rare entities with no limitation upon the length of time their lien will remain on real property and in most all others, there is a length of time in which the lien becomes invalidated and must be renewed, usually five years.

Mr. Carpenter asked for clarification on page three, section nine, subsection (2). Mr. Cook explained if they give a statement regarding the loan and then follow it up with a verbal exchange, this section would just require that the verbal exchange be followed up in writing.

There being no further questions or testimony on S.B. 455, Chairman Humke closed the hearing on the bill.

<u>**SENATE BILL 467**</u> -          **Revises provisions governing use of devices for restraining children in motor vehicles.**

Rota Rosaschi, Chief of Benefits and Support, Nevada State Welfare, stated the division she is in currently administers a toddler, child safety seat program. Ms. Rosaschi stated the bill on the Senate side when originally introduced was done so as a funding source for the Welfare division to continue its child safety seat program. Since that time, they have issued over 1,200 safety seats to low income families receiving public assistance.

Assembly Committee on Judiciary
June 26, 1995
Page 12

weapons. Mr. Batten stated he would like a legal opinion as to the constitutionality of that issue. Further discussion ensued.

Mr. Carpenter stated he would like to go through the bill and the amendments line by line and discuss and vote on the bill at a time certain. Mr. Batten asked if other amendments could be considered. Chairman Humke stated no later than tomorrow.

__SENATE BILL 434__ - **Makes various changes to provisions governing statutory liens.**

ASSEMBLYMAN CARPENTER MOVED DO PASS S.B. 434.

ASSEMBLYMAN STROTH SECONDED THE MOTION.

THE MOTION CARRIED. ASSEMBLYMEN BUCKLEY, SANDOVAL, AND SCHNEIDER WERE NOT PRESENT FOR THE VOTE.

* * * * *

__SENATE BILL 455__ - **Makes various changes to provisions governing real property.**

ASSEMBLYMAN STEEL MOVED DO PASS S.B. 455.

ASSEMBLYMAN STROTH SECONDED THE MOTION.

THE MOTION CARRIED. ASSEMBLYMEN BUCKLEY, SANDOVAL, AND SCHNEIDER WERE NOT PRESENT FOR THE VOTE. ASSEMBLYMAN ANDERSON ABSTAINED.

* * * * *

__SENATE BILL 467__ - **Revises provisions governing use of devices for restraining children in motor vehicles.**

ASSEMBLYMAN ANDERSON MOVED DO PASS S.B. 467.

ASSEMBLYMAN BATTEN SECONDED THE MOTION.

Committee discussion was held regarding the law being unenforceable and the

*(c) Has provided evidence that he has filed with the commission a liability insurance policy, a certificate of insurance or a bond of a surety and bonding company or other surety required for every common and contract motor carrier pursuant to the provisions of NRS 706.291.".*

Amend sec. 18, page 5, line 1, after "provisions of" by inserting: "paragraph (a) of subsection 1 of".

Amend sec. 18, page 5, line 3, by deleting "October" and inserting "July".

Amend sec. 19, page 5, line 5, by deleting "October" and inserting "July".

Amend sec. 19, page 5, line 8, by deleting "October" and inserting "July".

Assemblyman Batten moved the adoption of the amendment.

Remarks by Assemblyman Batten.

Amendment adopted.

Bill ordered reprinted, re-engrossed and to third reading.

Senate Bill No. 454.
Bill read second time and ordered to third reading.

Senate Bill No. 455.
Bill read second time and ordered to third reading.

Senate Bill No. 467.
Bill read second time and ordered to third reading.

Senate Bill No. 470.
Bill read second time and ordered to third reading.

Senate Bill No. 505.
Bill read second time.

The following amendment was proposed by the Committee on Commerce:

Amendment No. 1292.

Amend sec. 2, page 1, by deleting lines 3 through 26 and inserting:

"Sec. 2.  *1.  No cause of action arises, nor may any liability be imposed against any person for the act of communicating or delivering information or data to the commissioner or his authorized representative or examiner pursuant to an examination made under this chapter, if the act of communication or delivery was performed in good faith and without fraudulent intent, the intent to deceive or gross negligence.*

*2.  The commissioner, his authorized representative or any examiner appointed by him is entitled to an award of attorney's fees and costs if he is the prevailing party in a civil cause of action for libel, slander or any other relevant tort arising out of activities in carrying out the provisions of NRS 679B.230 to 679B.300, inclusive, and the party bringing the action was not substantially justified in doing so. For the purposes of this subsection, an action is "substantially justified" if it had a reasonable basis in law or fact at the time that it was brought.".*

Amend sec. 9, page 5, line 44, after "*determines*" by inserting: "*after a hearing*".

