L. Edward Humphrey, Esq., NSB 9066
Patrick O'Rourke, Esq., NSB 13557
**HUMPHREY O'ROURKE PLLC**
201 W. Liberty Street, Suite 350
Reno, Nevada 89501
Tel:     (775) 420-3500
Fax:     (775) 683-9917
ed@hlawnv.com
patrick@hlawnv.com
*Attorneys for Steven and Terre Baldwin,*
*Big Water Investments, LLC, and Kevin*
*Horowitz, sole proprietor of St. Helena*
*Construction Company*

Louis M. Bubala III, Esq. NSB 8974
**KAEMPFER CROWELL**
50 W. Liberty St., Ste. 1100
Reno, Nevada 89501
Tel:     (775) 852-3900
Fax:     (775) 327-2011
lbubala@kcnvlaw.com
*Attorneys for Rock & Rose, Inc.*

Seth J. Adams, Esq., NSB 11034
**WOODBURN AND WEDGE**
6100 Neil Rd., Ste. 500
Reno, Nevada 89511
Tel:     (775) 688-3300
Fax:     (775) 688-3088
sadams@woodburnandwedge.com
*Attorneys for Woodburn and Wedge*

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

|  |  |
|---|---|
| In Re:<br><br>SCOTT A. CORRIDAN,<br><br>                    Debtor.<br><br>―――――――――――――――――<br>EDWARD M. BURR, in his capacity as Chapter 7 Trustee for the bankruptcy estate of SCOTT CORRIDAN,<br>                              Plaintiff,<br>       vs.<br><br>STEVEN BALDWIN; TERRE BALDWIN; BIG WATER INVESTMENTS, LLC, a Nevada limited liability company; ROCK & ROSE, INC.; WOODBURN & WEDGE; and KEVIN HOROWITZ, sole proprietor of ST. HELENA CONSTRUCTION COMPANY,<br><br>                    Defendants. | Case No.:   22-50366-hlb<br>Chapter 7<br><br>**Adv. No. 23-05013-hlb**<br><br><br>**DISPUTED LIEN CLAIMANTS' <u>AMENDED JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS ON CLAIMS 1-4 AND 6, AND REQUEST FOR COURT TO DIRECT ENTRY OF FINAL JUDGMENT</u>**<br><br><br>Hearing Date:   March 29, 2024<br>Hearing Tim:    1:30 p.m. |



1

Creditors and Defendants Steven and Terre Baldwin (collectively, "Baldwins"), Big Water Investments, LLC ("Big Water"), Kevin Horowitz, sole proprietor of St. Helena Construction Company ("Horowitz"), Rock & Rose, Inc. ("Rock"), and Woodburn and Wedge ("Woodburn" and together with Baldwin, Big Water, and Rock the "Disputed Lien Claimants"), through their undersigned counsel of record,  file this Amended Joint Opposition to *Plaintiff's Motion for Judgment on the Pleadings or, in the Alternative, Motion  for Summary Judgment Against all Defendants on Claims 1-4 and 6, and Request for Court to Direct Entry of Final Judgement*, initially filed on January 12, 2024, at Adv. ECF No. 20 ("MSJ" or "Motion") and *Plaintiff's  Statement  Of Undisputed Facts In Support Of  Trustee's  Motion  for Judgment On The Pleadings or, in The Alternative, Motion for Summary Judgment  Against  All Defendants on Claims 1-4 And 6, And Request For Court To Direct Entry of Final Judgement*, initially filed on January 15, 2024, at Adv. ECF No. 21 ("SUDF").[1]  This Amended Joint Opposition is based upon the following Memorandum of Points and Authorities, the Statement of Disputed Facts filed concurrently herewith, and any oral argument that the Court permits at the scheduled hearing.[2]

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.    INTRODUCTION**

Since 1965, the process of creating a lien by recording a judgment with the county recorder pursuant to NRS 17.150 has remained largely unchanged.  Subsection 2 of NRS 17.150 creates the lien, providing that "any judgment or decree of a district court of the State of Nevada

---

[1] All References to "Bankruptcy Case" are to the underlying bankruptcy case of Scott A. Corridan, case no. 22-50366-HLB, all references to "BK ECF No." and/or "BK DE" are to the docket entries in that Bankruptcy Case and all references to "Adv. ECF No." and/or "Adv. DE" are to docket entries in this adversary proceeding.  All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[2] This Amended Joint Opposition is filed to correct minor errors in the *Disputed Lien Claimants' Joint Opposition to Plaintiff's Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment Against All Defendants on Claims 1-4 and 6 and Request for Court to Direct Entry of Final Judgment*, filed February 16, 2024, at Adv. ECF No. 37; and to correct the caption (as set out in the Notice of Docketing Error entered at Adv. ECF No. 41).



or the District Court or other court of the United States in and for the District of Nevada . . .

may be recorded in the office of the county recorder in any county, and **when so recorded it**

**becomes a lien** upon all the real property of the judgment debtor not exempt from execution in

that county, owned by the judgment debtor at the time, or which the judgment debtor may

afterward acquire, until the lien expires." *See* NRS 17.150(2).  In 1995, the statute was amended

at the request of title companies to add subsection 4, which requires Nevada judgment creditors

to record an additional affidavit when recording the judgment setting forth certain information

aimed at identifying the judgment debtor and his/her property (such as the judgment debtor's

name and address, and the APN of any real property owned by the judgment debtor).  Neither

the language of the statute itself, or its legislative history, indicate that the legislature intended

to change the procedure by which a judgment lien is created or deprive a judgment creditor of a

valid lien for failure to comply with the new informational affidavit requirement.  Nor has any

Nevada appellate court ever made such a finding.  In fact, the whole purpose of NRS 17.150(4),

ensuring liens attach to the proper judgment debtor's property, has not been implicated in these

bankruptcy proceedings whatsoever.

