1  HOLLY E. ESTES, ESQ.
   Nevada Bar No. 11797
2  Estes Law, P.C.
   605 Forest Street                          ***ELECTRONICALLY FILED***
3  Reno, Nevada 89509                         ***March 8, 2024***
   Telephone (775) 321-1333
4  Facsimile (775) 321-1314
   *Email: hestes@esteslawpc.com*
5  Counsel for Chapter 7 Trustee

6              UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF NEVADA
7                        —ooOoo—

8  In Re:                              Case No. 22-50366-hlb
                                       Chapter 7
9  SCOTT A. CORRIDAN,

10             Debtor.                 **Adv. No. 23-05013-hlb**

11 _____/

12 EDWARD M. BURR, in his capacity as   **CHAPTER 7 TRUSTEE'S REPLY TO**
   Chapter 7 Trustee for the bankruptcy estate of **DISPUTED LIEN CLAIMANTS' JOINT**
13 SCOTT CORRIDAN,                      **OPPOSITION TO MOTION FOR**
                                        **JUDGEMENT ON THE PLEADINGS OR,**
14             Plaintiff,               **IN THE ALTERNATIVE, MOTION FOR**
                                        **SUMMARY JUDGEMENT AGAINST**
15    vs.                              **ALL DEFENDANTS ON CLAIMS 1-4**
                                        **AND 6, AND REQUEST FOR COURT TO**
16 STEVEN BALDWIN; TERRE BALDWIN;       **DIRECT ENTRY OF FINAL**
   BIG WATER INVESTMENTS, LLC, a        **JUDGEMENT**
17 Nevada limited liability company; ROCK &
   ROSE, INC.; WOODBURN & WEDGE;
18 and KEVIN HOROWITZ, sole proprietor of
   ST. HELENA CONSTRUCTION
19 COMPANY,                             Hearing Date: March 29, 2024
                                        Hearing Time: 1:30 p.m.
20             Defendants.
   _____/
21

22        Plaintiff, Chapter 7 Trustee, Edward M. Burr (the "Trustee"), by and through his counsel,

23 Holly E. Estes, Esq., of Estes Law, P.C., hereby files his reply to the Disputed Lien Claimants'

24 Joint Opposition to Trustee's Motion for Judgement on the Pleadings or, in the Alternative,

25 Motion for Summary Judgement Against all Defendants on Claims 1-4 and 6, and Request for

26 Court to Direct Entry of Final Judgement [DE 47] (the "Opposition").  This reply is based upon

27 the following memorandum of points and authorities, the pleadings and papers on file in this

28 case, and any oral argument the Court will permit at the hearing hereon.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**A.     Summary**

3

        The facts are largely undisputed.  The sole questions are legal questions:

4

        (A) whether NRS 17.150 requires that a judgement creditor comply with NRS 17.150 (2)

5

through (4) in order to create a valid judgement lien on real property, or if compliance with NRS

6

17.150(2) is all that is required;

7

        (B) if NRS 17.150 (4) is required to create a valid judgement lien on real property, is

8

strict compliance or substantial compliance required; and

9

        (C) if substantial and not strict compliance with NRS 17.150 (4) is required, was

10

substantial compliance satisfied here?

11

        The Disputed Lien Claimants' Opposition incorrectly asserts that there is

12

"overwhelming" legal authority on point and that the trustee is pursuing this adversary

13

inappropriately.  In fact, there is no binding legal authority on this issue, and the Trustee is

14

pursing this adversary as his fiduciary obligations to creditors of the estate require.  The Trustee

15

is seeking a court order before blindly paying out hundreds of thousands of dollars to the

16

Disputed Lien Claimants, when doing so may not be correct.  The Trustee is charged with

17

distributing the estate's assets within the priority scheme in the bankruptcy code without

18

preferring any creditor to another.  Disputed Lien Claimants' Opposition suggests that the

19

Trustee should ignore his fiduciary obligations and pay them as secured creditors even if they are

20

not entitled to that priority of payment.

21

        Disputed Lien Claimants suggest that they did not have to follow the requirements

22

provided by the plain reading of NRS 17.150 because there was no other similarly named person

23

at issue here and thus - "no harm, no foul".  The statute does not say it only becomes operable

24

when a second similarly named person is identified and harmed, or when the lien inappropriately

25

populates in a title search of real property for someone other than the judgement debtor.  This

26

litigation is not between the Disputed Lien Claimants and the judgement debtor, it is between

27

Disputed Lien Claimants and the Trustee as a hypothetical lien creditor.  Mr. Corridan's actual

28

knowledge that he and the Pelton property were the proper intended target of the Disputed Lien

**ESTES LAW, P.C.**
**605 Forest Street**
**Reno, Nevada  89509**
**(775) 321-1333**

2

1  Claimants is not imputed on Trustee Burr or the title company used here.  Disputed Lien

2  Claimants failed to meet the statutory purpose of providing express and known identifying

3  information to distinguish this Debtor from any other with the same name, or affirming based

4  upon their own personal knowledge that in fact, this Property was subject to their judgements.

5  Thus, the burden was inappropriately placed upon the innocent Trustee and title company, and

6  not the judgment creditor as was the legislature's clear intent.

7         The pleadings are closed and, as set forth more fully below, the Trustee is entitled to have

8  the Motion granted because on the admitted facts, the Trustee is clearly entitled to judgment on

9  the pleadings.  If the Court considers matters outside of the pleadings, the motion is to be treated

10  as one for summary judgment.  The material facts are undisputed here.  There is no genuine issue

11  of material fact and the Trustee is entitled to judgement against all Defendants as a matter of law.

12  **B.    Legal Argument.**

13         **1.       Disputed Lien Claimants Recorded Judgements Do Not Sufficiently**

14               **Distinguish the Judgement Debtor and his Property.**

15         In their Opposition Disputed Lien Claimants argue that because their recorded judgement

16  liens include "Scott Corridan", and the last known address of the judgement debtor as "the

17  Property[1]" that satisfies the requirements of NRS 17.150(4) which requires:

18         4. In addition to recording the information described in subsection 2, a
        judgment creditor who records a judgment or decree for the purpose of creating a
19        lien upon the real property of the judgment debtor pursuant to subsection 2 shall
        record at that time an affidavit of judgment stating:
20
        (a) The name and address of the judgment debtor;
21
        (b) **If the judgment debtor is a natural person**:
22
               (1) The **last four digits of the judgment debtor's driver's license
23               number or identification card number and the state of issuance**; or

24               (2) The **last four digits of the judgment debtor's social security
               number**;
25
        (c) If the lien is against real property which the judgment debtor owns at the
26

27  _____
        [1] Either by describing the Property by address or APN or both.  **Importantly,**
28  **Woodburn and Wedge neither described the Property address nor APN in their**
   **recorded judgement.**

1 time the affidavit of judgment is recorded, the assessor's parcel number and
the address of the real property **and a statement that the judgment creditor**

2 **has confirmed that the judgment debtor is the legal owner of that real**
**property**; and

3

4 (d) If a manufactured home or mobile home is included within the lien, the
location and serial number of the manufactured home or mobile home and a

5 statement that the judgment creditor has confirmed that the judgment debtor
is the legal owner of the manufactured home or mobile home.

6 All information included in an affidavit of judgment recorded pursuant to this
subsection must be based on the personal knowledge of the affiant, and not upon

7 information and belief.

8        In reviewing the statute and the recorded judgement liens, Disputed Lien Claimants may

9 have satisfied 17.150(2)(a), but not (b)(1), (b)(2), (c) or the affidavit of judgement requirement

10 that ***must*** be based on the personal knowledge of the affiant and not upon information and belief.

11 Disputed Lien Claimants have failed to distinguish this Scott Corridan from any other with the

12 same name because they have not provided the last four digits of his social security number,

13 driver's license or identification card number issued by a state.  Further, Disputed Lien Claimants

14 have failed to confirm by sworn affidavit based upon personal knowledge that the Property is

15 legally owned by the judgement debtor, and not another similarly named person.  Disputed Lien

16 Claimants assertion that the statute has been satisfied is incorrect.

17        Hypothetically, let's assume Scott Corridan, is a common name in our community.

18 Perhaps this Scott Alan Corridan comes from a family with a Jr., Sr., II, III, or IV.  Perhaps this

19 Scott A. Corridan, is a second to his father, and has a son whom he named Scott Michael

20 Corridan, an uncle Scott Samuel Corridan, and a distant cousin Scott Aaron Corridan all residing

21 and owning homes in Washoe County.  Let's also assume there is another Scott Alan Corridan

22 residing in Washoe County who owns real property who is of no relation to the Debtor.  Let's

23 assume Scott Alan Corridan, the judgement debtor, is living with any one of his relatives at the

24 Property which is described as "his last known address", but owned by a relative who has taken

25 him in.  Now lets assume applying the Disputed Lien Claimants logic, that the owner of the

26 Property wanted to sell the Property, and in a title search during the sale all of the Disputed Lien

27 Claimants' judgements came up in a title search, but (as we know based upon this hypothetical)

28 the judgement liens inappropriately populated in the title search for the Property, which is not

1  owned by the judgement debtor.  There is now a substantial burden placed upon two innocent

2  parties, the title company and the owner of the Property with a similar or same name as the

3  judgement creditor.  Reason and public policy would not place the burden on the innocent

4  bystander.

5       From here a few scenarios may play out: (1) the owner of the Property may be required to

6  file a quiet title action to remove the Disputed Judgement Liens from their Property, which likely

7  will upset the sale; (2) the title company may close and pay the Disputed Lien Claimants through

8  escrow, inappropriately subjecting the title company to liability to the Property owner who

9  should have received the funds; (3) the title company closes and does not pay the Disputed Lien

10  Claimants.  Based upon the last scenario, applying Disputed Lien Claimant's logic, the title

11  company may have resulting liability to the Disputed Lien Claimants, who assert they should

12  have been paid, even though the title company could not confirm based upon the information

13  recorded by Disputed Lien Claimants whether this is an instance of misidentification or not.

14       This is the exact reason this section to this statute was added, to ensure the burden is

15  properly placed on the judgement creditor who wishes to be paid, and not on the innocent person

16  with the same or similar name, or the title company.  It is a relatively low burden and

17  appropriately placed upon the judgement creditor.  The legislative intent is clear, to prevent

18  misidentifications as could have happened in the hypothetical above, by requiring a judgement

19  creditor who wishes to obtain a judgment lien on the judgement debtor's real property to record

20  along with the judgment the affidavit of judgement appropriately distinguishing this Scott Alan

21  Corridan from any other with the same or similar name, and affirming based upon personal

22  knowledge that the affiant has confirmed Scott Alan Corridan *is the owner of the property*, not

23  merely residing there.

24      **2.**    **The Title Search.**

25       Disputed Lien Claimants assert that because their recorded judgement liens came up in

26  the title search conducted by Stewart Title Company when the Trustee sold the Property in the

27  underlying bankruptcy case, "no confusion [exists] as to whether the Disputed Lien Claimants

28  liens attached to the Property." Opposition pg. 9, lns. 7-8.

1    Disputed Lien Claimants assertions ignore the plain reading of NRS 17.150 and the

2  legislative history and intent.  The legislature added the requirement of NRS 17.150(4) ***at the***

3  ***request of title companies*** to prevent misidentifications due to identical names, which come up

4  frequently, when recorded judgement liens did come up in title searches.  *See Minutes of the*

5  *Senate Committee on Judiciary, Sixty-eighth Session, May 23, 1995, pg. 11.*  The fact that the

6  Disputed Lien Claimants recorded judgements came up in the title search is not dispositive that

7  the Disputed Lien Claimants' liens properly attached to the Property.  Rather, it highlights the

8  issue that without the affidavit of judgement required by NRS 17.150(4), sufficient notice was

9  not provided that this Scott Alan Corridan and this Property are subject to these judgement liens.