1740 JOURNAL OF THE ASSEMBLY    6/27/95

Senate Bill No. 434 having received a constitutional majority, Mr. Speaker declared it passed.

Bill ordered transmitted to the Senate.

Senate Bill No. 454.
Bill read third time.
Remarks by Assemblyman Stroth.
Roll call on Senate Bill No. 454:
YEAS—40.
NAYS—Williams.
Absent—Fettic.

Senate Bill No. 454 having received a constitutional majority, Mr. Speaker declared it passed.

Bill ordered transmitted to the Senate.

Senate Bill No. 455.
Bill read third time.
Remarks by Assemblyman Steel.
Roll call on Senate Bill No. 455:
YEAS—41.
NAYS—None.
Absent—Fettic.

Senate Bill No. 455 having received a constitutional majority, Mr. Speaker declared it passed.

Bill ordered transmitted to the Senate.

Senate Bill No. 464.
Bill read third time.
Remarks by Assemblyman Carpenter.

Assemblyman Arberry moved that the Assembly recess subject to the call of the Chair.

Motion carried.

Assembly in recess at 12:53 p.m.


## ASSEMBLY IN SESSION

At 1:26 p.m.
Mr. Speaker presiding.
Quorum present.

Assemblyman Anderson moved that Senate Bill No. 464 be taken from the General File and placed on the Chief Clerk's desk.

Motion carried.

## REPORTS OF COMMITTEES

*Mr. Speaker:*

Your Committee on Ways and Means, to which was re-referred Senate Bill No. 401, has had the same under consideration, and begs leave to report the same back with the recommendation: Do pass, as amended.

JOHN MARVEL, *Chairman*

person has exhausted his administrative remedies provided by NRS 209.243 and the regulations adopted pursuant thereto.

2. The filing of an administrative claim pursuant to NRS 209.243 is not a condition precedent to the filing of an action pursuant to NRS 41.031.

3. An action filed by a person in accordance with this section before the exhaustion of his administrative remedies must be stayed by the court in which the action is filed until the administrative remedies are exhausted. The court shall dismiss the action if the person has not timely filed his administrative claim pursuant to NRS 209.243.

4. If a person has exhausted his administrative remedies and has filed and is proceeding with a civil action *to recover compensation* for the loss of his *personal* property, *property damage, personal injuries or any other claim arising out of a tort,* the office of the attorney general must initiate and conduct all negotiations for settlement relating to that action.

**Sec. 3.** The amendatory provisions of this act do not apply to actions filed against the department of prisons before October 1, 1995.

Senate Bill No. 455—Committee on Judiciary

CHAPTER 475

AN ACT relating to real property; requiring a beneficiary of a deed of trust to mail or send by facsimile machine certain statements regarding the deed of trust to the grantor of the deed of trust if those statements are requested by the grantor; authorizing the beneficiary to impose a fee for the issuance of those statements; requiring the beneficiary of certain deeds of trust to deliver to the trustee a request for a partial reconveyance of the estate in real property if the debts secured by those deeds of trust have been partially discharged; requiring a judgment creditor to record an affidavit of renewal to renew an unpaid judgment which has been recorded; authorizing a party to an escrow agreement to collect damages from the other party to the agreement if he refuses to execute a document necessary to release the money deposited in escrow under certain circumstances; providing a penalty; and providing other matters properly relating thereto.

[Approved July 1, 1995]

THE PEOPLE OF THE STATE OF NEVADA, REPRESENTED IN SENATE AND ASSEMBLY, DO ENACT AS FOLLOWS:

**Section 1.** Chapter 107 of NRS is hereby amended by adding thereto the provisions set forth as sections 2 to 17, inclusive, of this act.