Each of the disputed judgment liens at issue here ("Disputed Liens") include the

judgment debtor's name, Scott Corridan ("Debtor"), and all but one identify the Debtor's real

property in Washoe County by expressly including the APN number of the Debtor's residence

located at 223 Pelton Lane, Incline Village, 89451 ("Pelton Lane Property")—and all of them

readily appeared on the title search performed in connection with the ultimate sale of the Pelton

Lane Property.  No innocent third party with a name like the Debtor's has been prejudiced here

by inadvertently having any of the Disputed Liens attach to the wrong property.  But that has

not stopped the Trustee from expending considerable resources of the bankruptcy estate by

filing an adversary proceeding and bringing a 24-page motion for judgment on the

pleadings/summary judgment seeking to avoid hundreds of thousands of dollars of valid

judgment liens based on an incorrect reading of the statutory plain language and championing a

technicality that has caused no harm or prejudice.  At the core, and despite the overwhelming

guidance to the contrary, the Trustee's Motion pushes for unreasonably expansive reading of



NRS 17.150(4)'s informational affidavit requirement, exalting literalism for no practical purpose other than to produce an absurd result.

The Disputed Lien Claimants respectfully request that the Court reject the Trustee's position and put an end to this lien litigation by granting judgment in their favor as a matter of law.

## II.    RELEVANT MATERIAL FACTS

### A.    <u>Baldwin – Judgment Lien and Affidavit Recorded August 1, 2019.</u>

On July 3, 2019, the Baldwins obtained a $76,138.66 judgment against Scott Corridan and his company Scott Corridan Design in the Placer County, California Superior Court (the "<u>Baldwin California Judgment</u>").  On July 31, 2019, the Baldwins commenced Case No. CV19-01502 in the Second Judicial District Court to domesticate the Baldwin California Judgment in Nevada ("<u>Baldwin Domestication Action</u>").  In compliance with the Uniform Enforcement of Judgments Act (NRS 17.330 to 17.550), the Baldwins filed several documents in the Baldwin Domestication Action, including the following:  (1) a *Foreign Judgment [NRS 17.350]* that attached an exemplified copy of the Baldwin California Judgment—which became a Nevada judgment upon its filing under NRS 17.350 (the "<u>Baldwin Nevada Judgment</u>"); and (2) an *Affidavit in Support of Filing Foreign Judgment [NRS 17.360]* (the "<u>Baldwin Affidavit in of Judgment Creditor</u>").  The next day, August 1, 2019, the Baldwins recorded both of these documents in the Washoe County Recorder's Office, as follows:  (1) an exemplified copy of the Baldwin Nevada Judgment was recorded as Doc # 4936398; and (2) a copy of the Baldwin Affidavit in Support of Judmgent, retitled on the cover page as an *Affidavit of Judgment Creditor [NRS 17.150]*, was recorded as Doc #4936399 (the "<u>Baldwin Affidavit of Judgment Creditor</u>").

The recorded copy of the Baldwin Nevada Judgment reflects the following information:

- The name of the Judgment Creditors, Steven Baldwin and Terre Baldwin.
- The name of the Judgment Debtor, Scott Corridan.
- The address and phone number of the Judgment Debtor's California and Nevada counsel.



- The **APN # 130-163-23** of the Pelton Lane Property owned by the Judgment Debtor in Washoe County (the Property at issue in this litigation).
- The Case Numbers in both relevant courts (Placer County, California and Washoe County, Nevada).

In addition to the above information, the face of the recorded Baldwin Affidavit of Judgment Creditor reflects the following information, made under sworn statement:

- The name and last known addresses of the Judgment Debtor.  Included in these addresses is the Pelton Lane Property at issue in this litigation, reflected as follows: **"(Residence Address:  223 Pelton Lane, Incline Village, NV 89451".**
- The APN of the Pelton Lane Property, reflected as follows:  **"Washoe APN# 130-163-23".**
- The name and address of the Judgment Creditors' and Judgment Debtor's attorneys.

Based on the above facts, the Baldwins filed a Proof of Claim in the Debtor's bankruptcy case asserting a secured claim against the Pelton Lane Property in the amount of $103,355.66 as of the Petition Date.  *See* POC 10-2 (filed 10/18/2022); and POC 29-1 (filed 8/9/2023).[3]

## B.    Big Water – Judgment Lien Recorded December 16, 2019.

The dispute between Big Water and Corridan involves Corridan's August 20, 2019, improper recording of 18 mechanic's liens against a condominium project owned by Big Water (allegedly related to design services provided by Corridan).  After Corridan recorded the mechanic's liens, Big Water moved for an Order to Show Cause why they shouldn't be released.  The Court held a hearing and ultimately found Corridan did not have mechanic's lien rights under the relevant statute and ordered the liens expunged.  The court also found the liens were frivolously filed and ultimately awarded Big Water its attorney's fees and costs under NRS 108.2275 and NRS 18.010(2)(b).  The court entered its *Order Granting Motion for*

---

[3] The Proof of Claim Deadline was August 25, 2023, thus both Claims 10-2 and 29-1 were timely.



*Attorney's Fees under NRS 108.2275* on December 12, 2019, awarding Big Water $16,858.23 in attorney's fees and costs, plus post-judgment interest at the legal rate (the "Big Water Judgment"). The Big Water Judgment was recorded in the Washoe County Recorder's Office on December 16, 2019, as Doc # 4982828.

The recorded copy of the Big Water Judgment reflects the following information:

- The name of the Judgment Creditor, Big Water Investments, LLC

- The name of the Judgment Debtor, Scott Corridan, individually and dba Scott Corridan Design.

- The APN of the Pelton Lane Property owned by the Judgment Debtor in Washoe County (the property at issue in this litigation), reflected as follows: **"APNS: 130-163-23"**.

- The address and phone number of the Judgment Creditor's counsel.

Based on the above facts, Big Water filed a Proof of Claim in the Debtor's bankruptcy case asserting a secured claim against the Pelton Lane Property in the amount of $20,908.02 as of the Petition Date. *See* POC 32-1.

**C.      Rock & Rose, Inc. – Judgment Lien recorded February 11, 2020.**

On October 3, 2019, 2022, Rock commenced Case No. CV19-01920 in the Second Judicial District Court against Corridan for unpaid landscaping work done on Corridan's house—the very property at dispute in this litigation. On December 19, 2019, the state court entered a default judgment against Corridan. The Rock Judgment recorded in the Washoe County Recorder's Office on February 11, 2020, as Doc # 4999922.

The recorded copy of the Horowitz Nevada Judgment reflects the following:

- The name of the Judgment Creditor, Rock.

- The name and address of the counsel and firm representing Rock.

- The name of the Judgment Debtor, both as Scott Corridan and dba Scott Corridan Design. Additionally, as Mr. Corridan was not represented by counsel, he serves as his own counsel.