10    Disputed Lien Claimants argue that they have identified "Scott Corridan" and the

11  "Property" by its APN, which came up on Stewart Title's title search, but they did not provide

12  the requisite affidavit of judgement which would have put third parities and the title company on

13  notice that their recorded judgements should be enforced against this Scott Corridan or that they

14  have ***personally confirmed*** he is the owner of the Property and not merely residing there.

15  Neither the Title Company nor the Trustee as a hypothetical lien creditor knew whether these

16  Disputed Judgement Liens were an instance of misidentification – a known and common issue in

17  enforcing judgement liens.  *Id.*

18    Disputed Lien Claimants assert that NRS 17.150(4) is merely information and not

19  required for any purpose.  Such an assertion renders NRS 17.150(4) meaningless, which is

20  against the rules of statutory construction.  Further, Disputed Lien Claimants assertion ignores

21  that NRS 17.150(4) was added in the 1995 amendments to NRS 17.150 and amended in 2007

22  and 2011.  The legislature would not have added this section and refined it if it had no purpose or

23  meaning.

24    Further, when comparing the 1995 amendment to the 2011 changes to 17.150(4) one can

25  see that the legislature meant to require the recording of the affidavit of judgment in addition to

26  the information required by NRS 17.150(2) for the purpose of creating a lien.  Compare:

27    The 1995 Amendment to NRS 17.150 added section (4) to read:

28    *4. **A judgment creditor who records a judgment or decree shall record at that time an***

1    *affidavit stating*:

2              *(a) The name and address of the judgment debtor;*

3              *(b) The judgment debtor's driver's license number and state of issuance or the*
        *judgment debtor's social security number; and*

4

5              *(c) The judgment debtor's date of birth,*

6        *if known to the judgment creditor. If any of the information is not known, the*
        *affidavit must include a statement of that fact.*

7    995 Statutes of Nevada, Page 1525 (CHAPTER 475, SB 455)(italics added to show what

8    language was added by the legislature).

9        With:

10        The 2011 amendments to NRS 17.150 amended the language of Section (4) to read:

11        4. ***In addition to recording the information described in section 2, a judgement***

12    ***creditor who records a judgement for the purpose of creating a lien upon the real***

13    ***property of the judgement debtor pursuant to subsection 2 shall record at that time an***

14    ***affidavit of judgement stating***:

15              (a) The name and address of the judgment debtor;

16              (b) *If the judgement debtor is a natural person:*

17              *(1) the last four digits of the* judgment debtor's driver's license

18    number *or identification card number* and state of issuance*; or*

19              *(2) the* last four digits of the judgment debtor's social security

20    number.

21              (c) *If the lien is against real property which the judgment debtor owns at*

22    *the time the affidavit of judgment is recorded, the assessor's parcel number and the*

23    *address of the real property and a statement that the judgment creditor has confirmed*

24    *that the judgment debtor is the legal owner of that real property; and*

25              *(d) If a manufactured home or mobile home is included within the lien,*

26        *the location and serial number of the manufactured home or mobile home*

27        *and a statement that the judgment creditor has confirmed that the*

28        *judgment debtor is the legal owner of the manufactured home or mobile*

*home.*

*All information included in an affidavit of judgment recorded pursuant to this subsection must be based on the personal knowledge of the affiant, and not upon information and belief.*

*5. As used in this section:*

*(a) "Manufactured home" has the meaning ascribed to it in NRS 489.113.*

*(b) "Mobile home" has the meaning ascribed to it in NRS 489.120.*

2011 Statutes of Nevada, Page 2409 (CHAPTER 388, SB 186)(italics added to show what language was added by the legislature).

The affidavit of judgement is required to be recorded contemporaneously ***and in addition to*** the information described in NRS 17.150(2) for creating a judgment lien on real property of the judgement debtor. *See* NRS 17.150.

**1.    Nevada Revised Statue 17.150 Governs The Creation of a Judgement Lien on Real Property in Nevada.**

Nevada Revised Statue 17.150 governs the creation of a judgement lien on real property in Nevada, and provides:

NRS 17.150  Docketing of judgments of state and federal courts; recording of transcripts, abstracts and copies of judgments; liens on real property; duration of liens; affidavit required of judgment creditor who records judgment or decree. [Effective through December 31, 2022.]

1.  Immediately after filing a judgment roll, the clerk shall make the proper entries of the judgment, under appropriate heads, in the docket kept by the clerk, noting thereon the hour and minutes of the day of such entries.

2.  A transcript of the original docket or an abstract or copy of any judgment or decree of a district court of the State of Nevada or the District Court or other court of the United States in and for the District of Nevada, the enforcement of which has not been stayed on appeal, certified by the clerk of the court where the judgment or decree was rendered, may be recorded in the office of the county recorder in any county, and when so recorded it becomes a lien upon all the real property of the judgment debtor not exempt from execution in that county, owned by the judgment debtor at the time, or which the judgment debtor may afterward acquire, until the lien expires. The lien continues for 6 years after the date the judgment or decree was docketed, and is continued each time the judgment or decree is renewed, unless:

(a) The enforcement of the judgment or decree is stayed on appeal by the execution of a sufficient undertaking as provided in the Nevada Rules of Appellate Procedure or by the Statutes of the United States, in which case the lien of the judgment or decree and any lien by virtue of an attachment that has been issued and levied in the actions ceases;

ESTES LAW, P.C.
605 Forest Street
Reno, Nevada  89509
(775) 321-1333

F:\Estes Law Backup 041422\Corridan, Scott\Adv. Claim Obj Lien Obj\MJP or MSJ\Rply Opp MJP or MSJ 030824.wpd

(b) The judgment is for arrearages in the payment of child support, in which case the lien continues until the judgment is satisfied;

(c) The judgment is satisfied; or

(d) The lien is otherwise discharged.

The time during which the execution of the judgment is suspended by appeal, action of the court or defendant must not be counted in computing the time of expiration.

3. The abstract described in subsection 2 must contain the:

(a) Title of the court and the title and number of the action;

(b) Date of entry of the judgment or decree;

(c) Names of the judgment debtor and judgment creditor;

(d) Amount of the judgment or decree; and

(e) Location where the judgment or decree is entered in the minutes or judgment docket.

4. In addition to recording the information described in subsection 2, a judgment creditor who records a judgment or decree for the purpose of creating a lien upon the real property of the judgment debtor pursuant to subsection 2 shall record at that time an affidavit of judgment stating:

(a) The name and address of the judgment debtor;

(b) If the judgment debtor is a natural person:

(1) The last four digits of the judgment debtor's driver's license number or identification card number and the state of issuance; or

(2) The last four digits of the judgment debtor's social security number;

(c) If the lien is against real property which the judgment debtor owns at the time the affidavit of judgment is recorded, the assessor's parcel number and the address of the real property and a statement that the judgment creditor has confirmed that the judgment debtor is the legal owner of that real property; and

(d) If a manufactured home or mobile home is included within the lien, the location and serial number of the manufactured home or mobile home and a statement that the judgment creditor has confirmed that the judgment debtor is the legal owner of the manufactured home or mobile home.

All information included in an affidavit of judgment recorded pursuant to this subsection must be based on the personal knowledge of the affiant, and not upon information and belief.

5. As used in this section:

(a) "Manufactured home" has the meaning ascribed to it in NRS 489.113.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(b) "Mobile home" has the meaning ascribed to it in NRS 489.120. NRS 17.150.

**2.    The Plain Reading of the Statute Requires the Contemporaneous Filing of an Affidavit of Judgement, including the information specified in NRS 17.150(4), with the Judgement to Create a Judgement Lien on Real Property.**

Disputed Lien Claimants argue that the plain reading of NRS 17.150 establishes that all that is required for creation of a valid judgement lien is for one to comply with NRS 17.150(2). Such a reading is incorrect and ignores the rules of statutory construction, and the statue's plain meaning.  NRS 17.150 clearly must be read as a whole.  To take Disputed Lien Claimant's position would be to render not only NRS 17.150(4) meaningless, but also 17.150(3) meaningless.

Disputed Lien Claimants argue that the affidavit of judgement is not a condition precedent to creating a valid judgement lien, but that ignores the legislative history of requiring the affidavit of judgement (1995), and the 2011 amendments to NRS 17.150 which make more clear that the affidavit of judgement is required to be recorded along with the judgement if the judgement creditor wishes to create a lien upon the real property of the judgment debtor.

Disputed Lien Claimants argue that the affidavit of judgement required by NRS 17.150(4) is "not at all tied to creation of the judgement lien, is in no way a condition precedent to creation of a valid judgement lien, and there is no penalty in the statute if the judgement creditor does not record it."  Opposition, pg. 14, lns. 1-3. First, the penalty for not recording the affidavit of judgement is clear on its face, the judgement creditor has not satisfied the lien statue and, therefore, does not have a valid judgement lien.  Second, to say NRS 17.150(4) is "not at all tied to creation of the judgement lien, is in no way a condition precedent to creation of a valid judgement lien" is to ignore the very words of NRS 17.150 itself, which not only requires 17.150(2) be met, but also 17.150(3), and (4) when a judgement creditor is hoping to create a valid lien on the judgement debtor's real property.  A judgement lien is unlike other liens, which more readily identify the debtor and collateral property.  Without the affidavit of judgement required by NRS 17.150(4) there is nothing to put the world on proper notice that the recorded judgement is for a particular judgement debtor (NRS 17.150 requiring last four of SSN or

1  license) or a particular property (affidavit based upon personal knowledge that affiant has

2  confirmed judgement debtor owns particular property, does not just reside there).

3      Disputed Lien Claimants argue that because the legislature originally considered placing

4  the judgement affidavit else where in the Nevada Revised Statues that shows it is not required for

5  the creation of a judgement lien.  Disputed Lien Claimants argument ignores that the judgement

6  affidavit now required by NRS 17.150(4) was not placed elsewhere.

7           **a.**     **The Affidavit of Judgement Required by NRS 17.150(4) is not being**
                       **used as a Sword by a Judgement Debtor.**

8

9      Disputed Lien Claimants argue that the affidavit of judgement required by NRS 17.150(4)

10  was not aimed at providing a judgement debtor with a sword to avoid execution of lawful

11  judgements.  As set forth above, this is not a dispute between Scott Alan Corridan, the judgement

12  debtor, and his lawful judgement creditors.  It is not even being used as a sword by the Trustee.

13  Rather, the Trustee has the obligation to determine whether any creditor who asserts a security

14  interest in property of the estate has a valid and perfected security interest, and the Trustee is

15  using his powers as a trustee and hypothetical lien creditor to avoid the judgement lien, but not

16  the claim of the judgement creditors.  The Trustee is doing his job to ensure similarly situated

17  creditors are paid the same.  If the liens are avoided, they will have a claim as unsecured

18  creditors.

19      Interestingly, here the Disputed Lien Claimants acknowledge that the purpose of the

20  affidavit of judgement was "intended to better inform others conducting title searches [not

21  judgement debtors]...."  Opposition, pg. 17, lns. 12-20.  Notice - to ensure there is proper notice

22  to the world – and the Trustee agrees.

23      Disputed Lien Claimants go on to acknowledge that "the 2011 legislative history further

24  confirms the entire purpose of the NRS 17.150(4) affidavit is to "tie" a judgment to a particular

25  parcel of property by identifying both the affected judgment debtor and the affected real

26  property."  Opposition, pg. 17, lns. 21-23.  The Trustee agrees and would add that the

27  information required by the affidavit of judgement (NRS 17.150(4)) is what the legislature

28  enacted to accomplish that end.