**Sec. 2.** *As used in this chapter:*

*1. "Facsimile machine" means a device which receives and copies a reproduction or facsimile of a document or photograph which is transmitted electronically or telephonically by telecommunications lines.*

*2. "Title insurer" has the meaning ascribed to it in NRS 692A.070.*

**Sec. 3.** *The provisions of section 15 of this act do not apply to deeds of trust insured by the Federal Housing Administrator or guaranteed by the Secretary of Veterans Affairs.*

*Sec. 4. Except as otherwise provided in section 7 of this act, the beneficiary of a deed of trust secured on or after October 1, 1995, shall, within 21 days after receiving a request from a person authorized to make such a request pursuant to section 6 of this act, cause to be mailed, postage prepaid or sent by facsimile machine to that person a statement regarding the debt secured by the deed of trust. The statement must include:*

*1. The amount of the unpaid balance of the debt secured by the deed of trust, the rate of interest on the unpaid balance and the total amount of principal and interest which is due and has not been paid.*

*2. The amount of the periodic payments, if any, required under the note.*

*3. The date the payment of the debt is due.*

*4. The period for which real estate taxes and special assessments have been paid, if that information is known to the beneficiary.*

*5. The amount of property insurance covering the real property and the term and premium of that insurance, if that information is known to the beneficiary.*

*6. The amount in an account, if any, maintained for the accumulation of money for the payment of taxes and insurance premiums.*

*7. The amount of any additional charges, costs or expenses paid or incurred by the beneficiary which is a lien on the real property described in the deed of trust.*

*8. Whether the debt secured by the deed of trust may be transferred to a person other than the grantor.*

*Sec. 5. Except as otherwise provided in sections 7 and 8 of this act, the beneficiary of a deed of trust secured on or after October 1, 1995, shall, within 21 days after receiving a request from a person authorized to make such a request pursuant to section 6 of this act, cause to be mailed, postage prepaid or sent by facsimile machine to that person a statement of the amount necessary to discharge the debt secured by the deed of trust. The statement must set forth:*

*1. The amount of money necessary to discharge the debt secured by the deed of trust on the date the statement is prepared by the beneficiary; and*

*2. The information necessary to determine the amount of money required to discharge the debt on a per diem basis for a period, not to exceed 30 days, after the statement is prepared by the beneficiary.*

*Sec. 6. 1. A statement described in section 4 or 5 of this act may be requested by:*

*(a) The grantor of, or his successor in interest in, the property which is the subject of the deed of trust;*

*(b) A person who has a subordinate lien or encumbrance of record on the property which is secured by the deed of trust;*

*(c) A title insurer; or*

*(d) An authorized agent of any person described in paragraph (a), (b) or (c).*

*A written statement signed by any person described in paragraph (a), (b) or (c) which appoints a person to serve as his agent if delivered personally to the beneficiary or delivered by mail, return receipt requested, is proof of the identity of an agent.*

2. *For the purposes of paragraph (a) of subsection 1, a policy of title insurance, preliminary report issued by a title company, certified copy of letters testamentary or letters of guardianship, or an original or photographic copy of a deed, if delivered personally to the beneficiary or delivered by mail, return receipt requested, is proof of the identity of a successor in interest of the grantor, if the person demanding the statement is named as successor in interest in the document.*

Sec. 7. *A beneficiary may, before mailing a statement described in section 4 or 5 of this act, require the person who requested the statement to prove that he is authorized to request that statement pursuant to section 6 of this act. If the beneficiary requires such proof, he must mail the statement within 21 days after he receives that proof from the requester.*

Sec. 8. *If the debt secured by a deed of trust for which a statement described in section 5 of this act has been requested is subject to a recorded notice of default or a filed complaint commencing a judicial foreclosure, the beneficiary may refuse to deliver the statement unless the written request for the statement is received before the publication of a notice of sale or the notice of the date of sale established by a court.*

Sec. 9. *1. A person who receives a statement pursuant to section 4 or 5 may rely upon the accuracy of the information contained in the statement. If the beneficiary notifies the person who requested the statement of any amendment to the statement, the amended statement may be relied upon by that person in the same manner as the original statement.*

*2. If notification of an amendment to a statement is not given in writing, a written amendment to the statement must be delivered to the person who requested the original statement not later than the next business day after notification.*