- The APN # 130-163-23 of real property owned by the Judgment Debtor in Washoe County (the property at issue in this litigation).
- The Case Number for the court in Washoe County, Nevada.

Based on the above facts, Rock filed a Proof of Claim in the Debtor's bankruptcy case asserting a secured claim against the Pelton Lane Property in the amount of $56,678.54 as of the Petition Date. *See* POC 15.

### D. Woodburn and Wedge – Judgment Lien recorded March 31, 2020.

Woodburn is an acknowledged creditor in this bankruptcy case. *See* Debtor's Sch. D, ECF 27, Section 2.12. The Debtor incurred pre-petition legal fees to Woodburn unrelated to this bankruptcy case. Due to non-payment, Woodburn obtained an "Order Establishing Attorney's Lien; Judgment" from the Second Judicial District Court. See Exhibit 2 to Woodburn's Amended Proof of Claim, No. 13-2, which was issued by the District Court on March 22, 2020.

Woodburn caused the judgment to be recorded against the Debtor's real property in the official records of Washoe County on March 31, 2020. The recorded version of Woodburn's judgment contains the entire Order issued by the District Court, along with the required affirmation statement. The recorded copy of the Woodburn Judgment reflects the following:

- The name of the Judgment Creditor Shawn B. Meador of Woodburn and Wedge.
- The address of the Judgment Creditor (which undoubtedly was unnecessary given his former representation of the Judgment Debtor immediately prior to obtaining the judgment).
- Multiple, clear and obvious references to the judgement debtor, Scott Alan Corridan, the relevant case number and Court from which the judgment was issued, and the amount of the judgment.

Based on the above facts, Woodburn filed a Proof of claim in the Debtor's bankruptcy case asserting a secured claim in the amount of $40,212.35, $36,712.65 of which is secured against the Debtor's real property. *See* POC 13-2.

///



**E.**    **Horowitz – Judgment Lien recorded June 22, 2022.**

On September 28, 2021, Horowitz obtained a *Default Judgment Against Defendant Scott A. Corridan*, in the Napa County, California Superior Court (the "Horowitz California Judgment").

On June 8, 2022, Horowitz commenced Case No. CV22-00906 in the Second Judicial District Court to domesticate the Horowitz California Judgment in Nevada ("Horowitz Domestication Action").  In complying with Uniform Enforcement of Judgments Act (NRS 17.330 to 17.500), Horowitz filed several documents in the Horowitz Domestication Action, including the following:  (1)  a *Foreign Judgment [NRS 17.350]* attaching an exemplified copy of the Horowitz California Judgment—which became a Nevada judgment upon its filing under NRS 17.350 (the "Horowitz Nevada Judgment"); and (2) an *Affidavit in Support of Filing Foreign Judgment [NRS 17.360]* (the "Horowitz Affidavit in Support of Judgment").

The Horowitz Nevada Judgment was recorded in the Washoe County Recorder's Office on June 29, 2022, as Doc # 5314943.

The recorded copy of the Horowitz Nevada Judgment reflects the following:

- The name of the Judgment Creditor, Kevin Horowitz, Sole Proprietor of St. Helena Construction Company.
- The addresses and phone numbers of the Judgment Debtor's California and Nevada counsel.
- The name of the Judgment Debtor, reflected as both Scott Corridan, an individual and Scott A. Corridan.
- The APN of the Pelton Lane Property, reflected as follows:  **"APNS:  130-163-23"**.
- The Case Numbers in both relevant courts (Napa County, California and Washoe County, Nevada).

Based on the above facts, Horowitz filed a Proof of Claim in the Debtor's bankruptcy case asserting a secured claim against the Pelton Lane Property in the amount of $387,813.49 as of the Petition Date.  *See* POC 31-2.

///

### F.    <u>The Title Search</u>.

Stewart Title prepared a title commitment in connection with the Trustee's sale of the Pelton Lane Property (the "<u>Stewart Title Report</u>"), which was attached as Exhibit 2 to the *Order Granting Amended Motion to Sell Property Free and Clear of Liens, Claims, and Interests [223 Pelton Lane, Incline Village, Nevada] and Pay Real Estate Commissions*, entered on September 12, 2023, at ECF No. 264 ("<u>Sale Order</u>"), and is attached hereto as **<u>Exhibit "1"</u>**.[4]

The Stewart Title Report confirms no confusion has ever existed as to whether the Disputed Lien Claimant's judgment liens attached to the Debtor's Pelton Lane Property.  For example, the Baldwin Nevada Judgment and Baldwin Affidavit of Judgment Creditor appear on the Stewart Title Report:

18. Judgment in favor of Steven Baldwin and Terre Baldwin against Scott Corridan, in the amount of $76,138.66 plus court cost & interest, entered on July 31, 2019 as Case Number CV19-01502 and recorded August 1, 2019 as instrument number 4936398, in Washoe County.
    and amended on recorded August 1, 2019 as instrument number 4936399, in Washoe County.

As did the Big Water Judgment:

20. The requirement that payment in full per demand and a release to follow or at close is required for a certified copy of a Judgment in the amount of $16,858.23 plus interest, costs, attorney fees and any other amounts due from Scott Corridan, individually and dba Scott Corridan Design, as Debtor, in favor of Big Water Investments, LLC, a Nevada limited liability company, as Creditor, in Washoe County of the Second Judicial District Court of the State of Nevada in and for the County of Washoe, as Case No. CV19-01689, recorded December 16, 2019 as Document No. 4982828, Official Records of Washoe County, Nevada.

And the Rock Judgment:

21. The requirement that payment in full per demand and a release to follow or at close is required for a certified copy of a Judgment in the amount of $38,338.47 plus interest, costs, attorney fees and any other amounts due from Scott Corridan dba Scott Corridan Design, as Debtor, in favor of Rock & Rose, Inc, as Creditor, in Washoe County of the Second Judicial District Court of the State of Nevada in and for the County of Washoe, as Case No. CV19-01920, recorded February 11, 2020 as Document No. 4999922, Official Records of Washoe County, Nevada.

And the Woodburn Judgment:

22. The requirement that payment in full per demand and a release to follow or at close is required for a certified copy of a Judgment in the amount of $63,497.11 plus interest, costs, attorney fees and any other amounts due from Scott ALan Corridan, as Debtor, in favor of Russell Clifford Corridan, as Creditor, in Washoe County of the Family Division of the Second Judicial District Court of the State of Nevada in and for the County of Washoe, as Case No. DV18-01651, recorded March 31, 2020 as Document No. 5015679, Official Records of Washoe County, Nevada.