1

**b.      The Penalty for Failure to Comply with NRS 17.150(4) is clear - the judgement creditor has not created a valid judgement lien.**

2

3

Disputed Lien Claimants make much to do about the fact that NRS 17.150 does not

4

provide a "penalty" if a judgement creditor does not comply with NRS 17.150(4).  The Nevada

5

Supreme Court reviewed a sister statute NRS 17.214 - the statute governing renewal of

6

judgements in *Leven v. Frey*, 123 Nev. 399 (2007).  In *Leven* the judgement creditors timely filed

7

their affidavit of renewal, but did not timely record and serve the affidavit of renewal within the

8

statutory period to do so.  The Nevada Supreme Court held the judgement creditor had not

9

renewed its judgement.

10

NRS 17.214 provides:

11

**Filing and contents of affidavit; recording affidavit; notice to judgment debtor; successive affidavits**.

12

1.  A judgment creditor or a judgment creditor's successor in interest may renew a judgment which has not been paid by:

13

14

(a) Filing an affidavit with the clerk of the court where the judgment is entered and docketed, within 90 days before the date the judgment expires by limitation. The affidavit must be titled as an "Affidavit of Renewal of Judgment" and must specify:

15

16

(1) The names of the parties and the name of the judgment creditor's successor in interest, if any, and the source and succession of his or her title;

17

18

(2) If the judgment is recorded, the name of the county and the document number or the number and the page of the book in which it is recorded;

19

(3) The date and the amount of the judgment and the number and page of the docket in which it is entered;

20

(4) Whether there is an outstanding writ of execution for enforcement of the judgment;

21

(5) The date and amount of any payment on the judgment;

22

23

(6) Whether there are any setoffs or counterclaims in favor of the judgment debtor and the amount or, if a setoff or counterclaim is unsettled or undetermined it will be allowed as payment or credit on the judgment;

24

(7) The exact amount due on the judgment;

25

26

(8) If the judgment was docketed by the clerk of the court upon a certified copy from any other court, and an abstract recorded with the county clerk, the name of each county in which the transcript has been docketed and the abstract recorded; and

27

28

(9) Any other fact or circumstance necessary to a complete disclosure of the exact condition of the judgment.

**ESTES LAW, P.C.**
**605 Forest Street**
**Reno, Nevada  89509**
**(775) 321-1333**

F:\Estes Law Backup 041422\Corridan, Scott\Adv. Claim Obj Lien Obj\MJP or MSJ\Reply Opp MJP or MSJ 030824.wpd

12

1    All information in the affidavit must be based on the personal knowledge of the affiant, and not
2    upon information and belief.

3    (b) If the judgment is recorded, recording the affidavit of renewal in the office of the county
     recorder in which the original judgment is filed within 3 days after the affidavit of renewal is
4    filed pursuant to paragraph (a).

5    2.  The filing of the affidavit renews the judgment to the extent of the amount shown due in
     the affidavit.

6    3.  The judgment creditor or the judgment creditor's successor in interest shall notify the
7    judgment debtor of the renewal of the judgment by sending a copy of the affidavit of renewal by
     certified mail, return receipt requested, to the judgment debtor at his or her last known address
8    within 3 days after filing the affidavit.

9    4.  Successive affidavits for renewal may be filed within 90 days before the preceding
     renewal of the judgment expires by limitation.

10   The *Leven* Court reasoned:

11           Generally, when a statute's language is plain and its meaning clear, the
             courts will apply that plain language. Here, NRS 17.214's mandatory requirements
12           of filing, recording, and service of the affidavit are plainly set forth and must be
             followed for judgment renewal.
13
             In particular, NRS 17.214(1)(a)'s requirement, that an affidavit of renewal be filed
14           with the court clerk within 90 days before the judgment expires by limitation, is
             unambiguous. An action on a judgment or its renewal must be commenced within
15           six years under NRS 11.190(1)(a); thus a judgment expires by limitation in six
             years. The requirement that an affidavit be filed within ninety days of the
16           expiration of this six-year period provides a clear first step in the procedure for
             renewing judgments.
17
             Similarly, NRS 17.214(1)(b)'s recordation requirement is clear. If the judgment to
18           be renewed is recorded, the affidavit of renewal must be recorded in the county
             recorder's office within three days after the affidavit of renewal is filed.
19
             ...
20
             Further, NRS 17.214(3)'s requisite, that the affidavit of renewal be served on the
21           judgment debtor within three days of filing, is also plain and its meaning clear.
             Such notice is a necessary part of any statutory procedure involving renewed
22           rights under a judgment.

23   *Leven v. Frey*, 123 Nev. at 403.

24           Employing Disputed Lien Creditor's reasoning *Leven* would have come out the other

25   way.  Using their reasoning NRS 17.214(1) is all that would be required for the judgment creditor

26   to renew its judgment which has not been paid.  But the Nevada Supreme Court ruled that the

27   entirety of NRS 17.214 clearly requires compliance for the judgement lien to be renewed

28   including compliance with NRS 17.214(3), which is not mentioned in NRS 17.214(1), and does

ESTES LAW, P.C.
605 Forest Street
Reno, Nevada  89509
(775) 321-1333

F:\Estes Law Backup 041422\Corridan, Scott\Adv. Claim Obj Lien Obj\MJP or MSJ\Reply Opp MJP or MSJ 030824.wpd

13

1   not provide a penalty if the judgement creditor does not comply with NRS 17.214(3).  Following

2   the same reasoning and the rules of statutory interpretation laid out and applied by the Nevada

3   Supreme Court in *Leven* and *BMO Harris Bank, N.A. v. Whittemore,* 535 P.3d 241, 2023

4   reaffirming *Leven,* compliance with the entirety of NRS 17.150, including NRS 17.150(4), is

5   required to create a valid and enforceable judgement lien against the real property of a judgement

6   debtor.

7       **3.    *Secured Holdings, Inc.***

8       The Disputed Lien Claimants rely upon the unpublished decision of Secured Holdings,

9   Inc. v. Eighth Judicial District Court of Nevada, 2017 Nev. App. Unpub. LEXIS 468, *2-3 to

10  support their position that the judgement affidavit "is not a condition precedent" to the creation

11  of a judgement lien.  The Trustee would like to point out that this opinion is unpublished.

12  Further, this decision is in direct conflict with the Nevada Supreme Court's reasoning and

13  statutory interpretation of the sister statute NRS 17.214 as set forth above.  The Trustee urges this

14  court to look to the published opinions of the Nevada Supreme Court and to follow the reasoning

15  set forth by the Nevada Supreme Court in *Leven* reaffirmed in *BMO Harris.*

16      **4.    *Sphere, LLC***

17      The Disputed Lien Claimants also rely upon the very recent opinion *Sphere, LLC v.*

18  *Pawnee Leasing Corp.*, 2023 U.S. Dist. LEXIS 207350 issued by the Honorable Miranda Du,

19  Nevada Federal District Court.  While Judge Du was tasked with trying her best to determine

20  how the Nevada Supreme Court would come out on the issue of statutrily interpreting NRS

21  17.150, and whether the affidavit of judgement was required to create a valid judgement lien on a

22  judgement debtor's property, she did not follow the reasoning employed by the Nevada Supreme

23  Court in *Leven* or *BMO Harris.  See also Miller v. Crisis Collection Mgmt., LLC*, 2023 U.S. App.

24  LEXIS 30799.  Judge Du found that all that is required to create a valid judgement lien is

25  compliance with NRS 17.150(2).  *Id.* at *8.

26      Judge Du then says that subsection (2) of NRS 17.150 expressly recognizes that the lien

27  applies "not just to a debtor's presently-owned real property but to property 'afterward

28  acquire[d]' by the debtor." And, "because real property acquired in the future by definition is not

    yet identifiable by parcel number and address, it is not clear why any lien's initial *validity* must

**ESTES LAW, P.C.**
**605 Forest Street**
**Reno, Nevada  89509**
**(775) 321-1333**

14

1   depend upon the recording of this information under subsection 4(c) for the purpose of *notice*, as

2   Sphere argues." *Id.*  But Judge Du's reasoning ignores the other sections of NRS 17.150(4)

3   including identifying information for the judgement Debtor including his social security number

4   or drivers license which would provide notice that the correct judgement debtor has been

5   identified and resolve the issue of misidentification.

6        Judge Du ultimately concluded "the state high court would interpret NRS § 17.150 to

7   indicate that a judgment becomes a valid lien when it is recorded under subsection (2), and that

8   recording an affidavit of judgment under subsection (4), while mandatory, is not a condition

9   precedent to the creation of a valid lien." *Id.* at **12-13.  Judge Du's statements regarding how

10  the Nevada Supreme Court may come out on the issue are not persuasive, as she does not follow

11  the reasoning and logic that has been employed by the Nevada Supreme Court when reviewing a

12  sister statute in the past and present.  Further, it is confusing how Judge Du concludes that the

13  judgement affidavit is mandatory, but is not required to create a valid judgement line.  The plain

14  reading of NRS 17.150(4) says otherwise.  If it is mandatory, to what effect? Judge Du's reading

15  of the statute renders NRS 17.150(4) meaningless, which is against the rules of statutory

16  interpretation.

17        **5.    Notice is Implicated by NRS 17.150(4).**

18        As set forth above NRS 17.150(4) was enacted to provide notice, where there was a clear

19  notice issue.  Title companies were not able to accurately identify a judgement debtor or that

20  judgement debtor's real property.  Accordingly, affidavit of judgement was added to NRS 17.150

21  to provide notice to the world through better more specific legally identifying information who

22  the judgement debtor is and what property that judgement debtor is known to own.  Disputed

23  Lien Claimants argue that substantial compliance with NRS 17.150(4) is all that is required

24  because it does not implicate notice, which requires strict compliance, but NRS 17.150(4) does

25  implicate notice, as set forth above.  The Trustee as a hypothetical lien claimant and the title

26  company require the information provided in the affidavit of judgement to determine whether the

27  judgement liens are properly applied to the Property or may be avoided.

28

1

2                                    **CONCLUSION**

3            WHEREFORE, the Trustee requests that this Court enter a final judgement in its favor on

4    claims 1-4 and 6.

5            DATED this 8th day of March, 2024.

6                                                ESTES LAW, P.C.

7                                        By:_____ */s/ Holly E. Estes*_____

8                                                HOLLY E. ESTES, ESQ.

9                                                Attorney for the Chapter 7 Trustee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F:\Estes Law Backup 041422\Corridan, Scott\Adv. Claim Obj Lien Obj\MJP or MSJ\Reply Opp MJP or MSJ 030824.wpd

1

**CERTIFICATE OF SERVICE**

2    I, Holly E. Estes, Esq., hereby certify that on the 8th day of March, 2024, the foregoing

3  document was served on all parties consenting to electronic service in this case via the Court's

4  CM/ECF system of the Bankruptcy Court.

5                                                                    /s/ Holly E. Estes

6                                                          _____

7                                                          HOLLY E. ESTES

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ESTES LAW, P.C.**
**605 Forest Street**
**Reno, Nevada  89509**
**(775) 321-1333**

F:\Estes Law Backup 041422\Corridan, Scott\Adv. Claim Obj Lien Obj\MJP or MSJ\Reply Opp MJP or MSJ 030824.wpd

# Exhibit "A"

# Exhibit "A"

 Caution
As of: December 16, 2023 1:13 AM Z

# *Leven v. Frey*

Supreme Court of Nevada

October 11, 2007, Filed

No. 41716

**Reporter**
123 Nev. 399 *; 168 P.3d 712 **; 2007 Nev. LEXIS 49 ***; 123 Nev. Adv. Rep. 40

ROBERT LEVEN, Appellant, vs. HERBERT FREY AND CY YEHROS, Respondents.