*3. If a statement prepared by the beneficiary pursuant to section 4 of this act does not contain the entire amount necessary to discharge the debt secured by the deed of trust and:*

*(a) A transaction has occurred which has resulted in the transfer of title or recordation of a lien; or*

*(b) A trustee's sale or a sale supervised by a court has taken place, the beneficiary may recover that money as an unsecured debt of the grantor pursuant to the terms of the note.*

Sec. 10. *If a person who is authorized pursuant to section 6 of this act to request a statement described in section 4 or 5 of this act includes in his request for such a statement a request for a copy of the note or deed of trust, the beneficiary shall mail a copy of the note or deed of trust with the statement at no additional charge.*

Sec. 11. *If the beneficiary has more than one place of business, a request for a statement described in section 4 or 5 of this act must be made to the address to which the periodic payments under the note are made. If no periodic payments are made under the note, the request must be mailed to the address of the beneficiary listed on the note or deed of trust.*

Sec. 12. *Except as otherwise provided in a statement described in section 4 or 5 of this act, the information contained in the statement applies only to the debt secured by the deed of trust which is payable at the address to which*

the periodic payments are made. If periodic payments are not made under the note, the statement applies only to the entire debt secured by the deed of trust.

**Sec. 13.** If a person requests a statement described in section 4 or 5 of this act and it is not clear from the request which statement is requested, the request shall be deemed a request for a statement of the amount necessary to discharge the debt secured by a deed of trust.

**Sec. 14.** 1. A beneficiary who willfully fails to deliver a statement requested pursuant to section 4 or 5 of this act within 21 days after it is requested is liable to the person who requested the statement in an amount of $300 and any actual damages suffered by the person who requested the statement.

2. A judgment awarded to a person who requested a statement pursuant to section 4 or 5 of this act for failure to deliver a statement bars recovery of damages for any other failure to deliver that statement pursuant to a demand made within 6 months before or after the demand for which the judgment was awarded.

3. As used in this section, "willfully" means an intentional failure to comply with the requirements of section 4 or 5 of this act without just cause.

**Sec. 15.** The beneficiary may charge a fee of not more than $60 for each statement furnished pursuant to section 4 or 5 of this act.

**Sec. 16.** 1. If a deed of trust made on or after October 1, 1995, authorizes the grantor to discharge in part the debt secured by the deed of trust and the deed of trust authorizes a partial reconveyance of the estate in real property in consideration of a partial discharge, the beneficiary shall, within 21 calendar days after receiving notice that the debt secured by the deed of trust has been partially discharged deliver to the trustee a properly executed request for a partial reconveyance of the estate in real property conveyed to the trustee by the grantor.

2. Within 45 calendar days after a debt secured by a deed of trust made on or after October 1, 1995, is partially discharged and a properly executed request for a partial reconveyance is received by the trustee, the trustee shall cause to be recorded a partial reconveyance of the deed of trust.

3. If the beneficiary fails to deliver to the trustee a properly executed request for a partial reconveyance pursuant to subsection 1, or if the trustee fails to cause to be recorded a partial reconveyance of the deed of trust pursuant to subsection 2, the beneficiary or the trustee, as the case may be, is liable in a civil action to the grantor, his heirs or assigns in the amount of $100, plus a reasonable attorney's fee and the costs of bringing the action, and he is liable in a civil action to any party to the deed of trust for any actual damages caused by his failure to comply with the provisions of this section and for a reasonable attorney's fee and the costs of bringing the action.

4. Except as otherwise provided in this subsection, if a partial reconveyance is not recorded pursuant to subsection 2 within 75 calendar days after the partial satisfaction of the debt, if the satisfaction was made on or after October 1, 1995, a title insurer may prepare and cause to be recorded a partial release of the deed of trust. At least 30 calendar days before the recording of a partial release pursuant to this subsection, the title insurer shall mail, by first-class mail, postage prepaid, notice of the intention to record the partial release of the deed of trust to the trustee, trustor and

*beneficiary of record, or their successors in interest, at the last known address of each such person. A partial release prepared and recorded pursuant to this subsection shall be deemed a partial reconveyance of a deed of trust. The title insurer shall not cause a partial release to be recorded pursuant to this subsection if the title insurer receives written instructions to the contrary from the trustee, trustor, owner of the land, holder of the escrow or owner of the debt secured by the deed of trust or his agent.*