---

[4] As set out in the Sale Order, all disputed judgment liens attached to the proceeds of the sale in the order of their priority.  *See* Sale Order at 3:25–4:11; 4:15-25; 6:17–7:10; 9:9–10:15.



And the Horowitz Nevada Judgment:

26. Judgment in favor of Kevin Horowitz, Sole Properietor of St. Helena Construction Company against Scott A. Corridan, in the amount of $321,107.00 plus court cost & interest, entered on June 8, 2022 as Case Number CV22-00906 and recorded June 29, 2022 as instrument number 5314943, in Washoe County.

*See attached* <u>Exhibit "1"</u>, ECF No. 264 (Sale Order at Exhibit 2, pages 35-36 of .pdf).   In fact, as a condition of closing the escrow, Stewart Title required all of the Disputed Lien Claimants to submit their lien payoff statements as a condition of closing escrow with title free and clear of these judgment liens—further evidencing the lack of any confusion surrounding the identity of the judgment debtor or the real property affected.

The Trustee asserts the Disputed Judgment Liens can be avoided as a matter of law. despite the fact that all of the Disputed Lien Claimants' respective recorded judgment liens identified the Judgment Creditor and Judgment Debtor, all but one expressly identified the Judgment Debtor's real property in Washoe County by its APN, and all appeared as a matter of public record as encumbering the Pelton Lane Property as of the Petition Date as indicated by the Stewart Title Report. The Trustee is mistaken.

## III.    LEGAL STANDARD

A motion for judgment on the pleadings is governed by Fed. R. Civ. P. 12(c), made applicable in this adversary proceeding under Fed. R. Bankr. P. 7012.  *See Best v. Nationstar Mortg. LLC (In re Best)*, 540 B.R. 1, 7 (B.A.P. 1st Cir. 2015).  "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing.  Because the motions are functionally identical, the same standard of review is applicable to a Rule 12(b) motion applies to its Rule 12(c) analog."  *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  In reviewing the motion, the Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  However, in the Rule 12(c) context, the Court may look beyond the Complaint and also examine "the undisputed factual record expanded by the defendant's answer to determine the merits of the claims as revealed in the formal pleadings."  *See Best*, 540 B.R. at 7.   And when reviewing the pleadings, the Court need not accept

conclusory allegations as true or consider legal characterizations cast in the form of factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "Factual allegations must be enough to rise above the speculative level." *Id*. at 555.

"The standard of review for a summary judgment motion is set forth in Rule 56 of the Federal Rules of Civil Procedure which is applicable to this proceeding under Bankruptcy Rule 7056." *In re Art Shirt, Ltd*., 44 B.R. 523, 525 (Bankr. E.D. Pa. 1984). "[T]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law." *See San Diego Police Officers' Ass'n v. San Diego City Emples. Ret. Sys.*, 568 F.3d 725, 733 (9th Cir. 2009). A genuine issue of material fact only exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Caneva v. Sun Communities Operating Ltd.*, 550 F.3d 755, 761 (9th Cir. 2008) (internal citations omitted). The party moving for summary judgment must initially identify those portions of the pleadings and other documents on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* Once the moving party meets its burden, the non-moving party must set out specific facts showing a genuine issue for trial. *Id.* Further, "[u]nder Rule 56, the Court, upon motion by one party for summary judgment [also] has the power to grant summary judgment against the moving party and in favor of the non-moving party, although the latter has not filed a cross-motion for summary judgment." *See In re Calder*, 94 B.R. 200, 203 (D. Utah 1988).

## IV.   LEGAL ARGUMENT

### A.   The Disputed Lien Claimants each held a valid judgment lien against the Pelton Lane Property on the Petition Date.

It is undeniable that each of the Disputed Lien Claimants obtained a valid judgment against the Debtor and recorded that judgment in the Washoe County Recorder's Office before the Debtor filed bankruptcy on July 12, 2022 ("Petition Date"). Nevertheless, the Trustee



attacked the Disputed Lien Claimants for failure to record an informational affidavit under NRS 17.150(4)—that the Trustee incorrectly asserts is a prerequisite to obtaining a valid judgment lien in Nevada.  The Trustee's assault on the Disputed Lien Claimants is not based on the plain language of the statute—as the statute has no mention that recording such an affidavit is a condition precedent for creation of a lien.  Nor is it based on the statute's legislative history or purpose—which is to eliminate the occasion when title companies might experience some confusion when closing a transaction because two people have the same name, only one of whom is a judgment debtor.  Nor does the Trustee cite case law (published or unpublished) holding that recording an informational affidavit under NRS 17.150(4) is a prerequisite to creation of a valid judgment lien.  And it is not based on pragmatism either—as the essential information the NRS 17.150(4) affidavit is aimed at capturing (i.e., identification of the judgment debtor and relevant property in the county) is present on the face of the documents recorded by the Disputed Lien Claimants at issue here, all but one of which contain both the Debtor's name and the correct APN of the Pelton Lane Property—while the other eliminated any confusion by including multiple obvious references to the judgement debtor, Scott Alan Corridan, the amount of the judgment, and the court and case number from which hit was obtained.  *See* POC 13-2.

The simple truth is that all these things—the plain language of the statute, its legislative history and purpose, case law, and pragmatic reality—counsel against the Trustee's position in this litigation and support the conclusion that the Disputed Liens at issue are valid judgment liens as a matter of law.

> **1. The plain language of the statute establishes that recording a NRS 17.150(4) informational affidavit is not a condition precedent to creating a valid judgment lien under NRS 17.150(2).**

The Trustee incorrectly asserts, without any supporting case law authority, that a NRS 17.150 judgment lien "may only be created after recording of a judgment . . . **and the contemporaneous recording of an affidavit of judgement [sic] containing the information required in 17.150(4)(a)-(d)** . . . ."  *See* MSJ at 10:5-8 (emphasis added).  The Trustee's position on this point contradicts the plain language of the statute.  *See, e.g., Washoe Med. Ctr.*



*v. Second Judicial Dist. Court*, 122 Nev. 1298, 1302, 148 P.3d 790, 792-93 (2006) ("When a statute is clear on its face, [the Nevada Supreme Court] will not look beyond the statute's plain language").