**Subsequent History:** Rehearing denied by *Leven v. Frey, 2007 Nev. LEXIS 80 (Nev., Dec. 24, 2007)*

**Prior History:** [***1] Proper person appeal from a district court order denying appellant's motion to declare an expired judgment void due to improper renewal. Eighth Judicial District Court, Clark County; Valorie Vega, Judge.

**Disposition:** Reversed and remanded with instructions.

## Core Terms

renewal, recording, substantial compliance, expired, judgment creditor, provisions, district court, filing of an affidavit, complied, notice

## Case Summary

**Procedural Posture**
Appellant, a judgment debtor, appealed the judgment of the Eighth Judicial District Court, Clark County (Nevada) that denied his motion to declare void the expired judgment of appellees, judgment creditors.

**Overview**

The debtor argued that the district court erred in denying his motion because the judgment creditors could renew the judgment only by strictly complying with the provisions of *Nev. Rev. Stat. §*

*17.214*. The supreme court agreed. The creditors filed their affidavit of renewal on October 18, 2002, and were required to record and serve the affidavit within three days. The service, however, did not occur until twelve days later, on October 30, 2002, and the affidavit was not recorded until seventeen days later, on November 4, 2002. The recording requirement's main purpose was to procure reliability of title searches since any lien on real property created when a judgment was recorded continued upon that judgment's proper renewal. The requirement accomplished that purpose in a reasonable and efficient manner. Substantial compliance with the recording requirement was not supportable, as it would undermine the legislative intent that the debtor and third parties be promptly notified that the lien on the debtor's real property had continued. Substantial compliance could create situations in which a title search would indicate that a judgment lien had terminated when, in fact, it had not.

**Outcome**
The district court's order denying the debtor's motion to declare void the expired judgment was reversed. The case was remanded to the district court with instructions that it grant the motion.

## LexisNexis® Headnotes

Civil Procedure > Judgments > Entry of Judgments > Revival of Judgments

*HN1*[⬇] **Entry of Judgments, Revival of Judgments**

*Nev. Rev. Stat. § 17.214* requires the timely filing of an affidavit, timely recording of the affidavit (if the judgment to be renewed was recorded), and timely service of the affidavit to successfully renew a judgment; these requirements must be complied with strictly.

Civil Procedure > Appeals > Standards of Review > De Novo Review

Governments > Legislation > Interpretation

*HN2*[⬇] **Standards of Review, De Novo Review**

An appellate court reviews issues of statutory construction de novo. Similarly, whether a statute's procedural requirements must be complied with strictly or only substantially is a question of law subject to plenary review.

Civil Procedure > Judgments > Entry of Judgments > Revival of Judgments

*HN3*[⬇] **Entry of Judgments, Revival of Judgments**

See *Nev. Rev. Stat. § 17.214*.

Governments > Legislation > Interpretation

*HN4*[⬇] **Legislation, Interpretation**

Generally, when a statute's language is plain and its meaning clear, the courts will apply that plain language.

Civil Procedure > Judgments > Entry of Judgments > Revival of Judgments

Governments > Legislation > Statute of Limitations > Time Limitations

*HN5*[⬇] **Entry of Judgments, Revival of Judgments**

An action on a judgment or its renewal must be commenced within six years under *Nev. Rev. Stat. § 11.190(1)(a)*; thus a judgment expires by limitation in six years.

Civil Procedure > Remedies > Judgment Liens > Renewal & Revival

Civil Procedure > Judgments > Entry of Judgments > Revival of Judgments

*HN6*[⬇] **Judgment Liens, Renewal & Revival**

*Nev. Rev. Stat. § 17.150(2)* creates a lien on a debtor's real property in a particular county when a judgment is recorded in that county; this lien remains in place for six years from the date that the judgment was docketed and continues automatically each time the judgment is renewed.

Civil Procedure > Appeals > Standards of Review > General Overview

Governments > Legislation > Interpretation

*HN7*[⬇] **Appeals, Standards of Review**

When construing an ambiguous statutory provision, an appellate court determines the meaning of the words used in a statute by examining the context and the spirit of the law or the causes which induced the legislature to enact it. The entire subject matter and policy may be involved as an interpretive aid. Thus, in interpreting a statute, the appellate court considers the statute's multiple legislative provisions as a whole. Additionally, statutory interpretation should not render any part of a statute meaningless, and a statute's language

should not be read to produce absurd or unreasonable results.

Governments > Legislation > Interpretation

*HN8*[⬇] **Legislation, Interpretation**

Generally, in determining whether strict or substantial compliance with a statute is required, courts examine the statute's provisions, as well as policy and equity considerations. Substantial compliance may be sufficient to avoid harsh, unfair or absurd consequences. Under certain procedural statutes and rules, however, failure to strictly comply with time requirements can be fatal to a case. In other contexts, a court's requirement for strict or substantial compliance may vary depending on the specific circumstances. Although statutes allowing for a "reasonable time" to act are subject to interpretation for substantial compliance, those with set time limitations are not.

Civil Procedure > Judgments > Entry of Judgments > Revival of Judgments

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN9*[⬇] **Entry of Judgments, Revival of Judgments**

Notice is an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality. Because judgment renewal proceedings are purely statutory in nature and are a measure of rights, a court cannot deviate from those judgment renewal conditions purposefully stated by the legislature.

Civil Procedure > Judgments > Entry of Judgments > Revival of Judgments

*HN10*[⬇] **Entry of Judgments, Revival of Judgments**

A judgment creditor must strictly comply with the timing requirement for service under *Nev. Rev. Stat. § 17.214(3)* in order to successfully renew the judgment.

**Counsel:** Robert Leven, Las Vegas, in Proper Person.

Deaner, Deaner, Scann, Malan & Larsen and Brent A. Larsen, Las Vegas, for Respondents.

Flangas Law Office and Leo P. Flangas, Las Vegas; Leonard Schwartzer, Las Vegas, for Amici Curiae Leo Flangas and Louise Ruiz.

**Judges:** HARDESTY, J. MAUPIN, C.J, GIBBONS, PARRAGUIRRE, CHERRY and SAITTA, JJ., concur.

**Opinion by:** HARDESTY

## Opinion

[*400]  [**713]  BEFORE THE COURT EN BANC. [1]

By the Court, HARDESTY, J.:

This proper person appeal presents us with an opportunity to clarify the proper procedure for judgment renewal under *NRS 17.214* and to address whether judgment creditors are required to strictly comply with the statute's requirements. We conclude that *HN1*[⬆] the statute requires the timely filing of an affidavit, timely recording of the affidavit (if the judgment to be renewed was recorded), and timely service of the affidavit to [**714] successfully renew [***2] a judgment [*401] and that these requirements must be complied with strictly. Since, in this case, respondents did not strictly comply with all of these

_____

[1] The Honorable Michael L. Douglas, Justice, voluntary recused himself from participating in the decision of this matter.

requirements, the district court improperly denied appellant's motion to declare void the previous judgment, which had expired. We therefore reverse the district court's order and remand this matter to the district court.

## FACTS AND PROCEDURAL HISTORY

After appellant Robert Leven, a one-time condominium owner, and other plaintiffs sued their condominium owners' association, its board of directors, officers, property managers, insurance carriers, and legal counsel, and the condominium developers, the district court adjudicated all parties' claims and entered a judgment against Leven and the other plaintiffs. The original judgment, filed on October 25, 1996, and recorded on October 28, 1996, awarded attorney fees and costs to respondents Cy Yehros, a general contractor, and his business partner, Herbert Frey (collectively Frey).

Between 1996 and 2002, Frey unsuccessfully tried to collect payment from Leven, and as the judgment was due to expire on October 25, 2002, [2] Frey began judgment renewal proceedings in October 2002.

Renewing a judgment generally requires a judgment creditor to file an affidavit of renewal within ninety days of the judgment's expiration and then record and serve the judgment renewal within three days of the affidavit's filing. [3] Here, Frey timely filed his affidavit of judgment renewal on October 18, 2002. However, Frey did not serve the affidavit of renewal until October 30, 2002, and did not record the affidavit until November 4, 2002, well beyond the three-day requirement for

recording and service.

As a consequence, Leven moved the court to declare void the expired judgment, arguing that Frey failed to strictly comply with _NRS 17.214_ because his recording and service were late and, therefore, the judgment was not properly renewed. Frey opposed the motion, arguing that the delay in recording and service, caused by his secretary's vacation, amounted to excusable neglect and oversight. According to Frey, he substantially complied with **[***4]** the statute and thus successfully renewed the judgment. The district court denied Leven's motion and concluded that Frey's delay in recording and service did not result in any prejudice to Leven. Leven has appealed.

## DISCUSSION

 **[*402]** _HN2_[⬆] We review issues of statutory construction de novo. [4] Similarly, whether a statute's procedural requirements must be complied with strictly or only substantially is a question of law subject to our plenary review. [5] Applying these de novo standards, we first discuss what is required to successfully renew the judgment under _NRS 17.214_ and then address _NRS 17.214_'s required level of compliance.

### Requirements for judgment renewal under _NRS 17.214_

Under _NRS 17.214_, timely filing an affidavit, timely recording (if the judgment being renewed was recorded), and timely service are required to successfully renew a judgment. [6] _NRS 17.214_

---

[2] See **NRS 11.190(1)(a)** **[***3]** (providing that an action upon a judgment, or the renewal thereof, must be brought within six years); _Evans v. Samuels, 119 Nev. 378, 75 P.3d 361 (2003)_ (providing that actions on judgments' renewals must be undertaken within six years).

[3] _NRS 17.214_.

[4] _Harris Assocs. v. Clark County Sch. Dist., 119 Nev. 638, 641, 81 P.3d 532, 534 (2003)_.

[5] See _Matter of Petition of Phillip A. C., 122 Nev. 1284 , 1293, 149 P.3d 51, 57 (2006)_ (stating that "[t]he district court's conclusions of law are reviewed de novo").

[6] We note that _NRS 17.214_ **[***6]** supersedes this court's decision in

123 Nev. 399, *402; 168 P.3d 712, **714; 2007 Nev. LEXIS 49, ***6

expressly refers to these three aspects of judgment renewal--affidavit filing, recording, and [***5] service:

    1. *HN3*[⬆] A judgment creditor or his successor in interest may renew a judgment which has not been paid by:

  [**715] (a) Filing an affidavit with the clerk of the court where the judgment is entered and docketed, within 90 days before the date the judgment expires by limitation. . . .

. . . .

(b) If the judgment is recorded, recording the affidavit of renewal in the office of the county recorder in which the original judgment is filed within 3 days after the affidavit of renewal is filed pursuant to *paragraph (a)*.

2. The filing of the affidavit renews the judgment to the extent of the amount shown due in the affidavit.

3. The judgment creditor or his successor in interest shall notify the judgment debtor of the renewal of the judgment by sending a copy of the affidavit of renewal by certified mail, return receipt requested, to him at his last known address within 3 days after filing the affidavit.

Under the statute's express terms, then, a judgment may be renewed by filing an affidavit with the district court within ninety days before the judgment's expiration, recording the affidavit [*403] within three days of filing, and serving the affidavit on the debtor within three days of filing.

*HN4*[⬆] Generally, when a statute's language is plain and its meaning clear, the courts will apply that plain language. [7] Here, *NRS 17.214*'s mandatory requirements of filing, recording, and service of the affidavit are plainly set forth and

must be followed for judgment renewal.