*5. The release prepared pursuant to subsection 4 must set forth:*

*(a) The name of the beneficiary;*

*(b) The name of the trustor;*

*(c) The recording reference to the deed of trust;*

*(d) A statement that the debt secured by the deed of trust has been partially discharged;*

*(e) The date and amount of partial payment or other partial satisfaction or discharge;*

*(f) The name and address of the title insurer issuing the partial release; and*

*(g) The legal description of the estate in real property which is reconveyed.*

*6. A partial release prepared and recorded pursuant to subsection 4 does not relieve a beneficiary or trustee of the requirements imposed by subsections 1 and 2.*

*7. A trustee may charge a reasonable fee to the trustor or the owner of the land for services relating to the preparation, execution or recordation of a partial reconveyance or partial release pursuant to this section. A trustee shall not require the fees to be paid before the opening of an escrow or earlier than 60 calendar days before the partial payment or partial satisfaction or discharge of the debt secured by the deed of trust. If a fee charged pursuant to this subsection does not exceed $100, the fee is conclusively presumed to be reasonable.*

*8. In addition to any other remedy provided by law, a title insurer who improperly causes to be recorded a partial release of a deed of trust pursuant to this section is liable for actual damages and a reasonable attorney's fee to any person who is injured because of the improper recordation of the partial release.*

*9. Any person who willfully violates this section is guilty of a misdemeanor.*

**Sec. 17.** *Notwithstanding any other provision of law, a deed of trust given to secure a loan made to purchase the real property on which the deed of trust is given has priority over all other liens created against the purchaser before he acquires title to the real property.*

**Sec. 18. NRS 107.077** is hereby amended to read as follows:

107.077   1. Within 21 calendar days after receiving written notice that a debt secured by a deed of trust made on or after October 1, 1991, has been paid or otherwise satisfied or discharged, the beneficiary shall deliver to the trustee or the trustor the original note and deed of trust, if he is in possession of those documents, and a properly executed request to reconvey the estate in real property conveyed to the trustee by the grantor. If the beneficiary delivers the original note and deed of trust to the trustee or the trustee has those

documents in his possession, the trustee shall deliver those documents to the grantor.

2. Within 45 calendar days after a debt secured by a deed of trust made on or after October 1, 1991, is paid or otherwise satisfied or discharged, and a properly executed request to reconvey is received by the trustee, the trustee shall cause to be recorded a reconveyance of the deed of trust.

3. If the beneficiary fails to deliver to the trustee a properly executed request to reconvey pursuant to subsection 1, or if the trustee fails to cause to be recorded a reconveyance of the deed of trust pursuant to subsection 2, the beneficiary or the trustee, as the case may be, is liable in a civil action to the grantor, his heirs or assigns in the sum of $100, plus a reasonable attorney's fee and the costs of bringing the action, and he is liable in a civil action to any party to the deed of trust for any actual damages caused by his failure to comply with the provisions of this section and for a reasonable attorney's fee and the costs of bringing the action.

4. Except as otherwise provided in this subsection, if a reconveyance is not recorded pursuant to subsection 2 within:

(a) Seventy-five calendar days after the payment, satisfaction or discharge of the debt, if the payment, satisfaction or discharge was made on or after October 1, 1993; or

(b) Ninety calendar days after the payment, satisfaction or discharge of the debt, if the payment, satisfaction or discharge was made before October 1, 1993,

a title insurer may prepare and cause to be recorded a release of the deed of trust. At least 30 calendar days before the recording of a release pursuant to this subsection, the title insurer shall mail, by first-class mail, postage prepaid, notice of the intention to record the release of the deed of trust to the trustee, trustor and beneficiary of record, or their successors in interest, at the [last-known] *last known* address of each such person. A release prepared and recorded pursuant to this subsection shall be deemed a reconveyance of a deed of trust. The title insurer shall not cause a release to be recorded pursuant to this subsection if the title insurer receives written instructions to the contrary from the trustee, the trustor, the owner of the land, the holder of the escrow or the owner of the debt secured by the deed of trust or his agent.