To be clear, it is subsection 2 of NRS 17.150 that creates the judgment lien—and, so long as the judgment has not been stayed on appeal or satisfied, that subsection creates a lien on the judgment debtor's real property in that county immediately upon the recording of a certified copy of the judgment in the county recorder's office.  As applicable here, NRS 17.150(2) provides:

> 2.  **A** transcript of the original docket or an abstract or **copy of any judgment or decree of a district court of the State of Nevada** or the District Court or other court of the United States in and for the District of Nevada, **the enforcement of which has not been stayed on appeal, certified by the clerk of the court where the judgment or decree was rendered, may be recorded in the office of the county recorder in any county, <u>and when so recorded it becomes a lien upon all the real property of the judgment debtor not exempt from execution in that county</u>, owned by the judgment debtor at the time, or which the judgment debtor may afterward acquire, until the lien expires**. The lien continues for 6 years after the date the judgment or decree was docketed, and is continued each time the judgment or decree is renewed, unless:
>
> (a)  The enforcement of the judgment or decree is stayed on appeal by the execution of a sufficient undertaking as provided in the Nevada Rules of Appellate Procedure or by the Statutes of the United States, in which case the lien of the judgment or decree and any lien by virtue of an attachment that has been issued and levied in the actions ceases;
>
> (b)  The judgment is for arrearages in the payment of child support, in which case the lien continues until the judgment is satisfied;
>
> (c)  The judgment is satisfied; or
> (d)  The lien is otherwise discharged.
> ➡ The time during which the execution of the judgment is suspended by appeal, action of the court or defendant must not be counted in computing the time of expiration.

*See* NRS 17.150(2) (emphasis added).  The plain language of NRS 17.150(2) unmistakably establishes that the judgment creditor must record a certified copy of the judgment in the county recorder's office "and **when so recorded it becomes a lien upon all the real property of the judgment debtor not exempt from execution in that county**." *Id.* (emphasis added). The



1  reality is NRS 17.150(4)'s informational affidavit is not at all tied to creation of the judgement

2  lien, is in no way a condition precedent to creation of a valid judgment lien, and there is no

3  penalty in the statute if the judgment creditor does not record it.

4          What the statutory language certainly does not say is that a judgment lien fails or is

5  rendered invalid if the judgment creditor does not record the additional NRS 17.150(4)

6  affidavit.  If that was what the Nevada legislature intended, it certainly could have stated exactly

7  that in the statutory text—but it did not.  And it is not as if there was no place in the statute to

8  create such condition precedent—as NRS 17.150(2)(a)-(d) each set forth various events that, the

9  occurrence of any one of which, will affect the creation and/or enforceability of the judgment

10 lien.  For example, NRS 17.150(2)(a) recognizes that recording the judgment does not create a

11 valid lien if the judgment is stayed on appeal; while NRS 17.150(2)(b) establishes different

12 treatment for child support judgments; and NRS 17.150(2)(c) and (2)(d) respectively establish

13 that recording the judgment only creates a lien to the extent the judgment has not been satisfied

14 or otherwise discharged.  Notably, the failure to file an informational affidavit under NRS

15 17.150(4) is not included in the statute's explicit enumeration in NRS 17.150(2)(a)-(d) of the

16 particular events that affect the creation and enforceability of judgment liens. Neither does NRS

17 17.150(4) itself contain language tying the validity of the judgment lien to the recording of the

18 informational affidavit.  Under general rules of statutory construction, the listing of certain

19 specified events that affect the creation and enforceability of the judgment lien exclude all

20 others not listed therein.  *See generally, Coast Hotels & Casinos, Inc. v. Nev. State Labor*

21 *Comm'n*, 117 Nev. 835, 841, 34 P.3d 546, 550 (2001) ("Generally, when the legislature has

22 employed a term or phrase in one place and excluded it in another, it should not be implied

23 where excluded.").

24         The Trustee's position that recording a NRS 17.150(4) affidavit is a prerequisite to the

25 creation of a valid Nevada judgment lien is further belied by the language and structure of

26 statutory heading to NRS 17.150, which (like the statutory framework itself) separates the

27 concepts of judgment lien creation upon recording under NRS 17.150(2) and NRS 17.150(4)'s

28 separate informational affidavit requirement.  The statutory heading reads: "Docketing of



judgments of state and federal courts; recording of transcripts, abstracts and copies of judgments; **liens on real property**; duration of liens; **affidavit required of judgment creditor who records judgment or decree**." *See* NRS 17.150 (emphasis added). The text of the heading itself confirms that creating a valid judgment lien on real property is a distinctly separate concept that is disconnected from NRS 17.150(4)'s informational affidavit.

The Disputed Lien Claimants submit that a straightforward reading of the statute leads to an unambiguous conclusion: a judgment lien is created upon recording a judgment under NRS 17.150(2) and is neither conditioned upon, nor affected by, the recording or failure to record an informational affidavit under NRS 17.150(4).

**2. The Legislative History does not support the Trustee's position.**

NRS 17.150 was enacted in 1965 and, other than a few minor amendments, went largely unchanged for nearly thirty years.[5] In 1967, the statute was amended to add subsection 3, which describes what must be in the abstract of judgment required to be recorded under subsection 2 to create the lien. *See* 1967 Statutes of Nevada, page 949 (passed by way of S.B. 357). The statue was amended again in 1969 to make a minor textual change to subsection 2, confirming that a transcript of the original docket could also be recorded to create a lien. *See* 1967 Statutes of Nevada, page 42 (passed by way of S.B. 115). The statute was next amended in 1989 to make technical language corrections. *See* 1989 Statutes of Nevada, page 586 (passed by way of S.B. 142). In 1993, the legislature amended the statute to make additional technical language corrections and add the child support related language now found in NRS 17.150(2)(b). *See* 1993 Statutes of Nevada, pages 541-42 (added by way of A.B. 492). In 1995, the legislature added the informational affidavit requirement now found in NRS 17.150(4), which is the relevant amendment here and is discussed in detail below. Since the 1995 amendment at issue, the statute has been amended twice, both affecting NRS 17.150(4). First in 2007, to require only the last four of any social security number. *See* 2007 Statutes of Nevada, page 1315 (enacted by way of A.B. 600). The statute was last amended in 2011 to revise the information

---

[5] The statute is rooted in Section 332 of the Nevada Civil Practice Act of 1911.



required in the informational affidavit.  *See* 2011 Statutes of Nevada, page 2409 (enacted by way of S.B. 186).