In particular, *NRS 17.214(1)(a)*'s requirement, that an affidavit of renewal be filed with the court clerk within 90 days before the judgment expires by limitation, is unambiguous. *HN5*[⬆] An action on a judgment or its renewal must be commenced within six years under *NRS 11.190(1)(a)*; thus a judgment expires by limitation in six years. The requirement that an affidavit be filed within ninety days of the expiration of this six-year period provides a clear first step in the procedure for renewing judgments.

Similarly, *NRS 17.214(1)(b)*'s recordation requirement is clear. If the judgment to be renewed is recorded, the affidavit of renewal must be recorded in the county recorder's office [***7] within three days after the affidavit of renewal is filed. The reasoning behind this requirement is clear when it is read together with a related statute, *NRS 17.150(2)*. *HN6*[⬆] *NRS 17.150(2)* creates a lien on a debtor's real property in a particular county when a judgment is recorded in that county; this lien remains in place for six years from the date that the judgment was docketed and continues automatically "each time the judgment . . . is renewed." [8] If a previously recorded judgment could be renewed under *NRS 17.214* without recordation of the renewal affidavit, then the lien created by *NRS 17.150(2)* would continue without any recorded notice that the judgment has been renewed and that the lien therefore remains in effect. Instead, requiring recordation of the renewal affidavit for the renewal of a recorded judgment ensures that anyone

---

*Polk v. Tully, 97 Nev. 27, 623 P.2d 972 (1981)*, and establishes a statutory procedure for judgment renewal that must be followed.

[7] *International Game Tech. v. Dist. Ct., 122 Nev. 132, 152, 122 Nev. 132, 127 P.3d 1088, 1102 (2006)*.

---

[8] *See Evans v. Samuels, 119 Nev. 378, 380, 75 P.3d 361, 363 (2003)* (noting that "*NRS 17.150(2)* provides that a lien is continued when the judgment is renewed"). *NRS 17.150(2)* provides four exceptions to its automatic lien continuation upon the judgment's renewal: (a) when the enforcement of the [***8] judgment is stayed on appeal; (b) when the judgment is for child support arrearages, in which case the lien continues until the judgment is satisfied; (c) when the judgment is satisfied; and (d) when the lien is otherwise discharged. These exceptions are not at issue in this case.

performing title searches will know that the lien continues.

Further, NRS 17.214(3)'s requisite, that the affidavit of renewal be served on the judgment debtor within three days of filing, is also plain and its meaning clear. Such notice is a necessary part of **[*404]** any statutory procedure involving renewed rights under a judgment. [9]

Unlike NRS 17.214's provisions for affidavit filing, recordation and notice, however, the meaning of subsection 2 of the statute, **[**716]** which pertains to the effect of filing the affidavit, is not plain and unambiguous. Consequently, we must examine its meaning more closely.

NRS 17.214(2) states that "[t]he filing of the affidavit renews the judgment to the extent of the amount shown due in the affidavit." This language is susceptible to two different interpretations: either, as argued by amici **[***9]** curiae, the affidavit's filing alone renews the judgment, or the filing of the affidavit establishes only the judgment amount a creditor can collect from a debtor after the judgment is renewed. Since this language is capable of more than one reasonable interpretation, it is ambiguous, [10] and we necessarily look to legislative history and our rules of statutory interpretation. [11]

*Legislative history*

NRS 17.214 was enacted in 1985 and amended in 1995. [12] The original, 1985 version directed the judgment creditor to file an affidavit of renewal and provided that the affidavit filing "renew[ed] the judgment to the extent of the amount shown due in the affidavit." [13] The legislative history indicates that NRS 17.214's enactment was intended to establish a procedure for judgment renewal to allow judgment creditors additional time to collect payment after the original judgment expired. [14] The 1995 amendment, among other changes, added a recording requirement to the statute, dividing subsection 1 into (a) "filing" and (b) "recording," [15] but it did not amend subsection 2's **[***10]** statement that the "filing of the affidavit renews the judgment to the extent of the amount shown due in the affidavit." [16] The 1995 amendment focused on requiring that affidavits be recorded to ensure that real property **[*405]** liens are apparent in title searches. [17] Although this amendment did not specifically address the meaning of NRS 17.214(2)'s provision regarding the effect of the affidavit's filing, the amendment demonstrates that the affidavit's filing, alone, does not renew a previously recorded judgment, as recordation is also necessary.

*Statutory construction*

HN7[↑] When construing an ambiguous statutory provision, this court determines the meaning of the words used in a statute by "examining the context and the spirit of the law or the causes which induced **[***11]** the legislature to enact it. The entire subject matter and policy may be involved as

---

[9] *See* Browning v. Dixon, 114 Nev. 213, 217, 954 P.2d 741, 743 (1998) (noting that notice is required by due process in any proceeding that is considered final).

[10] *See* Harris Assocs., 119 Nev. at 641, 81 P.3d at 534.

[11] *See* Potter v. Potter, 121 Nev. 613, 616, 121 Nev. 613, 119 P.3d 1246, 1248 (2005).

[12] 1985 Nev. Stat., ch. 223, § 2, at 699; 1995 Nev. Stat., ch. 475, § 21, at 1525.

[13] NRS 17.214(2) (1985); *see also* NRS 17.214(2) (1995).

[14] *See* Hearing on A.B. 500 Before the Senate Judiciary Comm., 63d Leg. (Nev., May 14, 1985).

[15] 1995 Nev. Stat., ch. 475, § 21, at 1525 (codified at NRS 17.214(1)(b)).

[16] *Id.* at 1526 (codified at NRS 17.214(2)).

[17] Hearing on S.B. 455 Before the Senate Judiciary Comm., 68th Leg., at 11 (Nev., May 23, 1995).

an interpretive aid." [18] Thus, in interpreting a statute, this court considers the statute's multiple legislative provisions as a whole. [19] Additionally, statutory interpretation should not render any part of a statute meaningless, and a statute's language "'should not be read to produce absurd or unreasonable results.'" [20]

Applying these statutory construction rules, with the legislative history in mind, we conclude that _NRS 17.214(2)_ can only mean that the filing of the affidavit does not, by itself, renew the judgment but instead establishes the amount of the renewed judgment subject to collection by the creditor. [21] Interpreting **[**717]** _NRS 17.214(2)_ as meaning that affidavit filing alone renews a judgment would **[***12]** completely frustrate the legislative intent behind the 1995 amendment, as it would disregard the recording requirement added to the statute in _paragraph (b) of subsection 1_ and would result in liens automatically continuing under _NRS 17.150(2)_ without any recorded notice. Further, this interpretation would fail to comply with our rules of statutory interpretation, as it would render the statute's express recording and service requirements meaningless, and thus, produce an unreasonable result. [22]

**[*406]** The only reasonable interpretation of _NRS 17.214(2)_ is that the affidavit simply identifies the judgment amount that a creditor can collect from the debtor after the judgment is successfully

---

[18] _McKay v. Bd. of Supervisors, 102 Nev. 644, 650-51, 730 P.2d 438, 443 (1986)_ (citation omitted).

[19] _International Game Tech., 122 Nev. at 152, 127 P.3d at 1102._

[20] _Harris Assocs., 119 Nev. at 642, 81 P.3d at 534_ (quoting _Glover v. Concerned Citizens for Fuji Park, 118 Nev. 488, 492, 50 P.3d 546, 548 (2002)_, overruled in part on other grounds by _Garvin v. Dist. Ct., 118 Nev. 749, 59 P.3d 1180 (2002))._

[21] We note that _NRS 17.214(2)_ is part of both the statute's 1985 version and the 1995 amendment.

[22] See _Harris Assocs., 119 Nev. at 642, 81 P.3d at 534._

renewed. This interpretation gives meaning to all of the statute's provisions and is consistent with the legislative intent to require creditors to record renewed judgments that previously were recorded.

Given the required elements of judgment renewal under _NRS 17.214_, we next consider the extent to which a creditor must comply with the statute's requirements **[***13]** in order to perfect a judgment renewal.

_Strict versus substantial compliance_

The parties present opposing views about how exacting a creditor must be in satisfying _NRS 17.214_'s requirements: Leven argues that a judgment creditor may renew a judgment only by strictly complying with the statute's provisions, and Frey contends that substantial compliance with the statute is sufficient for judgment renewal, when the creditor demonstrates that his delayed recording and service resulted from excusable neglect or oversight and caused no prejudice to the debtor.

In the present case, Frey filed his affidavit of renewal on October 18, 2002, and was required to record and serve the affidavit within three days under _NRS 17.214(1)(b)_ and _NRS 17.214(3)_, respectively. The service, however, did not occur until twelve days later, on October 30, 2002, and the affidavit was not recorded until seventeen days later, on November 4, 2002. Although Frey concedes that he did not "strictly" comply with _NRS 17.214(1)(b)_ and _(3)_'s statutory three-day recording and service requirements, he argues that he "substantially" complied with the statute and that the delay in recording and service did not prejudice Leven's **[***14]** rights.

This court has never addressed how strictly a creditor must comply with _NRS 17.214_'s judgment renewal provisions and particularly, whether _NRS 17.214_'s judgment renewal requirements can be

satisfied by delayed recording and service. [23]

HN8[↑] Generally, in determining whether strict or substantial compliance is required, courts examine the statute's provisions, as well as **[*407]** policy and equity considerations. [24] Substantial compliance may be sufficient "to avoid harsh, unfair or absurd consequences." [25] Under **[***15]** certain procedural statutes and rules, however, failure to strictly comply with time requirements can be fatal to a case. [26] In other contexts, a court's requirement for strict or substantial compliance may vary depending on the specific circumstances. [27] This court, however, has

**[**718]** never indicated that substantial compliance with specific timing requirements is sufficient in the context of recording and service under NRS 17.214. To the contrary, since the statute includes no built-in grace period or safety valve provision, [28] its explicit three-day language leaves little room for judicial construction or "substantial compliance" analysis. [29] Although statutes allowing for a "reasonable time" to act are subject to interpretation for substantial **[*408]** compliance, those with set time limitations are not. [30] Our interpretation of the statute's timing requirements and our conclusion that those

---

[23] Other courts examining renewal and revival statutes have reached differing results. See, e.g., First Federal Savings & Loan Ass'n v. Liebert, 195 Kan. 100, 403 P.2d 183, 184 (Kan. 1965) (stating that, since the procedure for reviving a dormant judgment is purely statutory in its origin, it can only be accomplished in the manner and under the conditions prescribed by the statute); Fay v. Harris, 64 Ariz. 10, 164 P.2d 860, 861-62 (Ariz. 1945) (stating that in order to renew a judgment, a creditor must strictly follow the code section setting forth the procedure for judgment renewal, but concluding at the same time that arguably substantial compliance is sufficient under practical circumstances).

[24] See 3 Norman J. Singer, Statutes and Statutory Construction § 57:19, at 58 (6th ed. 2001).

[25] Id.

[26] See NRS 11.190 (limitation of actions); NRAP 4(a)(1) (time and location for filing a notice of appeal).

[27] See Van Keppel v. United States, 206 F. Supp. 42, 44 (D. Kan. 1962) (explaining that, in an action by a taxpayer to recover a tax overpayment, if a statutory provision relates to the essence of the directed requirement so that noncompliance will frustrate the legislative intent, it is mandatory, but if a provision relates to a detail of procedure rather than to substance, it is directory only and substantial compliance is sufficient); Jones v. Short, 696 P.2d 665 (Alaska 1985) (deciding that a party "substantially complies" by engaging in conduct that falls short of strict compliance with statutory requirements but nevertheless affords to the public the same protection as would strict compliance); White v. Prince George's County, 163 Md. App. 129, 877 A.2d 1129, 1137 (Md. Ct. Spec. App. 2005) (concluding that, in the context of a tort action, under certain circumstances, a litigant may be excused from strict compliance with a notice obligation, so long as **[***17]** he fulfills the statute's purpose by substantial compliance with the statutory requirements).