5. The release prepared pursuant to subsection 4 must set forth:

(a) The name of the beneficiary;

(b) The name of the trustor;

(c) The recording reference to the deed of trust;

(d) A statement that the debt secured by the deed of trust has been paid in full or otherwise satisfied or discharged;

(e) The date and amount of payment or other satisfaction or discharge; and

(f) The name and address of the title insurer issuing the release.

6. A release prepared and recorded pursuant to subsection 4 does not relieve a beneficiary or trustee of the requirements imposed by subsections 1 and 2.

7. A trustee may charge a reasonable fee to the trustor or the owner of the land for services relating to the preparation, execution or recordation of a reconveyance or release pursuant to this section. A trustee shall not require the fees to be paid before the opening of an escrow, or earlier than 60

calendar days before the payment, satisfaction or discharge of the debt secured by the deed of trust. If a fee charged pursuant to this subsection does not exceed $100, the fee is conclusively presumed to be reasonable.

8. In addition to any other remedy provided by law, a title insurer who improperly causes to be recorded a release of a deed of trust pursuant to this section is liable for actual damages and a reasonable attorney's fee to any person who is injured because of the improper recordation of the release.

9. Any person who willfully violates this section is guilty of a misdemeanor.

[10. As used in this section, "title insurer" has the meaning ascribed to it in NRS 692A.070.]

**Sec. 19. NRS 108.665** is hereby amended to read as follows:

108.665  1. A lien for charges owed to a hospital may be foreclosed by a suit in the district court in the same manner as an action for foreclosure of any other lien.

2. The lien may not be foreclosed during the:

(a) Lifetime of the owner of the property, his spouse, his dependent adult child if that child is mentally or physically disabled or a joint tenant if he was a joint tenant at the time of the patient's discharge; or

(b) Minority of any child of the owner,

if the owner or joint tenant resides on the property, or his spouse, dependent or minor child resides on the property and has acquired title thereto.

*3. If the hospital does not file a suit to foreclose the lien within 2 years after the date the notice of lien is recorded by the hospital, the lien is extinguished.*

**Sec. 20. NRS 17.150** is hereby amended to read as follows:

17.150  1. Immediately after filing a judgment roll the clerk shall make the proper entries of the judgment, under appropriate heads, in the docket kept by him, noting thereon the hour and minutes of the day of such entries.

2. A transcript of the original docket or an abstract or copy of any judgment or decree of a district court of the State of Nevada or the District Court or other court of the United States in and for the District of Nevada, the enforcement of which has not been stayed on appeal, certified by the clerk of the court where the judgment or decree was rendered, may be recorded in the office of the county recorder in any county, and when so recorded it becomes a lien upon all the real property of the judgment debtor not exempt from execution in that county, owned by him at the time, or which he may afterward acquire, until the lien expires. The lien continues for 6 years [from] *after* the date the judgment or decree was docketed, and is continued each time the judgment or decree is renewed, unless:

(a) The enforcement of the judgment or decree is stayed on appeal by the execution of a sufficient undertaking as provided in the Nevada Rules of Appellate Procedure or by the Statutes of the United States, in which case the lien of the judgment or decree and any lien by virtue of an attachment that has been issued and levied in the actions ceases;

(b) The judgment is for arrearages in the payment of child support, in which case the lien continues until the judgment is satisfied;

(c) The judgment is satisfied; or

(d) The lien is otherwise discharged.

**41**

The time during which the execution of the judgment is suspended by appeal, action of the court or defendant must not be counted in computing the time of expiration.

3. The abstract described in subsection 2 must contain the:

(a) Title of the court and the title and number of the action;

(b) Date of entry of the judgment or decree;

(c) Names of the judgment debtor and judgment creditor;

(d) Amount of the judgment or decree; and

(e) Location where the judgment or decree is entered in the minutes or judgment docket.