The Trustee claims that by enacting S.B. 455 in 1995, the Nevada legislature intended to modify the long-established process set out in NRS 17.150(2) required to create a valid Nevada judgment lien, to make the additional informational affidavit requirement found in NRS 17.150(4) a condition precedent to the creation of the lien.  *See* MSJ at p. 16:17 – 22.  But nowhere in the language of NRS 17.150(4), S.B. 455, the 1995 senate committee hearing minutes cited by the Trustee, or the legislative history of the two subsequent statutory amendments, does it appear the legislature intended to condition the creation of a valid judgment lien on the recording of a NRS 17.150(4) informational affidavit.  In fact, the legislative history, when read in its entirety, indicates the exact opposite.

For example, in 1995, the senate judiciary committee originally discussed placing the informational affidavit requirement now contained in NRS 17.150(4) in an entirely different chapter of the Nevada Revised Statutes.  The initial thought was to place the affidavit language in Chapter 247 of the NRS—alongside changes codifying the common law principle that purchase-money deeds of trust have priority over judgment liens.  *See* **Exhibit "2"**, Consolidated History S.B. 455, 1995 at p. 8 (Section 36 of Bill Summary indicating amendment was to be to Chapter 247 of NRS).  The relevant language was ultimately moved to NRS 17.150(4) to avoid confusion as to whether the informational affidavit also applied to deeds of trust—**not because the legislature intended to add an additional condition to the creation of a judgment lien**, which was never even discussed.  The relevant discussion is indicated in the 1995 Senate Judiciary Committee minutes as follows:

> Section 36 brings a provision to include more identifying information about judgment debtors, when recording judgment liens, Mr. Cook continued.  **There is a proposed amendment, because it is more appropriate to place the provision under NRS 17.150.  As it is currently written, he explained, the provision could potentially affect deeds of trust, which is not the intent**.

> Ms. Johnson noted the reason for the additional identifying information is because identical names come up frequently.  With



the addition of a social security number, the misidentifications will
be greatly reduced, she opined.

*See* <u>Exhibit "2"</u>, Consolidated History S.B. 455, 1995 at p. 13 (at page 11 of *Minutes of the Senate Committee on Judiciary,* May 23, 1995) (emphasis added).  The committee briefly described the identical name issue being a somewhat minor concern, and certainly did not describe the issue as so important that it required conditioning the creation of a judgment lien upon compliance with this new informational affidavit requirement passed at the behest of the title company lobby.  *See id.*  If this new affidavit requirement truly established a new condition to the very creation of a valid judgment lien, it is unlikely (at best) that the legislature would have **<u>ever</u>** initially considered placing the affidavit requirement somewhere in NRS Chapter 247.  *See id.*

NRS 17.150(4)'s informational affidavit was never aimed at providing judgment debtors (or bankruptcy trustees) with a sword to avoid execution on lawful judgments—rather, it was intended to better inform others conducting title searches, and to avoid situations, for example, where it appears a judgment lien exists on the estate of a deceased "John Smith" when the judgment was really against a different John Smith.  This purpose was plainly set out in the 1995 legislative history minutes:  "Ms. Johnson noted the reason for the additional identifying information is because identical names come up frequently. With the addition of a social security number the misidentifications will be greatly reduced, she opined."  *See* <u>Exhibit "2"</u>, Consolidated History S.B. 455, 1995 at p. 13 (at page 11 of *Minutes of the Senate Committee on Judiciary,* May 23, 1995)

The 2011 legislative history further confirms the entire purpose of the NRS 17.150(4) affidavit is to "tie" a judgment to a particular parcel of property by identifying both the affected judgment debtor and the affected real property.  For example, the bill's sponsor, County Recorder Lora E. Myles stated, "[p]eople obtain judgments and do not tie them to real property or mobile homes. As a result, when the mobile home or real property is foreclosed upon or sold, those judgments are not satisfied because they are not tied to the property. They are tied to a person's name. Regarding section 1 of the bill, we are asking if a judgment is filed with a county recorder's office, information on the real property or mobile home be included in a cover sheet



with a copy of the judgment from the court. This makes it clear the property is subject to a lien."
*See* **Exhibit "3"**, Senate Committee on Judiciary, Minutes, March 2, 2011 (page 11-12).  What the Bill's sponsors never requested, or even discussed, was that the informational affidavit requirement be a condition to lien creation—which has always been a function of NRS 17.150(2)—not subsection 4 of the statute that discusses the informational affidavit.  In fact, as part of the 2011 amendment, the legislature notably added the following language in blue to the first sentence of NRS 17.150(4), confirming the judgment lien is created pursuant to subsection 2 of NRS 17.150 upon recording of the judgment lien itself:

> [A] *In addition to recording the information described in subsection 2, a* judgment creditor who records a judgment or decree *for the purpose of creating a lien upon the real property of the judgment debtor pursuant to subsection 2* shall record at that time an affidavit *of judgment* stating: . . . .

*See* 2011 Statutes of Nevada, page 2409) Chapter 388, SB 186).[6]

Despite the clear statutory purpose indicated in the legislative history, the Trustee contends that the legislature must have intended compliance with NRS 17.150(4) to be a prerequisite for creation of a judgment lien under NRS 17.150(2), or else NRS 17.150(4) would be meaningless.  But the mere fact that the statute imposes no penalty for a violation of NRS 17.150(4) does not render its affidavit requirement meaningless or superfluous.  What the Trustee fails to address is that the legislature intended for the affidavit language in NRS 17.150(4) to be directory in nature.  *See* Argument, Section IV(A)(3), *infra*.

In any event, the Trustee's position has been rejected by multiple courts that have faced the issue.  For example, the Nevada Court of Appeals addressed the issue, albeit in an unpublished order, in *Secured Holdings, Inc. v. Eighth Judicial Dist. Court of Nev.*, 2017 Nev. App. Unpub. LEXIS 468, *2-3, 2017 WL 3013065 (Nev. App. 2017) (attached as **Exhibit "4"**)

---

[6] *Available at*:  https://www.leg.state.nv.us/Statutes/76th2011/Stats201120.html#Stats201120page2409



The writ petitioner in *Secured Holdings* made the same argument the Trustee makes here—that the recorded judgment at issue failed to create a lien because the judgment creditor never recorded the affidavit required by NRS 17.150(4). *See id.* The Nevada Court of Appeals persuasively examined NRS 17.150(4)'s affidavit requirement and found that "while the statute requires an affidavit to be filed, **the affidavit is not a condition precedent to the creation of a valid lien** and the statute does not provide that the lien is invalid if the affidavit is not filed." *See id.* (emphasis added).