[28] See, e.g., The Fabry Partnership v. Christensen, 106 Nev. 422, 425, 794 P.2d 719, 720-21 (1990) (explaining that failure to file a limited partnership certificate with the county recorder was not fatal to the partnership's formation, since the statute governing limited partnership formation (1) had a built-in "substantial compliance" provision, (2) did not specify a time limit for recording the required certificate, and (3) specifically provided that the general rule that statutes in derogation of the common law are to be strictly construed had no application to NRS Chapter 88 (governing limited partnerships)); cf. Pellegrini v. State, 117 Nev. 860, 869, 34 P.3d 519, 526 (2001) (acknowledging that a court could entertain a petition for post-conviction relief filed after NRS 34.726(1)'s one-year time limit, since the statute itself has a built-in provision allowing the petitioner to file beyond the one-year time limit when good cause is shown for the delay).

[29] NRS 17.214(3) provides that the creditor seeking to renew a judgment "shall" notify the judgment debtor of the renewal by serving a **[***18]** copy of the affidavit of renewal on the debtor within three days after filing the affidavit. As we have previously explained, "shall" is a mandatory term indicative of the Legislature's intent that the statutory provision is compulsory, thus creating a duty rather than conferring discretion. Washoe Med. Ctr. v. Dist. Ct., 122 Nev. 1298, 1303, 148 P.3d 790, 793 (2006).

[30] Compare Azevedo v. Minister, 86 Nev. 576, 583-84, 471 P.2d 661, 666 (1970) (analyzing NRS 104.2201(2), which provides that, for contracts governed under the Uniform Commercial Code, a confirming memorandum must be sent within a "reasonable time" after an oral contract is made in order for the contract to become effective, and concluding that appellant's delay of ten weeks was not unreasonable as a matter of law but must instead be considered under the circumstances presented), with Carrell v. Justice's Court, 99 Nev. 402, 663 P.2d 697 (1983) (adopting a strict reading of NRS 175.011(2), which required the filing of a jury trial demand within five days before trial (the present version of former NRS 175.011(2) allows the defendant thirty days to file a jury trial demand)).

123 Nev. 399, *408; 168 P.3d 712, **718; 2007 Nev. LEXIS 49, ***18

requirements must be complied with strictly is consistent with the general tenet that "time and manner" requirements are strictly construed, whereas substantial compliance may be sufficient for "form and content" requirements. [31] Since, **[\*\*719]** here, Frey's renewal affidavit was timely filed, we only address the **[\*\*\*16]** timing requirements for recording and service.

As set forth above, the recording requirement's main purpose is to procure reliability of title searches for both creditors and debtors since any lien on real property created when a judgment is recorded continues upon that judgment's proper renewal. [32] The statute's three-day unequivocal requirement for prompt recording **[\*409]**

accomplishes this purpose in a reasonable and efficient manner. The Legislature did not provide for any deviations from this requirement, and we perceive no reason to extend this **[\*\*\*21]** period in contravention of the Legislature's clear and express language. [33] As a practical matter, substantial compliance with the recording requirement is not supportable, as it would undermine the legislative intent that the debtor and third parties be promptly notified that the lien on the debtor's real property has continued. Substantial compliance could create situations in which a title search would indicate that a judgment lien has terminated when, in fact, it has not. These types of situations were meant to be avoided by the Legislature's adoption of *NRS 17.214(1)(b)*'s recording requirement. Consequently, a judgment creditor must strictly comply with this requirement, which Frey concedes that he failed to do.

The final requisite in the judgment **[\*\*\*22]** renewal process, service of the renewal affidavit, implicates the judgment debtor's due process rights. As this court stated in *Browning v. Dixon,* **HN9[⬆]** notice is "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality." [34] We agree with the Supreme Court of North Dakota that because judgment renewal proceedings are purely statutory in nature and are a measure of rights, a court cannot deviate from those judgment renewal conditions purposefully stated by the Legislature. [35]

Thus, we conclude that **HN10[⬆]** a judgment

[31] *See Daugherty v. Dearborn County, 827 N.E.2d 34, 36 (Ind. Ct. App. 2005)* **[\*\*\*19]** (explaining that a statute with a built-in 180-day time limit for serving notice of a tort claim was subject to strict compliance, even though other aspects of the statutory scheme were subject to review for substantial compliance); *Schooler v. Iowa Dept. of Transp., 576 N.W.2d 604, 607-08 (Iowa 1998)* (concluding that failing to serve notice within a statue's thirty-day time limitation precluded condemnees from appealing an award made in a condemnation proceeding and the condemnees' argument that they substantially complied with the notice requirement was unavailing since it would require the court to ignore the clear language of the statute); *Kirkpatrick v. City of Glendale, 99 S.W.3d 57, 60 (Mo. Ct. App. 2003)* (indicating that giving notice of a tort claim within ninety days, as set forth by statute, was a condition precedent to maintaining a tort action, which condition must be complied with strictly, while the statute's other requirements, governing the form of notice, were subject to review for substantial compliance); *Regency Investments v. Inlander Ltd., 2004 PA Super 274, 855 A.2d 75, 79 (Pa. Super. Ct. 2004)* (concluding that the doctrine of substantial compliance does not apply when the timeliness **[\*\*\*20]** of serving notice is at issue, and thus, the trial court properly struck a mechanics' lien claim since notice of the claim was not served until one month after the statutory time period allowed for service); *American Standard Homes Corp. v. Reinecke, 245 Va. 113, 425 S.E.2d 515, 518, 9 Va. Law Rep. 776 (Va. 1993)* (indicating that, unless a lien is perfected within the time outlined by statute, it is lost); *Marsh-McLennan Bldg., Inc. v. Clapp, 96 Wn. App. 636, 980 P.2d 311, 313 n.1 (Wash. Ct. App. 1999)* (explaining that an unlawful detainer statute's time requirements for filing a notice must be complied with strictly, while substantial compliance with the statute's requirements regarding the form and content of the notice was sufficient).

[32] *See NRS 17.150(2).*

[33] *Cf. NRCP 4(i)* (allowing a party to file a motion to enlarge time for service and good cause why the enlargement is warranted); *Hardin v. Jones, 102 Nev. 469, 727 P.2d 551 (1986)* (stating that the ten-day time period provided by *NRS 612.495(1)* for appealing from an unemployment benefit determination is extended by application of *NRCP 6(e),* allowing three extra days when the notice of determination was sent by mail).

[34] *114 Nev. 213, 217, 954 P.2d 741, 743 (1998)* (internal quotation marks and citations omitted).

[35] *Swanson v. Flynn, 75 N.D. 597, 31 N.W.2d 320, 324 (N.D. 1948).*

123 Nev. 399, *409; 168 P.3d 712, **719; 2007 Nev. LEXIS 49, ***22

creditor must strictly comply with the timing requirement for service under NRS 17.214(3) in order to successfully renew the judgment. As Frey failed to comply with this service requirement as well as the recordation requirement, the judgment against Leven was not properly renewed and thus, it expired.

*CONCLUSION*

NRS 17.214 requires a judgment creditor to timely file, record (when the judgment to be renewed is recorded), and serve his or her affidavit of renewal to successfully renew a judgment, **[***23]** and strict compliance with these provisions is required. As Frey did not timely record and serve his affidavit of renewal, he did not comply **[*410]** with NRS 17.214(1)(b) and (3), and thus he failed to successfully renew the judgment. We therefore reverse the district court's order denying Leven's motion to declare void the expired judgment and remand this matter to the district court with instructions that it grant the motion. [36]

MAUPIN, C.J, GIBBONS, PARRAGUIRRE, CHERRY and SAITTA, JJ., concur.

---

**End of Document**

---

[36] We deny appellant's request to file a response to the amici curiae brief.

# Exhibit "B"

# Exhibit "B"

139 Nev., Advance Opinion 31

# IN THE SUPREME COURT OF THE STATE OF NEVADA

BMO HARRIS BANK, N.A.,
Appellant,
vs.
F. HARVEY WHITTEMORE; AND
ANNETTE WHITTEMORE,
INDIVIDUALS,
Respondents.

No. 84304



FILED

SEP 14 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

Appeal from a district court order vacating an affidavit of renewal and declaring a judgment expired and void. Second Judicial District Court, Washoe County; Egan K. Walker, Judge.

*Affirmed.*

Gunderson Law Firm and Mark H. Gunderson, Austin K. Sweet, and John R. Funk, Reno,
for Appellant.

Echeverria Law Office and John P. Echeverria, Reno; Matthew L. Sharp, Ltd., and Matthew L. Sharp, Reno,
for Respondents.

BEFORE THE SUPREME COURT, EN BANC.[1]

_____

[1]The Honorable Ron Parraguirre, Justice, voluntarily recused himself and thus did not participate in the decision of this matter.

23-30101

*OPINION*

By the Court, STIGLICH, C.J.:

In this opinion, we revisit the procedure to renew a judgment under NRS 17.214 and consider whether a judgment creditor must strictly comply with the certified mail method-of-notice requirement outlined in NRS 17.214(3). NRS 17.214(3) requires a judgment creditor to notify a judgment debtor of an affidavit of renewal of judgment by certified mail within three days of filing the affidavit. In *Leven v. Frey*, we concluded that a judgment creditor must satisfy NRS 17.214(3) to renew a judgment and that strict compliance with the three-day deadline is required. 123 Nev. 399, 402-04, 409, 168 P.3d 712, 715, 719 (2007). Here, appellant provided electronic notice of an affidavit of renewal to respondents' counsel but did not provide timely notice by certified mail to respondents, the judgment debtors. Appellant now asks this court to hold that NRS 17.214(3) is not a requirement to renew a judgment, contrary to *Leven*, and alternatively, that substantial compliance may satisfy the certified mail method-of-notice requirement. We decline to do so. Instead, we reaffirm *Leven*'s holding that a judgment creditor must comply with NRS 17.214(3) to renew a judgment, and we also conclude that the certified mail method-of-notice requirement demands strict compliance. Accordingly, we affirm the district court's ruling that appellant did not comply with NRS 17.214 and thus could not renew its judgment.

## FACTS AND PROCEDURAL HISTORY

Appellant BMO Harris Bank, N.A. (BMO), fka Bank of the West, obtained a judgment against respondents Harvey and Annette Whittemore on November 18, 2015. BMO subsequently recorded the judgment. Later, BMO sued the Whittemores and their family entities in a

separate suit, generally alleging they fraudulently transferred assets to avoid their liability. Having not collected on the 2015 judgment and with it set to expire on November 18, 2021, BMO filed an affidavit of renewal of judgment, recorded the affidavit, and electronically served the Whittemores' counsel on November 10. After an inquiry by the Whittemores' counsel, BMO notified the Whittemores by certified mail of the affidavit of renewal on December 2. The Whittemores moved to vacate the affidavit of renewal and declare the judgment void. The district court granted the motion, concluding that BMO did not comply with NRS 17.214(3) because it did not send notice of the affidavit of renewal to the Whittemores by certified mail within three days of filing it. BMO appeals.