*4. A judgment creditor who records a judgment or decree shall record at that time an affidavit stating:*

*(a) The name and address of the judgment debtor;*

*(b) The judgment debtor's driver's license number and state of issuance or the judgment debtor's social security number; and*

*(c) The judgment debtor's date of birth,*

*if known to the judgment creditor. If any of the information is not known, the affidavit must include a statement of that fact.*

**Sec. 21.  NRS 17.214** is hereby amended to read as follows:

17.214  1.  A judgment creditor or his successor in interest may renew a judgment which has not been paid by [filing] *:*

*(a) Filing* an affidavit with the clerk of the court where the judgment is entered and docketed, within 90 days before the date the judgment expires by limitation. The affidavit must specify:

[(a)] *(1)* The names of the parties and the name of the judgment creditor's successor in interest, if any, and the source and succession of his title;

[(b)] *(2)* If the judgment is recorded, the name of the county and the number and the page of the book in which it is recorded;

[(c)] *(3)* The date and the amount of the judgment and the number and page of the docket in which it is entered;

[(d)] *(4)* Whether there is an outstanding writ of execution for enforcement of the judgment;

[(e)] *(5)* The date and amount of any payment on the judgment;

[(f)] *(6)* Whether there are any setoffs or counterclaims in favor of the judgment debtor and the amount or, if a setoff or counterclaim is unsettled or undetermined it will be allowed as payment or credit on the judgment;

[(g)] *(7)* The exact amount due on the judgment;

[(h)] *(8)* If the judgment was docketed by the clerk of the court upon a certified copy from any other court, and an abstract recorded with the county clerk, the name of each county in which the transcript has been docketed and the abstract recorded; and

[(i)] *(9)* Any other fact or circumstance necessary to a complete disclosure of the exact condition of the judgment.

All information in the affidavit must be based on the personal knowledge of the affiant, and not upon information and belief.

*(b) If the judgment is recorded, recording the affidavit of renewal in the office of the county recorder in which the original judgment is filed within 3 days after the affidavit of renewal is filed pursuant to paragraph (a).*

2. The filing of the affidavit renews the judgment to the extent of the amount shown due in the affidavit.

3. The judgment creditor or his successor in interest shall notify the judgment debtor of the renewal of the judgment by sending a copy of the affidavit of renewal by certified mail, return receipt requested, to him at his last known address within 3 days after filing the affidavit.

4. Successive affidavits for renewal may be filed within 90 days before the preceding renewal of the judgment expires by limitation.

**Sec. 22. NRS 247.120** is hereby amended to read as follows:

247.120  1. Each county recorder shall, upon the payment of the described statutory fees, record separately, in a manner which will allow a legible copy to be made, the following specified instruments in large, well-bound separate books, either sewed or of insertable leaves which when placed in the book cannot be removed:

(a) Deeds, grants, patents issued by the State of Nevada or by the United States, transfers and mortgages of real estate, releases of mortgages of real estate, powers of attorney to convey real estate, and leases of real estate which have been acknowledged or proved.

(b) Certificates of marriage and marriage contracts.

(c) Wills admitted to probate.

(d) Official bonds.

(e) Notice of mechanics' liens.

(f) Transcripts of judgments [,] which by law are made liens upon real estate in this state [.] *and affidavits of renewal of those judgments.*

(g) Notices of attachment upon real estate.

(h) Notices of the pendency of an action affecting real estate, the title thereto, or the possession thereof.

(i) Instruments describing or relating to the separate property of married persons.

(j) Notice of preemption claims.

(k) Notices and certificates of location of mining claims.

(l) Affidavits of proof of annual labor on mining claims.

(m) Affidavits of intent to hold mining claims recorded pursuant to subsection 3 of NRS 517.230.

(n) Certificates of sale.

(o) Judgments or decrees.

(p) Declarations of homesteads.

(q) Such other writings as are required or permitted by law to be recorded.

2. Each of the instruments named in paragraph (a) of subsection 1 may be recorded in separate books in the discretion of the county recorder.

3. Before accepting for recording any instrument enumerated in subsection 1, the county recorder may require a copy suitable for recording by a method used by the recorder to preserve his records. Where any rights [might] *may* be adversely affected because of *a* delay in recording caused by this requirement, the county recorder shall accept the instrument conditionally subject to submission of a suitable copy at a later date. The provisions of this subsection do not apply where it is impossible or impracticable to submit a more suitable copy.