The Nevada District Court also recently addressed the issue in *Sphere, LLC v. Pawnee Leasing Corp.*, 2023 U.S. Dist. LEXIS 207350, 2023 WL 8018293, Case No. 3:23-cv-00176-MMD-CBL (D. Nev. Nov. 17, 2023) (attached as **Exhibit "5"**). In that case, Sphere argued that "Pawnee did not establish a valid lien [when it recorded its judgment], because it failed to record an additional affidavit of judgment mandated under section 17.150(4) with information required to 'put the world on notice of the identity of the judgment debtor and the property that is the subject of the lien.'" *Id.* at *5. In ruling on the issue, Judge Du found the plain language of the statute supported Pawnee's position that recording the judgment lien created the lien, finding the statute "on its face . . . suggests that a judgment creates a lien the moment it is recorded." *Id.* at *8. Judge Du went further, reasoning that subsection (2) of NRS 17.150 expressly recognizes that the lien applies "not just to a debtor's presently-owned real property but to property 'afterward acquire[d]' by the debtor. And, "because real property acquired in the future by definition is not yet identifiable by parcel number and address, it is not clear why any lien's initial *validity* must depend upon the recording of this information under subsection 4(c) for the purpose of *notice*, as Sphere argues." *Id.* Judge Du ultimately concluded "the state high court would interpret NRS § 17.150 to indicate that a judgment becomes a valid lien when it is recorded under subsection (2), and that recording an affidavit of judgment under subsection (4), while mandatory, is not a condition precedent to the creation of a valid lien." *Id.* at **12-13. Thus, the very nature of a judgment lien as both a current and forward-looking enforcement mechanism— affecting the judgment debtor's after-acquired property in the county of



1  recordation, which cannot be described at the time of lien recordation—dismantles the Trustee's

2  position.

3    The existing case law on the subject cuts against the Trustee's position and the Trustee

4  fails to cogently elucidate exactly how the legislative intent of preventing confusion among

5  judgment debtors with similar names is realized by invalidating the Disputed Liens at issue in

6  this case—where absolutely no risk of confusion is present.  It would produce an absurd and

7  unreasonable result to hold that many otherwise valid judgment liens are void, a most severe

8  sanction, because they failed to be accompanied by an affidavit designed to address a much less

9  severe problem—the infrequent potential for misidentification of judgment debtors and their

10  property.  The Disputed Lien Claimants submit that the legislative history and context of the

11  committee discussion surrounding it counsel that the validity of a Nevada judgment lien is in no

12  way affected by the NRS 17.150(4) informational affidavit.

### 3. The Disputed Lien Claimants have substantially complied with the informational requirements of NRS 17.150(4).

15    The Disputed Lien Claimants maintain that the NRS 17.150(4) affidavit has no effect on

16  the validity (or invalidity) of a recorded judgment lien.  But even if it did, the Disputed Lien

17  Claimants here have substantially complied with the statute.

18    When addressing the level of statutory compliance required there are two choices:  strict

19  compliance or substantial compliance.  In deciding which applies, the Nevada Supreme Court

20  looks to the statutory language and considers policy and equity principles.  *See Markowitz v.*

21  *Saxon Special Servicing*, 129 Nev. 660, 664, 310 P.3d 569, 572 (2013).  "Generally, a rule is

22  mandatory and requires strict compliance when its language states a specific 'time and manner'

23  for performance." *Id.* (citation omitted).  "Time and manner refers to when performance must

24  take place and the way in which the deadline must be met." *Id.*  (citations omitted).  "'Form and

25  content' provisions, on the other hand, dictate who must take action and what information the

26  party is required to provide." *Id.* (citation omitted).  "When a party accomplishes such actual

27  compliance as to matters of substance, technical deviations from form requirements do not rise

28  to the level of noncompliance." *Id.* (citation omitted).  "[T]he purpose of the substantial-



compliance rule is to identify a factual situation in a case whereby the reasonable purpose of the statute is met by the offending party's actions without requiring technical compliance with the statutory language." *See Schleining v. Cap One, Inc.*, 130 Nev. 323, 331, 326 P.3d 4, 9 (2014) (citation and internal quotation omitted).  But make no mistake, even "strict compliance does not mean absurd compliance."  *See Einhorn v. BAC Home Loans Servicing, LB,* 128 Nev. 689, 696, 290 P.3d 249, 254 (2012); *see also* 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 46:2, at 162 (7th ed. 2007) ("Statutes should be read sensibly rather than literally and controlling legislative intent should be presumed to be consonant with reason and good discretion.").[7]

The Trustee argues that because NRS 17.150(4) states that the additional informational affidavit 'shall' be filed, strict adherence is required.  *See* MSJ at p. 19:5 – 16.  The "[u]se of the word 'shall' usually, **but not always**, makes the action mandatory."  *See Village League to Save Incline Assets, Inc. v. State ex rel. Bd. of Equalization*, 124 Nev. 1079, 1088, 194 P.3d 1254, 1260 (2008).   In *Village League* the Nevada Supreme Court confirmed that some statutory commands are 'directory' rather than 'mandatory' despite using commands such as 'shall,' and "[i]n determining whether a statute is mandatory or directory, [the Nevada Supreme Court] will look to the statutory scheme, as well as policy and equity considerations".  *Id.* at 1087, 194 P.3d 1260 (citing *Leven v. Frey*, 123 Nev. 399, 406, 168 P.3d 712, 717 (2007)) (internal quotation omitted).  Stated another way, form and content provisions are generally directory in nature—and do not require strict compliance.  As stated in *Markowitz*, "[b]ecause they do not implicate notice, form and content-based rules are typically directory and may be satisfied by

---

[7] The quote and cites on this point are taken from *Hesser v. Kennedy Funding*, 2022 Nev. Unpub. LEXIS 103 at *3, 2022 WL 354504, NV. S. Ct. Case No. 81383 (NV. S. Ct., Feb. 4, 2022).  In *Hesser*, the Nevada Supreme Court rejected a strict interpretation of NRS 17.214's service requirement when the judgment renewal was both recorded and served prior to expiration of the original judgment, stating:

> Thus, unlike in *Leven* where the judgment had expired, a creditor conducting a title search would have seen there was an unexpired lien on the property.  As such, the purpose of procuring reliable title searches is not affected in the circumstances presented here.



substantial compliance, sufficient to avoid harsh, unfair, or absurd consequences." *Id.* (citation and internal quotation omitted).  *Markowitz*, 129 Nev. at 664, 310 P.3d at 572 (citation omitted). "When any requirement of statute is held to be directory, and therefore not material to be followed, it is upon the assumption that the legislature itself so considered it, and did not intend to make the right conferred dependent upon a compliance with the form prescribed for securing it. It is upon this principle that the courts often hold the time designated in a statute, where a thing is to be done, to be directory." *Corbett v. Bradley*, 7 Nev. 106, 108 (1871).