## DISCUSSION

We generally review an order granting a motion to vacate a renewed judgment for an abuse of discretion. *See Bianchi v. Bank of Am., N.A.*, 124 Nev. 472, 474, 186 P.3d 890, 891-92 (2008) (analogizing a motion to vacate a renewed foreign judgment to an NRCP 60(b) motion for relief from a void judgment and reviewing an order resolving such a motion for an abuse of discretion); *see also Fid. Creditor Serv., Inc. v. Browne*, 106 Cal. Rptr. 2d 854, 857 (Ct. App. 2001) (reviewing an order denying a motion to vacate an affidavit of renewal for an abuse of discretion). However, this appeal presents two questions of law, which we review de novo—the interpretation of NRS 17.214 and whether NRS 17.214(3)'s certified mail method-of-notice requirement demands strict compliance or allows for substantial compliance. *See Leven*, 123 Nev. at 402, 168 P.3d at 714 (providing that this court reviews de novo matters of statutory construction and whether strict compliance is required). We begin with the interpretation of NRS 17.214.

*NRS 17.214(3) must be met to renew a judgment under NRS 17.214*

BMO argues that the structure of NRS 17.214 reveals that NRS 17.214(3), which addresses notice to the judgment debtor, is not required to renew a judgment. It argues that NRS 17.214(1) alone provides the procedure to renew a judgment, namely, timely filing the affidavit of renewal and timely recording the affidavit. Because the notice requirement is not enumerated in NRS 17.214(1), BMO asserts, it is not required to renew a judgment. Accordingly, BMO contends it renewed its judgment by timely filing and recording the affidavit.

NRS 17.214 lays out the procedure to renew a judgment. NRS 17.214(1)(a) provides that a "judgment creditor . . . may renew a judgment which has not been paid by: (a) [f]iling an affidavit . . . titled as an 'Affidavit of Renewal of Judgment'" that includes certain information about the judgment. The judgment creditor must record the affidavit within three days of filing it if the original judgment was recorded. NRS 17.214(1)(b). NRS 17.214(2) provides that filing "the affidavit renews the judgment to the extent of the amount shown due in the affidavit." NRS 17.214(3) provides that the "judgment creditor . . . shall notify the judgment debtor of the renewal of the judgment by sending a copy of the affidavit of renewal by certified mail . . . within 3 days after filing the affidavit."

In *Leven*, we interpreted NRS 17.214(3) as containing a requirement to renew a judgment. 123 Nev. at 402-04, 168 P.3d at 714-15. We reasoned that NRS 17.214(3) is "clear" that a creditor must notify a debtor of an affidavit of renewal within three days of filing the affidavit to renew a judgment. *Id.* at 402-03, 168 P.3d at 715. "[U]nder the doctrine of *stare decisis*, we will not overturn [precedent] absent compelling reasons for so doing." *Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) (footnote omitted). Such compelling reasons must be "weighty and

Supreme Court
OF
Nevada

(O) 1947A

conclusive," *id.*, such as preventing the "perpetuation of error," *Stocks v. Stocks*, 64 Nev. 431, 438, 183 P.2d 617, 620 (1947) (internal quotation marks omitted). A "mere disagreement" is not a compelling reason. *Miller*, 124 Nev. at 597, 188 P.3d at 1124. When it comes to NRS 17.214, BMO has failed to demonstrate compelling reasons to disturb *Leven*'s interpretation. Thus, we reaffirm that NRS 17.214(3) must be met to renew a judgment.

Our conclusion is bolstered by the fact that the Legislature has amended NRS 17.214 twice since *Leven* but has not changed NRS 17.214(3) or otherwise indicated that it disagreed with our interpretation. *Compare* 2021 Nev. Stat., ch. 506, § 77, at 3350-51 (enacting a minor amendment to NRS 17.214(1)), *and* 2011 Nev. Stat., ch. 388, § 2, at 2409-10 (similar), *with* NRS 17.214 (1995) (enacting the version of NRS 17.214 in effect when *Leven* was decided). This suggests that *Leven* interpreted NRS 17.214 in accordance with the Legislature's intent. *See Poasa v. State*, 135 Nev. 426, 428-29, 453 P.3d 387, 389 (2019) (holding that the Legislature's silence in the years after the court interpreted the statute at issue "suggests its agreement with the court's construction of the statute, particularly as it has made other changes to the statute"); *see also Runion v. State*, 116 Nev. 1041, 1047 n.2, 13 P.3d 52, 56 n.2 (2000) (presuming that the Legislature agreed with this court's interpretation where the Legislature subsequently amended a statute but did not change the language that this court interpreted).

*A creditor must strictly comply with NRS 17.214(3)'s certified mail method-of-notice requirement*

Alternatively, BMO argues that NRS 17.214(3)'s requirement of notice by certified mail may be satisfied by substantial compliance, not strict compliance. It contends that requiring strict compliance leads to an

absurd result because it assumes that the Whittemores learned about the affidavit of renewal through electronic service on their counsel.[2]

We disagree. As noted, in *Leven* we considered whether NRS 17.214 requires strict compliance and concluded that NRS 17.214's timing requirement demands strict compliance. 123 Nev. at 409, 168 P.3d at 719. While *Leven* was limited to the timing requirement, our reasoning also extends to the certified mail method-of-notice requirement in NRS 17.214(3), and we now clarify that its certified mail method-of-notice requirement likewise demands strict compliance.

The substantial-compliance standard recognizes performance as adequate where the reasonable purpose of a statute has been met, even absent technical compliance with the statutory language. *Schieining v. Cap One, Inc.*, 130 Nev. 323, 331, 326 P.3d 4, 9 (2014). Strict compliance, in contrast, requires exact compliance with a statute's terms. *In re Murack*, 957 N.W.2d 124, 130 (Minn. Ct. App. 2021). To determine whether a statute requires strict or substantial compliance, we consider the statute's language, as well as policy and equity. *Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. 470, 475-76, 255 P.3d 1275, 1278 (2011). The inquiry is whether the purpose of the statute can be served by substantial compliance rather than technical compliance with the statute. *Id.* at 476, 255 P.3d at 1278. And we will allow substantial compliance when requiring strict compliance would lead to an absurd result. *See Einhorn v. BAC Home*

---

[2]BMO also argues that the district court erred in voiding the original judgment because BMO acted to preserve the judgment by timely filing the separate, still-pending fraudulent transfer action. BMO, however, fails to provide cogent argument or relevant authority supporting its position, and therefore, we decline to consider this argument. *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006).

*Loans Servicing, LP.* 128 Nev. 689, 697, 290 P.3d 249, 254 (2012) (concluding that the district court did not abuse its discretion in denying sanctions when the purposes of a statute's requirements were met and requiring strict compliance would have "exalt[ed] literalism for no practical purpose").

*The statutory language favors strict compliance*

In evaluating a statute's language, we consider the type of provision at issue. *Leven,* 123 Nev. at 408, 168 P.3d at 718. If a statute's provision is a "[t]ime and manner" restriction, strict compliance is generally required, but if the provision concerns "form and content," substantial compliance may suffice. *Id.* A time and manner provision addresses "when performance must take place and *the way in which the deadline must be met.*" *Markowitz v. Saxon Special Servicing,* 129 Nev. 660, 664, 310 P.3d 569, 572 (2013) (emphasis added).

Here, the method-of-notice requirement provides that the judgment creditor must notify the debtor of the affidavit of renewal by certified mail. This refers to the way in which the deadline must be met. The certified mail method-of-notice requirement is therefore a time and manner provision, which weighs in favor of demanding strict compliance. *See Marsh-McLennan Bldg. Inc. v. Clapp,* 980 P.2d 311, 313 n.1 (Wash. Ct. App. 1999) (deeming a "manner of service" requirement in a statute to be a time and manner provision).

Additionally, we consider whether the statute uses mandatory language. *See Leyva,* 127 Nev. at 476, 255 P.3d at 1279 (recognizing that strict compliance is usually required where mandatory language is used). NRS 17.214(3) provides that the judgment creditor "shall notify the judgment debtor of the renewal of the judgment by sending a copy of the affidavit of renewal by certified mail." "'Shall' imposes a duty to act."

NRS 0.025(1)(d). This mandatory language also supports a determination that the provision requires strict compliance. Accordingly, the statutory language weighs in favor of requiring strict compliance as well.

> *The purpose of NRS 17.214(3) favors substantial compliance but is not dispositive*

In determining whether substantial compliance is permissible, "we examine whether the purpose of the statute . . . can be adequately served in a manner other than by technical compliance." *Leyva*, 127 Nev. at 476, 255 P.3d at 1278. The certified mail method-of-notice requirement in NRS 17.214(3) serves to protect an individual debtor's due process rights. *Leven*, 123 Nev. at 409, 168 P.3d at 719. We recognize that the purpose of notifying the judgment debtor of the renewal is met if the debtor has actual knowledge of the renewal regardless of how the debtor came to learn of it. Thus, the purpose of the certified mail method-of-notice requirement weighs in favor of permitting substantial compliance.

Nevertheless, we are not persuaded that the purpose of NRS 17.214 outweighs the statutory language favoring strict compliance. In contexts where we have held that a method-of-notice requirement may be met by substantial compliance, additional considerations beyond the purpose factor weighed in favor of substantial compliance. For example, in *Hardy Companies v. SNMARK, LLC*, we held that substantial compliance with the notice requirement of a mechanic's lien statute was permissible because such statutes are "remedial in character and should be liberally construed." 126 Nev. 528, 536, 245 P.3d 1149, 1155 (2010) (quoting *Las Vegas Plywood v. D & D Enters.*, 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982)). And in *Schleining v. Cap One, Inc.*, we held that substantial compliance with a method-of-notice requirement in a statute governing notice of default was permissible, in part because the Legislature had

expressly permitted substantial compliance in a related statute. 130 Nev. at 329-30, 326 P.3d at 8. Having examined NRS 17.214(3), we do not find additional considerations of the sort that would favor substantial compliance here.[3] Indeed, to the contrary, "because judgment renewal proceedings are purely statutory in nature and are a measure of rights, a court cannot deviate from those judgment renewal conditions." *Leven*, 123 Nev. at 409, 168 P.3d at 719.

## CONCLUSION

We reaffirm *Leven*'s holding that a judgment creditor must follow NRS 17.214(3) to renew a judgment. We also clarify that a judgment creditor must strictly comply with NRS 17.214(3)'s certified mail method-of-notice requirement. In light of the foregoing, we affirm.

_____, C.J.
Stiglich

We concur:

_____, J.          _____, J.
Cadish                                                Herndon

_____, J.
Bell

_____

[3]Further, we discern nothing absurd here in requiring a sophisticated party, a large bank, to strictly comply with a notification requirement when it seeks to recover on a judgment. Accordingly, we reject BMO's absurdity argument. Although the dissent suggests that following the letter of the law renders an unfair outcome in this instance, we note that "law without equity, though hard and disagreeable, is much more desirable for the public good, than equity without law: which would make every judge a legislator, and introduce most infinite confusion." 1 William Blackstone, *Commentaries on the Laws of England* 62 (4th ed. 1770).

LEE, J., with whom PICKERING, J., agrees, dissenting:

I cannot agree with the majority's decision to void a judgment based on the method of service of the renewal notice where (1) requiring strict compliance under these circumstances would lead to an absurd result and (2) a plain reading of NRS 17.214 indicates that service is not a mandatory prerequisite to judgment renewal. *See Smith v. Zilverberg*, 137 Nev. 65, 72, 481 P.3d 1222, 1230 (2021) ("When interpreting a statute, we look to its plain language."). I therefore dissent and would instead reverse and remand to allow the district court to determine whether the Whittemores had actual notice of the judgment renewal and suffered any prejudice as a result of the method and timing of service.

*Mandating strict compliance under NRS 17.214(3) would lead to an absurd result under the facts of this case*

Mandating strict compliance with NRS 17.214(3)'s manner of service requirement needlessly extols literalism to the detriment of practicality and equity. *See Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. 470, 475-76, 255 P.3d 1275, 1278 (2011) (recognizing that strict compliance with a statute's requirements may not be necessary when it is not required to achieve the statute's purpose). This court previously found that substantial compliance is sufficient in fulfilling service and notice requirements where (1) a party has actual notice and (2) the party is not prejudiced. *See Hardy Cos., Inc. v. SNMARK, LLC*, 126 Nev. 528, 536, 245 P.3d 1149, 1155 (2010) (holding that the notice requirement for a mechanic's lien is satisfied if the landowner had actual notice and is not prejudiced).