**Sec. 23.  NRS 627.200** is hereby amended to read as follows:

627.200   Any lender desiring to use the services of a construction control shall first obtain the written assent of the borrower specifying by name the construction control to be used. The lender and borrower shall [then] be deemed to have appointed [such] *that* construction control as their agent for the particular construction loan for which its services are requested [;] and the acts of the construction control [shall be] *are* binding upon the lender and borrower severally. If a related construction control or the employee or agent of a related construction control, or a lender acting as a construction control or any employee or agent of [such] *a* lender acting as a construction control, violates any of the provisions of this chapter, otherwise than as the result of a good faith error in mathematical computation, then:

1. With respect to a particular loan subject to construction control, the construction control and the lender shall each, jointly and severally, be liable for payment of any [and all] mechanic's liens filed against the premises subject to construction [and arising out of any] *to the extent that such a lien is the result of a* violation of any provision of this chapter.

2. Any mechanic's lien claimant damaged by the violation of any provision of this chapter may jointly or severally proceed with an action on the bond referred to in NRS 627.180, and the rights and remedies under [such] *the* bond or lien claims and any direct right of action against the lender or construction control [shall be] *are* cumulative, and the lien claimant prevailing in any such action [shall be] *is* entitled to reasonable [attorneys'] *attorney's* fees.

**Sec. 24.  Chapter 645A of NRS** is hereby amended by adding thereto the provisions set forth as sections 25 and 26 of this act.

**Sec. 25.**  *1. Except as otherwise provided in subsection 2 or in the escrow agreement between the parties and the holder of the escrow, upon the close of an escrow for the sale of real property or on the date the escrow is scheduled to close if it has not closed, each party shall execute the documents necessary to release the money deposited in the escrow.*

*2. A party may refuse to execute a document necessary to release the money deposited in the escrow only if a good faith dispute exists concerning that money.*

*3. If a party refuses to execute a document necessary to release the money deposited in the escrow within 30 days after the holder of the escrow makes a written request for the execution, the party injured by the other party's failure to execute the document may collect from that party:*

*(a) Actual damages of not less than $100 nor more than 1 percent of the purchase price of the real property for which the money was deposited in the escrow, whichever is greater;*

*(b) The money deposited in the escrow which was not held to resolve a good faith dispute concerning the sale of the property; and*

*(c) A reasonable attorney's fee.*

**Sec. 26.**  *1. If an action is filed to recover money deposited in an escrow established for the sale of real property, the holder of the escrow may deposit the money, less any fees or charges owed to the holder of the escrow, with the court in which the action is filed.*

2. *A holder of an escrow who complies with the provisions of subsection 1 is discharged from further responsibility for the money which he deposits with the court.*

3. *This section does not limit the right of the holder of the escrow to bring an action for interpleader pursuant to N.R.C.P. 22 to determine the rightful claimant of the money deposited in the escrow.*

Senate Bill No. 467—Senators Augustine, Porter and Washington

CHAPTER 476

AN ACT relating to motor vehicles; revising the provisions governing the use of devices for restraining children being transported in motor vehicles in this state; and providing other matters properly relating thereto.

[Approved July 1, 1995]

THE PEOPLE OF THE STATE OF NEVADA, REPRESENTED IN SENATE AND ASSEMBLY, DO ENACT AS FOLLOWS:

**Section 1. NRS 484.474** is hereby amended to read as follows:

484.474   1. Except as otherwise provided in subsection 5, any person who is transporting a child who is under 5 years of age and who weighs less than 40 pounds in a motor vehicle [registered] *operated* in this state which is equipped to carry passengers shall secure him in a device for restraining a child which has been approved by the United States Department of Transportation.

2. [Any] *A* person who violates the provisions of subsection 1 shall be punished by a fine of not less than $35 nor more than $100 unless, within 14 days after the issuance of the citation for such a violation, the person presents to the court specified in the citation proof of his purchase [or rental] of such a restraining device. Upon presentation of such proof, the court shall void the citation.

3. For the purposes of NRS 483.473, a violation of this section is not a moving traffic violation.

4. A violation of this section may not be considered:

(a) Negligence in any civil action; or

(b) Negligence or reckless driving for the purposes of NRS 484.377.

5. This section does not apply:

(a) To a person who is transporting a child in a means of public transportation, including a taxi, school bus or emergency vehicle.

(b) When a physician determines that the use of such a restraining device for the particular child would be impractical or dangerous because of such factors as the child's weight, physical unfitness or medical condition. In this case, the person transporting the child shall carry in the vehicle the signed statement of the physician to that effect.

**45**