The Trustee acknowledges that the substantial compliance standard recognizes reasonable performance is adequate, even absent technical compliance, **when the purpose of the statute is served and requiring strict compliance would lead to an absurd result**. *See generally* MSJ at 17:19– 18:11 (emphasis added).  Nevertheless, the Trustee asserts the substantial compliance standard does not apply because NRS 17.150(4) is a 'time and manner' provision.  Citing *Leven v. Frey, supra*, the Trustee compares the NRS 17.150(4) affidavit requirement to the three-day 'time and manner' requirements to record and serve a judgment renewal after its filing under NRS 17.214(1)(b), asserting that the strict compliance required under NRS 17.214(1)(b) is similarly required for NRS 17.150(4).

In *Leven*, the Nevada Supreme Court compared NRS 17.214 with NRS 17.150(2), emphasizing why strict compliance with 'time and manner' requirements is generally required. In so doing, the *Leven* court stated, "NRS 17.150(2) creates a lien on a debtor's real property in a particular county when a judgment is recorded in that county."  Notably absent from *Leven* is any mention that a NRS 17.150(4) informational affidavit is also required to create a lien on a debtor's real property.  *Id.*  In fact, *Leven* court flatly stated, "NRS 17.150(2) creates a lien on a debtor's real property in a particular county when a judgment is recorded in that county; this lien remains in place for six years from the date that the judgment was docketed and continues automatically each time the judgment is renewed."  *Leven*, 123 Nev. at 403, 168 P.3d at 715 (citation and internal quotation omitted).  But even if *Leven* does not conclusively establish that a judgment lien is created immediately upon the recording of the judgment pursuant to NRS 17.150(2), the slate is not completely bare on how Nevada courts may approach the issue before



1    this Court.  As set out above, the Nevada Court of Appeals and federal District Court have come

2    to the same persuasive conclusion—the judgment lien is perfected upon its recording and its

3    validity is not dependent on recording the NRS 17.150(4) affidavit.  *See Sphere, LLC v. Pawnee*

4    *Leasing Corp.*, 2023 U.S. Dist. LEXIS 207350, 2023 WL 8018293, Case No. 3:23-cv-00176-

5    MMD-CBL (D. Nev. Nov. 17, 2023); *see also Secured Holdings, Inc. v. Eighth Judicial Dist.*

6    *Court of Nev.*, 2017 Nev. App. Unpub. LEXIS 468, 2017 WL 3013065 (Nev. App. 2017).

7            Unlike the core issue in *Leven*, the NRS 17.150(4) issue before this Court does not

8    involve notice.  In fact, the heart of the Trustee's assertions here concern NRS 17.150(4)'s

9    'form and content' provisions—form in the sense that an affidavit is the chosen form; and

10   content because NRS 17.150(4) guides what details to include the said affidavit.  *See e.g.*

11   *Leven*, 123 Nev. at 403, 168 P.3d at 715.  And, as set out in Section II above, each of the

12   Disputed Lien Claimants substantially complied with the statutory purpose of NRS 17.150(4)

13   by, among other things, expressly including the Pelton Lane Property's APN or other

14   information patently sufficient to satisfy the purpose of the NRS 17.150(4) affidavit—which is

15   to identify the correct judgment debtor by tying real property owned (or later acquired) in the

16   county to the judgment debtor.  Thus, even if recording the NRS 17.150(4) informational

17   affidavit was somehow a condition precedent to creation of a Nevada judgment lien, the

18   relevant statutory provisions are 'form and content' based directives that the Disputed Lien

19   Claimants substantially complied with by accurately identifying the Debtor in a manner

20   sufficient to tie property in the county to that Debtor.

21           The purpose of NRS 17.150(4) has been met—there can be no confusion that the

22   Disputed Judgment Liens at issue here related to both the Debtor <u>and</u> the Pelton Lane Property.

23   Simply put, substantial compliance exists because the "purpose of the statute can be adequately

24   served in a manner other than by technical compliance."  *See, e.g., Bolden v. State*, 137 Nev.

25   Adv. Rep. 28, 499 P.3d 1200, 1205 (2021) (holding unsworn declaration satisfied statutory

26   affidavit requirement) (citation, ellipses, and internal quotation omitted).

27

28   *///*



## V.    CONCLUSION.

The Trustee does not appear to be motivated by concern for those the NRS 17.150(4) affidavit aims to protect, but instead is advancing this technical argument to eliminate legitimate secured creditors.  And while the Disputed Lien Claimants suspect this has more to do with the potential administrative insolvency of this case, it is nevertheless clear that the Trustee's position "exalts literalism for no practical purpose" and must be rejected.  *See Einhorn v. BAC Home Loans Servicing, LP*, 128 Nev. 689, 697, 290 P.3d 249, 254 (2012).

DATED:  February 20, 2024.

**HUMPHREY O'ROURKE PLLC**

**By:** /s/ *L. Edward Humphrey*
     L. Edward Humphrey, Esq.
*Attorneys for Steven and Terre Baldwin, Big Water Investments, LLC, and Kevin Horowitz, sole proprietor of St. Helena Construction Company*

**KAEMPFER CROWELL**                          **WOODBURN AND WEDGE**


**By:** /s/ *Louis M. Bubala III*                       **By:** /s/ *Seth J. Adams*
     Louis M. Bubala III, Esq.                         Seth J. Adams, Esq.
*Attorneys for Rock & Rose, Inc.*              *Attorneys for Woodburn and Wedge*