In this case, BMO complied with all renewal and service requirements under NRS 17.214 prior to the expiration of the judgment, except for the manner in which it served its notice on the Whittemores. BMO did not strictly comply with NRS 17.214(3) (requiring service of the notice of judgment renewal to be sent to the debtor via certified mail) and

instead electronically served the Whittemores' legal counsel. BMO further notified the Whittemores via certified mail within two weeks after the judgment would have expired. This two-week delay, especially considering the timely notice provided to the Whittemores' counsel, does not subvert the purpose of the statute.

   I therefore submit that an application of the substantial compliance rule of construction when assessing the service requirements set forth in NRS 17.214 would be more appropriate. This would allow courts to consider the underlying circumstances in determining whether (1) a debtor was sufficiently on notice of the continuing obligation to repay the judgment, (2) the debtor would be prejudiced if the judgment was renewed, and (3) the creditor made reasonable efforts to comply with the service requirements.

   Alternatively, even under a strict compliance analysis, this court has previously elucidated that "strict compliance does not mean absurd compliance." *Einhorn v. BAC Home Loans Servicing, LP*, 128 Nev. 689, 696, 290 P.3d 249, 254 (2012). Guided by this principle, this court held that a judgment was not voided where a creditor did not record the affidavit of renewal within three days of filing because the creditor "satisfied all of NRS 17.214's service and recording requirements before the judgment expired." *Hesser v. Kennedy Funding, Inc.*, No. 81383, 2022 WL 354504 (Nev. Feb. 4, 2022) (Order of Affirmance) (affirming the denial of a motion to declare a judgment expired). Because "the purpose of procuring reliable title searches [was] not affected," the court reasoned that "mak[ing] the outcome turn on the present facts 'exalts literalism for no practical purpose.'" *Id.* (quoting *Einhorn*, 128 Nev. at 697, 290 P.3d at 254). *See also* 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 46:2, at 177 (7th ed. 2014) ("Statutes should be read sensibly

rather than literally and controlling legislative intent should be presumed to be consonant with reason and good discretion.").

Substantial compliance, especially under the circumstances presented here, does not impinge upon a judgment debtor's due process rights, entirely fulfills the purpose of the statute, and gives judgment creditors an opportunity to avoid a draconian outcome—an irreversible and complete eradication of their judgment. I therefore submit that the court should reverse and remand the matter for further findings by the district court regarding whether the Whittemores had actual notice of the renewal and any potential prejudice.

*A plain reading of the statute indicates that service is not a prerequisite to renewal under NRS 17.214*

The plain language of NRS 17.214(1)(a) provides that "[a] judgment creditor . . . may renew a judgment which has not been paid by: (a) [f]iling an . . . 'Affidavit of Renewal of Judgment'" that includes specific information. NRS 17.214(1)(b) provides that the affidavit must be recorded if the judgment was recorded. NRS 17.214(2)-(4) are enumerated separately, and unlike NRS 17.214(1), nothing within those provisions states that they are part of the renewal process. This marks a clear distinction between the renewal requirements under NRS 17.214(1) and the remaining provisions of the statute—which this court must not disregard. *See Platte River Ins. Co. v. Jackson*, 137 Nev. 773, 777, 500 P.3d 1257, 1261 (2021) (recognizing the canon of statutory construction that "a legislature's omission of language included elsewhere in the statute signifies an intent to exclude such language"); *see also Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967) ("The maxim '*Expressio Unius Est Exclusio Alterius*', the expression of one thing is the exclusion of another, has been repeatedly confirmed in this State.").

NRS 17.214(2) provides that "[t]he filing of the affidavit *renews the judgment* to the extent of the amount shown due in the affidavit." (Emphasis added.) This shows that the judgment is deemed renewed upon the filing of the affidavit of renewal of judgment. This reading is further reinforced by the language of NRS 17.214(3), which provides that "[t]he judgment creditor . . . shall notify the judgment debtor *of the renewal of the judgment.*" (Emphasis added.) This presupposes that renewal of the judgment is complete by the time notice is served.

Had the Legislature intended for service to be a prerequisite of renewal, NRS 17.214 could have instead required that the creditor send notice of the intent to renew or of the filing of the affidavit of renewal of judgment. The Legislature did not do so; thus, the only reasonable interpretation of NRS 17.214(3)'s plain language is that renewal occurs prior to notice and that the notice requirement only serves to make the debtor aware that the judgment has been renewed. *See State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011) ("The starting point for determining legislative intent is the statute's plain meaning; when a statute is clear on its face, a court cannot go beyond the statute in determining legislative intent." (internal quotation marks omitted)).[1]

If the court looks beyond the plain language, legislative history and public policy considerations underlying the enactment of NRS 17.214 further support the interpretation set forth above. NRS 17.214 was enacted in 1985. *See* 1985 Nev. Stat., ch. 223, § 2, at 699-700. NRS 17.214 was amended in 1995. *See* 1995 Nev. Stat., ch. 475, § 21, at 1525. The 1995

---

[1]To the extent that this court imported a service requirement to renew a judgment based on NRS 17.214(3) in *Leven v. Frey*, I would overrule that holding based on the analysis above. 123 Nev. 399, 402-04, 168 P.3d 712, 714-15 (2007).

amendment added NRS 17.214(1)(b) as it appears in the statute today. The 1995 amendment was a "housekeeping attempt" meant to provide the public with easier access to information on liens and to facilitate reconveyances of real property where appropriate. *See Hearing on S.B. 455 Before the S. Judiciary Comm.*, 68th Leg., at 10 (Nev., May 23, 1995). The recording requirement was included so that the judgment renewal could be "easily ascertained" in title searches. *Id.* at 11. The 1995 amendment was not enacted to alter the standard means to renew a judgment—filing the affidavit; rather, it simply imposed an additional conditional requirement where a judgment was recorded.

Bisecting the service requirement from the renewal requirements demonstrates that each section serves a distinct purpose. The service requirement is implemented to put the debtor on notice of the continuing obligation to repay the judgment, not to effectuate renewal of the same. *See, e.g., Orme v. Eighth Judicial Dist. Court*, 105 Nev. 712, 715, 782 P.2d 1325, 1327 (1989) ("The primary purpose underlying the rules regulating service of process is to [e]nsure that individuals are provided actual notice of suit and a reasonable opportunity to defend."). Therefore, I must dissent.

_____, J.
Lee

I concur:

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

Exhibit "C"

Exhibit "C"

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 20 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WILLIAM R. MILLER, | No.    22-16819 |
| Plaintiff-Appellant, | D.C. No.<br>2:22-cv-00262-JCM-BNW |
| v. | |
| CRISIS COLLECTION MANAGEMENT, LLC; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted October 3, 2023
Las Vegas, Nevada

Before:  RAWLINSON and OWENS, Circuit Judges, and FITZWATER,[**] District Judge.

Plaintiff-Appellant William R. Miller ("Miller") appeals the district court's judgment granting the Federal Rule of Civil Procedure 12(b)(6) motion of

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

Defendants-Appellees Crisis Collection Management, LLC, Christopher Eric Mumm, and Robert H. Broili (collectively, "CCM") to dismiss his putative class action asserting claims under the Fair Debt Collection Practices Act ("FDCPA").[1] Miller alleged that CCM, as a debt collector, violated the FDCPA by attempting to collect a debt—a default judgment entered against Miller in 1997 and allegedly renewed in 2003, 2009, 2015, and 2021—despite the fact that the judgment had not been properly renewed in accordance with the strict requirements of Nev. Rev. Stat. §§ 17.150 and 17.214. The district court held that Miller's complaint failed as a matter of law because the renewals of the judgment were valid.

"We review *de novo* the district court's judgment granting a 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (citation omitted). "We review the district court's interpretation of state law, including state statutes, *de novo*." *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 646 (9th Cir. 2000) (en banc) (citation omitted). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse and remand in part.

1. The district court correctly held that CCM complied with Nev. Rev. Stat. § 17.214 when it repeatedly renewed the judgment against Miller within the 90-day

---

[1] Miller also asserts a related claim for declaratory relief.

2

period before the expiration of the prior renewal. In Nevada, a judgment is valid for six years before it must be renewed. Nev. Rev. Stat. § 11.190(1)(a). To renew an unpaid judgment, the creditor must file with the clerk of court an affidavit of renewal "within 90 days before the date the judgment expires by limitation." *Id.* § 17.214(1)(a). "Successive affidavits for renewal may be filed within 90 days before the preceding renewal of the judgment expires by limitation." *Id.* § 17.214(4). The limitations period begins on the date of "the last transaction or the last item charged or last credit given," or at the time the last overdue payment is made, and expires six years later. *Id.* §§ 11.190(1)(a), 11.200, 17.150(2); *see also Davidson v. Davidson*, 382 P.3d 880, 885 (Nev. 2016). Here, the "last transaction" between Miller and CCM at the time of each relevant renewal was the immediate preceding renewal. Thus the limitations period for each renewal began to run on the renewal filing date, and the 90-day window for filing a successive renewal opened 90 days before the sixth anniversary of that filing date—*not* 90 days before the anniversary of the original judgment. Accordingly, the district court correctly held that CCM's judgment renewals in 2009, 2015, and 2021 were not void for failure to comply with this requirement of § 17.214.

2. But the district court erred in holding that a judgment renewal is effective if the affidavit of renewal on which it is based is mailed to the debtor before the

3

affidavit is filed with the clerk of court. Under Nevada law, a judgment is only successfully renewed upon "the timely filing of an affidavit, timely recording of the affidavit (if the judgment to be renewed was recorded), and timely service of the affidavit." *Leven v. Frey*, 168 P.3d 712, 713-14 (Nev. 2007); *see also BMO Harris Bank, N.A. v. Whittemore*, 535 P.3d 241, 244 (Nev. 2023) (reaffirming *Leven*). Contrary to CCM's contention and the district court's holding, these three requirements cannot be satisfied in just any sequence. *Leven* states that the filing requirement is "a clear first step in the procedure for renewing judgments," indicating that filing must occur before service. *Leven*, 168 P.3d at 715. This reading of § 17.214(3), which states that notice of renewal must be mailed "*within* 3 days *after* filing the affidavit," Nev. Rev. Stat. § 17.214(3) (emphasis added), avoids rendering any language superfluous and also accords with Nevada courts' interpretation of similar language in § 17.214(1)(a), *see, e.g.*, *O'Lane v. Spinney*, 874 P.2d 754, 755 & n.2 (Nev. 1994) (holding that "within 90 days before the date the judgment expires by limitation" means between the ninetieth day before the expiration date and the expiration date). It is undisputed that, for the 2009 renewal, CCM mailed the affidavit of renewal to Miller on March 11, 2009, before CCM filed the affidavit with the clerk of court on March 16, 2009. Therefore, the attempt to renew the judgment was invalid. And the judgment was still invalid (having not been properly renewed in

4

2009) when CCM attempted to renew it in 2015 and 2021.  The district court erred when it dismissed Miller's complaint on the basis that his claims were all predicated on the erroneous assertion that CCM's renewals were invalid.  To the contrary, the 2009, 2015, and 2021 renewals *were* invalid.

We therefore affirm the judgment in part, reverse the judgment in part, and remand this case for further proceedings consistent with this memorandum disposition.  Each party shall bear his or its own taxable costs of court.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**